```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

BANCO SAN JUAN INTERNACIONAL,
INC.,

                Plaintiff,

          v.                            23 CV 6414 (JGK)

THE FEDERAL RESERVE BANK OF
YORK and THE BOARD OF
GOVERNORS OF THE FEDERAL
RESERVE SYSTEM,

                Defendants.             Conference
                                        (via Telephone)
------------------------------x
                                        New York, N.Y.
                                        August 11, 2023
                                        11:35 a.m.
Before:

                HON. JOHN G. KOELTL,

                                        District Judge


                        APPEARANCES

WINSTON & STRAWN LLP
     Attorneys for Plaintiff
BY:  ABBE LOWELL
     KELLY A. LIBRERA

MICHAEL BRENNAN
     Attorney for Defendant The Federal Reserve
     Bank of New York

JOSHUA CHADWICK
     Attorney for Defendant The Board of Governors
     Of the Federal Reserve System
```

1                (Case called)
2                THE COURT:  Who is on the line for the plaintiff?
3                MR. LOWELL:  Your Honor, this is Abbe Lowell at
4    Winston & Strawn and, as before, Kelly Librera of Winston &
5    Strawn.
6                THE COURT:  Who is on the line for the defendant
7    Federal Reserve Bank of New York?
8                MR. BRENNAN:  Good morning, your Honor, this is
9    Michael Brennan for the Federal Reserve Bank of New York.
10               THE COURT:  Who is on the line for the Federal Reserve
11   board?
12               MR. CHADWICK:  Good morning, your Honor, Joshua
13   Chadwick for the Federal Reserve board.
14               THE COURT:  I have the plaintiff's August 9 letter.
15   It struck me that this is a discovery dispute that ought to be
16   able to be resolved over the phone.
17               Have you all had any further discussions with respect
18   to the narrowed request on page 2 of the plaintiff's letter,
19   the second full paragraph?
20               MS. LIBRERA:  Your Honor, we have had not any further
21   discussions with the Federal Reserve Bank of New York or the
22   board.
23               THE COURT:  As I interpret the second paragraph,
24   second full paragraph, it appears that there are only about ten
25   documents being sought.

1            So the question would be why it's not reasonable to
2   produce those documents and why those wouldn't be included in
3   the relevant administrative file for purposes of, at the very
4   least, for APA purposes.
5            Mr. Brennan.
6            MR. BRENNAN:  Thank you, your Honor.
7            I think for APA purposes and coming at it from that
8   perspective, it highlights a little bit of the complexity that
9   we are dealing with at this early stage, where we are alleged
10  to be a federal agency, which the New York Fed has never been
11  held to be, and there is a competing standard of administrative
12  record which is different from discovery in the private-party
13  context.
14           At the outset, we just wanted to reframe a bit.  I
15  think BSJI in its letter has suggested that we are refusing
16  production improperly, as if they would otherwise be entitled
17  to it.  Our baseline starting point is that no administrative
18  record or discovery is permissible at this stage unless good
19  cause has been shown or a even higher standard resembling
20  preliminary injunction.
21           I think, in your view, we have agreed to provide -- at
22  issue in this case is their challenge of our decision to close
23  BSJI's account.  And we have agreed to provide the core
24  documentation reflecting that decision that would likely be
25  covered by any administrative record or federal rules scope of

1  relevancy or be covered by the documents that are generally

2  included in an administrative record.  There are multiple

3  letters.  There are memoranda reflecting in detail the bases

4  for their decision.  There is a communication of the final

5  decision to the board and the board's response to that

6  communication.

7       And the concern that we have is that the materials

8  that remain outstanding appear to go beyond what would

9  generally be included, either in an administrative record or

10 contemplated in the scope of discovery at this stage.

11      Taking in turn the documents, one appears --

12      THE COURT:  Could I just stop you just for a second.

13 The documents that you have described are all of the documents

14 relating to the 2023 decision.  The letterhead indicated that

15 there were only four documents that you said that you were

16 producing in connection with the 2023 decision.

17      MR. BRENNAN:  In terms of how many documents there

18 are, I think the administrative record speaks to final

19 decisional documents, and predecisional documents that are

20 deliberated are generally off limits.  We have provided or

21 agreed to provide these final decisional memoranda that provide

22 the detailed explanation for the grounds for closure and are

23 reflective of the grounds that were ultimately relied on in

24 terms of the New York Fed invoking its contract rights here.

25      And the materials covered by these categories go to

1  predecisional communications with the board.  They go to a
2  document that we represented was not relied on at all in terms
3  of making the decision.  There was a reference to a 2019 letter
4  that did not go to BSJI.  My understanding is that it concerned
5  only certain account applicants.
6          THE COURT:  Just stop for a second.
7          My question was directed to what -- you described what
8  appeared to be lots of documents relating to the 2023 decision,
9  but the letter indicates that there are only four documents
10 that you were agreeing to produce relating to the decision.  I
11 was just inquiring as to what you had agreed to produce with
12 respect to the 2023 decision.
13         MR. BRENNAN:  We had agreed to produce -- it is a
14 fairly narrow but comprehensive set of documents that reflect
15 the decision that was made.  I think BSJI references emails.
16         THE COURT:  How many documents?
17         MR. BRENNAN:  There are two memos.  In addition to
18 that, we have also sent them two letters that describe in
19 detail the grounds for closure and they have those.  And then
20 there is communication of the closure decision to the board, so
21 that's another one, and then the board's response to that.
22         There are four -- those are the core decisional
23 documents reflecting why this decision is being taken, four
24 documents that we are agreeing to provide to them in addition
25 to the two letters that we have already sent, which themselves

1    are pretty comprehensive in describing why this action is being
2    taken.  And I think --
3             THE COURT:  You have provided two letters so far, and
4    you are going to produce two more memos, plus the communication
5    to the board and the response from the board.
6             MR. BRENNAN:  That's correct.
7             THE COURT:  The question then becomes whether it could
8    be said that the similar documents relating to the 2022
9    decision were considered by the decision makers for the 2023
10   decision.  You know, I don't know whether those documents would
11   be part of what was considered, directly or indirectly, by the
12   bank and the board in connection with the 2023 decision.  So
13   reading over all of the 2023 documents, do they discuss the
14   2022 decision?
15            MR. BRENNAN:  In one of the memoranda that we have
16   agreed to provide, there is prefatory language describing what
17   had happened recently, and it is referenced there.
18            But in terms of the grounds for closure, the grounds
19   for closure that supported the 2022 decision were not the
20   grounds for closure in 2023 and I think -- I can provide a bit
21   of context.  The 2022 decision was driven by the failure to
22   submit contractually required assessment reports, and there is
23   requirements in place that high-risk entities, such as BSJI,
24   must provide on an annual basis certain reports.  The deadline
25   came and went for those in 2022, and the decision was made to

1    close BSJI's account, and that was communicated to BSJI.  BSJI
2    expressed disagreement that it had in fact missed the
3    deadlines.
4            But, nonetheless, and regardless, it submitted the
5    report before the planned closure took place, so the primary --
6    the circumstances -- the grounds foreclosure, the breach of the
7    contract, had been resolved.  The closure decision was never
8    effectuated and never carried out.  There is a description, and
9    I think BSJI will see, when we provide the documents, there is
10   a description of that general -- those high-level facts.  But
11   in terms of the grounds for closure in 2023, it was not at all
12   about failure to submit reports.
13           THE COURT:  Was there a recommendation by the Federal
14   Reserve Bank of New York to the Federal Reserve board for a
15   2022 decision and a response by the board?
16           MR. BRENNAN:  Sitting here today, I don't -- this was
17   also a world before there were guidelines in place that were
18   published by the board in August 2022.  That was after the
19   closure decision was made and communicated.  And the
20   communications that we are agreeing to provide now are
21   communications that are contemplated by those guidelines.
22           The guidelines essentially say that reserve bank
23   should make the board aware of these decisions.  Those
24   guidelines were not in place in 2022.  So sitting here right
25   now, the impetus for those communications that we are agreeing

1  to provide was not there, and I am not sure whether that same
2  type of communication took place.
3          THE COURT:  Let me ask, is this 2019 letter or policy
4  referred to in the communications relating to the 2023
5  decision?
6          MR. BRENNAN:  It is not.  My understanding is really
7  that it did not refer or apply to existing account holders.  It
8  was really only for applicants, and at the time BSJI was an
9  existing account holder.
10         THE COURT:  It would seem to me that as long as the
11 2022 decision is being referred to, even in terms of the
12 introduction to the decision in 2023, you ought to check.  If
13 there is any communication between the Federal Reserve Bank of
14 New York and the Federal Reserve relating to the 2022 decision,
15 those communications should be provided along with the
16 communications you are providing from 2023.
17         It also seems to me that, given my understanding of
18 the request for the preliminary injunction and what I've heard
19 in the two conferences that I've had with you, those documents,
20 if they exist, would be reasonable and that there is good cause
21 to produce them, and they are certainly not burdensome, if they
22 exist, the communications between the bank and the Federal
23 Reserve with respect to the 2022 decision.  But the 2019 letter
24 would seem to go too far afield.
25         Now, that, I think, resolves all of the issues that

1  are presented in the letter.  If some other issues crop up in

2  the course of the briefing, you can bring it to my attention.

3  I am going to be away, but I am reachable, and I'll continue to

4  decide these things rather than to refer them to the magistrate

5  judge.

6           Having decided those issues, anything further that you

7  want to argue to me, Mr. Brennan, or that the plaintiff wants

8  to argue to me?

9           MS. LIBRERA:  Your Honor, if I wonder if I might just

10 make two points for your consideration, and I just want to seek

11 clarification as well.

12          As your Honor knows, our case alleges that the

13 decision to close BSJI's master account has been a moving

14 target over the last several years.  The culmination of which

15 is the April 24 letter that the Federal Reserve sent to us.

16 But as we have argued in our preliminary injunction papers and

17 also in our complaint, it's our contention that the reasons

18 that have been offered by the Federal Reserve Bank of New York

19 and supported by the board have been pretextual.

20          We point to the 2019 February letter that was reported

21 in the press as to the Federal Reserve Bank's decision to treat

22 IBEs, particularly those with Venezuelan founders, differently.

23 That's why we were asking for the February 2019 letter and

24 memo.  And I have not heard the government to say --

25          THE COURT:  I understand that.  But the defendants

1  say, when you review the documents relating to the 2023
2  decision, first, you won't find any reference to the 2019
3  letter and, second, that the documents relating to the 2023
4  decision are bounded on a breach of contract, and the
5  contractual provision that's at issue was entered into by the
6  plaintiff long after 2019.  We will see.  We will see.
7             MS. LIBRERA:  Your Honor, on that point, and I am glad
8  you raised it, as you know from the Federal Reserve board's
9  letter to your Honor shortly before the TRO hearing, their
10 primary argument, at least with respect to the TRO, seemed to
11 be that this was a contract case, not an agency case.
12             So it seems to us that they are talking out of both
13 sides of their mouth with respect to hiding from traditional
14 discovery by claiming they are an agency and then, at the same
15 time, claiming this is a contractual dispute.  As your Honor
16 knows, we do have a contract claim based on the theory that
17 they have not been acting in good faith, and the February 2019
18 memo would bear directly on that.
19             THE COURT:  I don't think that's quite right.
20             With respect to discovery, I'm prepared to take the
21 standard that the cases in this district follow with respect to
22 discovery in connection with a preliminary injunction, a
23 flexible standard of reasonableness and good care and good
24 cause.
25             I look at what the requests are and I look at

1  arguments being made for the preliminary injunction, and the
2  basis for the defendants' actions and the 2019 documents appear
3  to go too far.  They would not be part of the administrative
4  record for the APA claim.
5         Even if I put aside the administrative record and ask
6  myself whether there is a sufficient showing for production of
7  those documents with respect to some other theory, do they
8  sufficiently undercut the argument that the defendants make
9  that there was a breach of contract.  Hard to see that 2019
10 documents undercut that argument for a breach of contract that
11 was entered some years after 2019.
12        Go ahead.
13        MS. LIBRERA:  Your Honor, I think, again, it goes to
14 how we framed our case and what we think is going on behind the
15 scenes.
16        As we put in our letter to your Honor, if a plaintiff,
17 such as BSJI, takes issue with the process for how a decision
18 was reached, and we do, then a plaintiff is not constricted
19 solely to the administrative record that supports that
20 decision.  We cited cases for that.
21        With respect to the 2019 memo, if indeed the FRBNY was
22 taking the approach that it sought to deprive IBEs, and
23 particular IBEs who are Venezuelan owned, from account access,
24 that would certainly be relevant and inform why it is they are
25 making these other decisions to close the bank.

1          And as we have talked about, in particular the 2022
2   decision to close the bank based on a missed deadline, it was
3   argued that this was pretextual.  With respect to those
4   documents, I wanted to make sure that I understood your Honor's
5   ruling, that even if the precise name of the document that the
6   government is offering to produce for 2023, if it's called
7   something different for 2022, it's still relevant here because
8   what we are looking for are the documents that support the
9   decision to close the account in 2022, and I know that the
10  FRBNY is arguing now that it wasn't a final decision, but there
11  is plenty of letters to the contrary.
12         Even if your Honor looks at Exhibit 11 to the Aponte
13  declaration, that is a letter from the FRBNY denying BSJI any
14  internal appellate rights, in other words, saying that the
15  decision was final.
16         Now, subsequently, the FRBNY told BSJI that it would
17  consider the materials that it had provided and it paused its
18  termination decision, but never did the FRBNY say that
19  termination was off the table, ever.
20         And in fact, after additional materials were provided
21  some six months later, the April 24 letter came out.  These are
22  all -- this is a piece.  This is not fragmented decisions over
23  time.  It's something that started in 2019 and continued today.
24         THE COURT:  With respect to the 2022 decision, I told
25  the defendants to check if there are any documents from the

1  Federal Reserve Bank of New York to the Fed seeking a decision
2  to close the account and getting a response from the Fed.  So
3  far, Mr. Brennan said he doesn't know if there are any such
4  documents.  I said to check and produce them if there are.
5  That should be reasonably clear.
6              MS. LIBRERA:  That is clear as to the communications
7  with the board, your Honor, but you will recall that we had
8  asked for -- they are offering to produce for the 2023 decision
9  two memos, and we had asked, if they were equivalent memos or
10 equivalent documents supporting the 2022 termination letters,
11 that we be provided with those as well.
12             THE COURT:  You mean a memo justifying the 2022
13 decision.
14             MS. LIBRERA:  Correct.
15             THE COURT:  OK.  That appears to be reasonable.  If
16 there is a memo justifying the recommendation, if there is such
17 a recommendation from the Federal Reserve Bank of New York to
18 the Fed, a memo justifying that decision, that memo should be
19 produced unless there is some argument of privilege with
20 respect to that document that doesn't otherwise exist with
21 respect to the documents that are being produced with respect
22 to the 2023 decision.
23             I don't want to, on the basis of a phone call and one
24 letter, require the waiver of some privilege, which I don't
25 know if any such privilege exists.  I just don't want to, by

1    ordering the production, overcome such a privilege.

2             MS. LIBRERA:  That's fair, your Honor.

3             Perhaps what we could do is, we could have a further
4    discussion with the FRBNY and the board and understand that if
5    the documents exist and if they are taking the position that
6    some process or privilege applies, perhaps we could revisit
7    with your Honor.

8             THE COURT:  OK.

9             Anything further, Mr. Brennan?

10            MR. BRENNAN:  Nothing further.

11            I'll briefly add, I'm not aware of any similar
12   decisional memoranda.  It could be because it was a missed
13   deadline breach and not a more in-depth analysis, but we will
14   check on that.  Thank you.

15            Do you want to add anything, Mr. Chadwick?

16            MR. CHADWICK:  No, your Honor.  Nothing from me.

17            THE COURT:  I should add, one of my former clerks
18   works for the Fed.  Nothing about that affects anything that I
19   do in the case, and of course I would never talk to anyone from
20   any of the parties on an *ex parte* basis, but I bring it to your
21   attention.

22            Good to talk to you all.  Bye now.

23            (Adjourned)

24

25