NAQHBanC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

BANCO SAN JUAN INTERNACIONAL,
INC.,

               Plaintiff,

          v.                           23 Civ. 6414 (JGK)

THE FEDERAL RESERVE BANK OF
NEW YORK, et al.,

               Defendants.
                                       Telephone Conference
------------------------------x
                                       New York, N.Y.
                                       October 26, 2023
                                       2:00 p.m.
Before:

               HON. JOHN G. KOELTL,

                                       District Judge


                        APPEARANCES

WINSTON & STRAWN LLP.
     Attorneys for Plaintiff
BY:  ABBE LOWELL
     KELLY ANNE LIBRERA

SIMPSON THACHER & BARTLETT LLP
     Attorneys for Defendant Federal Reserve Bank of New York
BY:  JONATHAN K. YOUNGWOOD
     MEREDITH KARP

FEDERAL RESERVE BANK OF NEW YORK
     Attorneys for Defendant Board of Governors of Federal
Reserve System
BY:  JOSHUA PAUL CHADWICK
```

1             (The Court and all parties present remotely)

2             THE COURT:  This is Judge Koeltl.  The case is Banco
3    San Juan Internacional, Inc. against the Federal Reserve Bank
4    of New York, 23 Civ. 6414.

5             Who's on the line for the plaintiff?

6             MR. LOWELL:  Your Honor, this is Abbe Lowell of
7    Winston & Strawn, along with Kelly Librera.  We are on for
8    BSJI.  I apologize to everybody about my disconnecting.  I
9    think if I was thinking about this was the time for a new
10   phone, I think I just got the message it is.

11            THE COURT:  OK.  No problem.  No problem.

12            Who's on the phone for the defendant Federal Reserve
13   Bank of New York?

14            MR. YOUNGWOOD:  Good afternoon, your Honor.  Jonathan
15   Youngwood from Simpson Thatcher along with Meredith Karp, and
16   representatives of the bank are on as well.

17            THE COURT:  And who's on the line for the Federal
18   Reserve Board.

19            MR. CHADWICK:  Good afternoon, your Honor.  Joshua
20   Chadwick, for the Board.

21            THE COURT:  So here's where we are.  I've received the
22   letter from BSJI dated October 25 and the letter from the
23   Federal Reserve Bank of New York dated October 26, 2023.  I
24   denied the preliminary injunction on October 24, but I've asked
25   the parties to review the decision to let me know if there are

any confidential items that should be redacted. Some of the filings in the case included redacted materials. I've, obviously, reviewed all of the unredacted materials. So I ask the parties by today to let me know if there's any individual items in the decision that should be redacted.

In its letter, BSJI wants me to stay the closure of the master account to allow BSJI to pursue an expedited appeal of the order denying the preliminary injunction, and in return the Federal Reserve Bank of New York offers to suspend rather than close the account until the Court of Appeals acts on a prompt request by BSJI for interim relief.

So as I see it, the differences between the parties are how long either a stay or an injunction would exist and what the nature of that stay would be. I don't know if the parties have had an opportunity to talk further after the correspondence, but I'll certainly listen to the parties now. I, obviously, have my own views.

But Mr. Lowell.

MR. LOWELL: Yes. Yes, sir.

So we did not have a chance to talk after we received that. Maybe we could, but I'll say out loud two things: First is that a suspension at the moment —— today, tomorrow, and the next day —— for all intents and purposes is no different than closing because it can't be operated. So what I was going to hope to say to the FRBNY and the Fed is if we could come up

with something, since we will seek expeditious relief from the Second Circuit, perhaps it could be not the equivalency of a closure and suspension, but we would entertain another idea, which is if — again, remember, in this period we have very few accounts and very few transactions that are absolutely necessary, and we have a monitor that will look at each one.

So perhaps the FRBNY and Fed and we could come up with something that says within this period which we're seeking expedition, we will maintain the status quo except we will add on that there won't be more than whatever transactions so that people can figure out what they need to do with their funds, etc., while we're battling this out. So I don't know if it would be five or six transactions, or whatever, but that's the kind of idea that we came up with quickly once we received the other side's letter back to our letter.

But a simple suspension versus the absolute closure, you can understand, your Honor, is on a practical basis no different. So this would be, like, five transactions a week, not a day, by the way.

THE COURT: OK.

MR. LOWELL: Each of which would be reviewed.

THE COURT: Mr. Youngwood, what would you like to tell me?

MR. YOUNGWOOD: Well, your Honor, obviously, that's an idea we had not heard of, so I certainly welcome the input of

1     my client.

2              My reaction, that's not acceptable, and it's not
3     what's required by the law here.  I don't —— I know I don't
4     need to go through the elements of the stay or injunction, and
5     I really think they're actually asking for you to give them an
6     injunction pending an appeal.  Whatever way you phrase it, they
7     don't satisfy it, and they don't satisfy it, frankly, for the
8     reasons in your existing order.  There is no likelihood of
9     success on this appeal.  There is no irreparable harm.  They
10    didn't satisfy —— it's not that they failed on one element of
11    the injunction standard, they failed on all.

12             And on the likelihood of success one, they failed in
13    multiple ways.  In other words, your Honor's decision, frankly,
14    gives multiple routes for the appellate court to affirm, and so
15    the idea that we have five transactions a week, you know,
16    indefinitely while the appellate court —— one thing I didn't
17    fully understand from the proposal, although my answer doesn't
18    change, is whether it's pending the Second Circuit deciding if
19    there should be an injunction pending the Second Circuit ruling
20    on the merits or whether it was pending a final ruling on the
21    merits from the Second Circuit.  Either way, I don't think
22    we're talking days or weeks, we're probably talking months, and
23    effectively them keeping their account open at a transaction
24    rate that in some weeks the number of transactions that
25    Mr. Lowell suggests, I believe, exceed the number that are

1    currently ongoing.

2             I think the other thing I should mention and I'll stop
3    is, because we didn't fully discuss this at the hearing on the
4    injunction, the cost to the bank of keeping the monitor in
5    place is not *de minimis*.  It requires interaction from bank
6    personnel that would not be required absent the monitor, and
7    the monitor does not relieve all the risks that were the reason
8    that the decision was made to close the account in the first
9    place.  So going forward at five a week, 20 to 25 a month, for
10   weeks or months is — continues to expose the system to the
11   very risk that led to the reasons for the closure.

12            MR. LOWELL:  Could I briefly respond, just so we're
13   talking about the same nomenclature?

14            I guess, first of all, to clarify, we are seeking a
15   non-suspension solely for the period of time in which we seek
16   expedited relief from the Second Circuit but if your Honor
17   doesn't provide us a stay of your order.  So if you do not
18   provide us a stay to your order for the purposes of our seeking
19   any relief from the Second Circuit, then what we're asking —
20   then what we would be forced to do was to be seeking that
21   expeditious stay while we litigate to the Second Circuit.  And
22   all we're asking for is not to be shut down for not weeks and
23   months, but I imagine it would be days while we seek this
24   expeditious stay either from your Honor or from the Second
25   Circuit.

           Secondly, I think if the plan –– we're not maximizing the number of transactions.  So if there are fewer than five last week, then it doesn't mean we're generating five this week just to make the five.  Just picked the number that made sense.  We're not talking about weeks or months.  I think we're talking about days.

           As to the last sentence, I don't know how much of the defendants' time is used to interact with the monitor.  The monitor is a fairly reputable entity, BDO, and they proposed –– when we proposed and we worked on it, they blessed it.  They know these people are very competent.  I don't know why that doesn't mitigate the risk if we're doing a very small number while we're seeking relief from the Second Circuit and BDO is looking at every single transaction, then –– for all the criteria, right, the risk of potential people doing money laundering or whatever they were looking at, they're a pretty competent group not to allow things to happen.

           So I think there can't be a lot of effort that's required from the FRBNY or the Fed to continue to allow BDO to continue to do its job on a very few transactions while we seek the relief from the Second Circuit.  But if you deny this today, your Honor, and we immediately go to the Second Circuit, by the time –– which we're prepared to do, then by the time the Second Circuit gets to even consider the expeditious nature of giving us a stay, we're done.  So that's why we asked.

                    THE COURT:  Did I hear you start to say something,
Mr. Youngwood?
                    MR. YOUNGWOOD:  It's Jonathan Youngwood.
                    I was going to respond very briefly, your Honor, but
if you have a question, I obviously don't want to ——
                    THE COURT:  No, I don't have a question.
                    MR. YOUNGWOOD:  Again, I don't want to go through each
point.  I think two things:  We're back to the *de minimis*
exception to money laundering of which there is none.  And the
second comment, since what we're proposing is a suspension, not
a closing, and you can undo a suspension, I understand, quite
quickly as opposed to a closing which is much more complicated,
but we have an interim suspension while the plaintiff seeks the
expedited review in the Second Circuit.  If plaintiff is
correct that they can get their expedited review of their
stay/injunction, whatever you want to call it, request, and
they prevail on that in front of the Second Circuit next week,
then the switch will be turned back.
                    I don't think they will prevail.  And our primary
concern is that it won't be days or weeks, it will be much
longer, and we'll be, frankly, stuck with the exact same risk
exposure that led to us being in front of you.
                    So we would propose the suspension.  They can do what
they wish in the Second Circuit.  If the Second Circuit wants
to do something different while they consider the merits of the

1    appeal, we'll obviously obey that.

2             MR. LOWELL:  I'm sorry to beat this point to death,
3    but, again, we are making a record, so I want to be clear.  I
4    still don't understand where you're saying months.  That's just
5    not computing to me.

6             But I do want to remind that when we're going to the
7    next step, the standard is slightly different.  Even your Honor
8    has pointed out that there are many questions involved here
9    that are ones of first impression, and that is, I think, reason
10   enough for us to give the opportunity to go to the Court of
11   Appeals and make that point.

12            The idea that you can –– this *de minimis* money
13   laundering thing always boggles my mind.  If you're having
14   three transactions, all of which are scrutinized in all the
15   ways, including by an outside monitor, there's not a *de minimis*
16   money laundering.  It's not even a *de minimis* risk.  It seems
17   to me that that is a red herring.  I think what –– I don't know
18   that that's the standard we're looking at right now, but every
19   time they say there's no such thing as *de minimis* money
20   laundering, it's as if money laundering had been proven as
21   opposed to it being there's a risk of it, and there's no risk
22   of it in the way we're asking to have a little bit of time.

23            I don't know that the Federal Reserve Board's and
24   FRBNY's view that it can be instantaneous –– that a suspension
25   is easy to undo is much different than a closure would be or to

1  be reopened.  But that's not even, I think, the dispositive
2  point.  I think what we're saying is we think that given the
3  standard to seek a stay is not identical to the standards for a
4  preliminary injunction and more forgiving when you have these
5  issues of first impression, we meet that, and at the same time
6  we're mitigating whatever the possible risk is for the short
7  amount of time.  It may be this is where we're disconnecting.
8  We're not asking for months.  I think the Second Circuit is
9  going to have to decide whether we have the right to seek this
10 pretty quickly.
11         So that's all I would say about those two points.
12         THE COURT:  OK.  I don't want the parties to have to
13 repeat what they've already said in the letters or in all of
14 the briefing on the issue of whether I should issue a
15 preliminary injunction.  The result here is clear to me, and
16 it's somewhere between what both parties have been asking for.
17         First, I don't believe that BSJI has made the
18 necessary showing for a stay or an injunction pending appeal.
19 The parties agree that the standard is set forth in the Supreme
20 Court's decision in *Nken v. Holder*, 556 U.S. 418 (2009):  "(1)
21 whether the stay applicant has made a strong showing that he"
22 –– in this case it –– "is likely to succeed on the merits, (2)
23 whether the applicant will be irreparably injured absent a
24 stay, (3) whether issuance of the stay will substantially
25 injure the other parties interested in the proceeding, and (4)

1  where the public interest lies."
2           I covered those issues if not exactly in those words
3  in the course of my opinion, and I found, among other things,
4  that BSJI had not shown a likelihood of success on the merits
5  or even serious questions going to the merits.  And BSJI
6  repeats that these are matters of first impression, but the
7  Federal Reserve Bank is correct that there were numerous
8  alternative holdings in the course of the decision.  For
9  example, the fact that no court has ever held that a Federal
10 Reserve Bank is an agency of the United States for purposes of
11 the Administrative Procedure Act.  There was *Lee Construction*,
12 but even in *Lee Construction*, as I pointed out, another
13 district court case, the court eventually found that there was
14 no standing because there was no showing that the action of the
15 Federal Reserve Bank was arbitrary or capricious or contrary to
16 law.
17          So in this case I found that the Federal Reserve Bank
18 was not an agency for purposes of the Administrative Procedure
19 Act.  And in any event, we're talking about an action that was
20 committed to the discretion of the Federal Reserve Bank and not
21 covered by the APA and was not arbitrary, capricious, or
22 contrary to law, and similarly, it based its decision on its
23 contractual rights under the master account agreement and under
24 the supplemental terms.  I also found no irreparable injury,
25 and I found that the public interest was not furthered.  And to

1    grant an injunction, as I pointed out, would have the Court
2    substituting for the decisions of the bank on an issue of
3    banking policy that the bank has decided and is in a far better
4    position to decide than the Court is.
5        Having said all of that, however, I appreciate my role
6    in the system, which is anything that I do can be reviewed by
7    the Court of Appeals, and the Court of Appeals has made it
8    plain that district courts should be careful not to preempt
9    them and not to make decisions that they then can't review.  So
10   it's important to me, following guidance from the Court of
11   Appeals, that my decision be stayed in such a way that BSJI has
12   the opportunity to ask for a stay from the Court of Appeals.  I
13   know that under the rules BSJI has to ask me first before going
14   to the Court of Appeals, and so they have to ask me for the
15   stay or for any injunction, if it's phrased that way, before
16   asking for that relief from the Court of Appeals.
17       So with respect to the closure of the account, by
18   denying the preliminary injunction, I would otherwise allow the
19   Federal Reserve Bank of New York to immediately, if they chose,
20   close the master account.  That might moot some issues in the
21   case, and BSJI should have the opportunity to go to the Court
22   of Appeals and to say we want a stay for an injunction against
23   the Federal Reserve Bank from closing the account until you
24   decide on the merits whether we are entitled to a preliminary
25   injunction.

1              So it seems clear to me that the result here is that I
2    should order that the voluntary stay that the parties have been
3    living with, namely, the account stays open, master account of
4    BSJI stays open with the monitor paid for by BSJI for a limited
5    period of time to allow BSJI to seek a stay or injunction from
6    the Court of Appeals while the appeal is heard, the appeal of
7    the denial of the preliminary injunction is heard, on the
8    merits by the Court of Appeals.
9              How long is a reasonable stay?  It is a stay to allow
10   the application to be made for a stay to the Court of Appeals
11   and to allow one or more judges of the Court of Appeals to
12   consider that.  So I would enter that stay until November 9,
13   which is 14 days, which allows ample time to make the
14   application to one or more judges of the Court of Appeals and
15   to have a decision from one or more judges of the Court of
16   Appeals as to whether to enter a stay pending appeal.
17             Is all of that sufficiently clear?
18             MR. LOWELL:  It is to BSJI, your Honor.
19             MR. YOUNGWOOD:  Yes, your Honor, I understand.
20             THE COURT:  OK.  Well, I will ─
21             MR. YOUNGWOOD:  Your Honor, I think there's one other
22   issue, which is the ─
23             THE COURT:  OK.  I'll enter an appropriate order.
24             MR. YOUNGWOOD:  Your Honor, I think the only other
25   issue is the redactions, and I just ─ we were going to email

1   your Honor's chambers yesterday when we started having
2   discussions and received the letter that led to this hearing.
3   From the Federal Reserve Bank of New York's perspective, we
4   don't need any redactions.  I understand that plaintiff may
5   request some, and we'll be cooperative with them on that, but
6   we haven't seen them yet.
7           MR. LOWELL:  And speaking of the redactions, your
8   Honor, we are again working on the issues that were coming up
9   today.  We just heard from you.  We'll be expeditious and talk
10  to counsel for the others and submit whatever we're going to do
11  timely in the next bit of time before the day is out.
12          THE COURT:  OK.  Please be careful and parsimonious in
13  the redactions because there is a public right to know,
14  particularly for specific references in the Court's opinion, I
15  mean, what did the Court rely on.  So issues with respect to
16  commercial interests may well be subordinated.  So I urge the
17  parties to attempt to agree on any redactions and to make sure
18  that there are few.
19          MR. LOWELL:  We understand and understand the
20  standard.  We agree.
21          MR. YOUNGWOOD:  Understood, your Honor.  Thank you.
22          THE COURT:  I thank you all for all of your briefs and
23  arguments.  I appreciated them.  So thank you all.
24          (Adjourned)
25