UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

BANCO SAN JUAN INTERNACIONAL, INC.,                    :
                                                        :
                                          Plaintiff,    :
                                                        :
                -against-                               :
                                                        :          Civ No.: 1:23-cv-6414-JGK
FEDERAL RESERVE BANK OF NEW YORK,                      :
BOARD OF GOVERNORS OF THE FEDERAL                      :
RESERVE SYSTEM                                          :
                                                        :
                                          Defendants.   :
------------------------------------------------------------------------X

**DEFENDANT FEDERAL RESERVE BANK OF NEW YORK'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL BACKGROUND........................................ 3

    A.  Federal Reserve Bank Master Accounts and the Functioning of a Safe
        Payment and Settlement System................................................................................ 3

    B.  The FRBNY Assesses Account Applicants and Holders for Risks to the
        Federal Reserve and the Financial System ...................................................... 4

    C.  After a Comprehensive Review, the FRBNY Determines BSJI's Account
        Poses Undue Risk of Facilitating Illicit Activity and Invokes Its Statutory
        and Contractual Closure Rights .......................................................................... 6

    D.  The Court Rejects BSJI's Motion for a Preliminary Injunction, Including
        Because BSJI Cannot Show Serious Questions on the Merits of Its Claims.................... 9

LEGAL STANDARD............................................................................................................ 10

ARGUMENT ...................................................................................................................... 11

  I. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER BSJI'S
    APA, MANDAMUS, AND DECLARATORY JUDGMENT ACT CLAIMS.................. 11

    A.  Reserve Bank Master Account Decisions Are Not Subject to APA Review
        Because They Are Discretionary and Reserve Banks Are Not "Agencies" ................. 11

    B.  BSJI's Mandamus Claim Is Deficient Because BSJI Has No Right to an
        Account and the FRBNY Is Not an "Agency" .............................................. 15

    C.  BSJI's Declaratory Judgment Act Claim Fails Because the Underlying
        Statute—the FRA—Does Not Provide a Private Cause of Action ................................. 16

  II.THE AMENDED COMPLAINT FAILS TO STATE A CLAIM ON WHICH
    RELIEF CAN BE GRANTED ...................................................................................... 17

    A.  BSJI's APA, Mandamus, Declaratory Judgment Act, and Due Process
        Claims All Fail Because BSJI Has No Entitlement to a Master Account ..................... 17

    B.  BSJI's APA Claim Is Also Subject to Dismissal Because the Amended
        Complaint Cannot Plausibly Allege that the FRBNY's Decision Was
        Arbitrary or Capricious…… ........................................................................ 18

    C.  BSJI's Due Process Claim Should Be Dismissed For the Additional Reason
        that BSJI Cannot Plausibly Allege It Was Denied Procedural Protections ................... 19

    D.  The FRBNY's Exercise of Its Rights to Close BSJI's Account Did Not
        Breach Any Contractual Obligation.............................................................. 20

CONCLUSION.................................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*A.J. Temple Marble & Tile v. Long Is. R.R.*,
   256 A.D.2d 526 (N.Y. App. Div. 2d Dep't 1998) .............................................. 20

*Am. Bankers Ass'n v. United States*,
   932 F.3d 1375 (Fed. Cir. 2019)...........................................................................3

*Antartica Star I, LP v. Gibbs Int'l, Inc.*,
   15-CV-2630 (KBF), 2017 WL 590314 (S.D.N.Y. Feb. 14, 2017) ...................... 22

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
   28 F.4th 343 (2d Cir. 2022) ...............................................................................3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... 10

*Benzman v. Whitman,*
   523 F.3d 119 (2d Cir. 2008) ............................................................................. 15

*Blue Angel Realty, Inc. v. U.S.*,
   20 Civ. 8220 (KPF), 2022 WL 94599 (S.D.N.Y. Jan. 8, 2022) ......................... 15

*Bormann v. AT&T Commc'ns, Inc.*,
   875 F.2d 399 (2d Cir. 1989) ............................................................................. 18

*Casarino v. U.S.*,
   431 F.2d 775 (2d Cir. 1970) ............................................................................. 15

*Chevron Corp. v. Naranjo*,
   667 F.3d 232 (2d Cir. 2012)............................................................................... 16

*CIBC Bank & Trust Co. (Cayman) Ltd. v. Banco Cent. do Brasil*,
   886 F. Supp. 1105 (S.D.N.Y. 1995) .................................................................. 22

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971) .......................................................................................... 18

*Columbus Park Corp. v. Dep't of Hous. Pres. & Dev. of the City of N.Y.*,
   586 N.Y.S.2d 554 (N.Y. 1992) .......................................................................... 18

*Dix v. Peters*,
  802 Fed. App'x 25 (2d Cir. 2020) ............................................................3

*Dong v. Smithsonian Inst.*,
  125 F.3d 877 (D.C. Cir. 1997) ............................................................ 14

*Emergency Fleet Corp. v. W. Union Tel. Co.*,
  275 U.S. 415 (1928) ............................................................ 15

*Farmers & Merch. Bank of Monroe, N.C. v. Fed Rsrv. Bank of Richmond*,
  262 U.S. 649 (1923) ............................................................ 12

*F.D.I.C. v. Four Star Holding Co.*,
  97-CV-4184 (JFK), 2000 WL 256146 (S.D.N.Y. Mar. 7, 2000) ......................................... 18

*Gillespie v. St. Regis Residence Club*,
  343 F. Supp. 3d 332 (S.D.N.Y. 2018) ............................................................ 21

*In re Refco Inc. Sec. Litig.*,
  826 F. Supp. 2d 478 (S.D.N.Y. 2011) ............................................................ 21

*In re Skat Tax Refund Scheme Litig.*,
  356 F. Supp. 3d 300 (S.D.N.Y. 2019) ............................................................ 10

*J. Andrew Lange, Inc. v. F.A.A.*,
  208 F.3d 389 (2d Cir. 2000)............................................................ 19

*Johnson v. JPMorgan Chase Bank, N.A.*,
  488 F. Supp. 3d 144 (S.D.N.Y. 2020) ............................................................ 16

*Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*,
  933 F. Supp. 347 (S.D.N.Y. 1996)............................................................ 20

*Keane v. Chertoff*,
  419 F. Supp. 2d 597 (S.D.N.Y. 2006) ............................................................ 12

*LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*,
  725 F.3d 184 (2d Cir. 2013) ............................................................ 21

*Lojan v. Crumbsie*,
  12-CV-0320 (LAP), 2013 WL 411356 (S.D.N.Y. Feb. 1, 2013) ......................................... 16

*Makarova v. U.S.*,
  201 F.3d 110 (2d Cir. 2000) ............................................................ 10

*Morrison v. Nat'l Austl. Bank Ltd.*,
   547 F.3d 167 (2d Cir. 2008) ........................................................ 10

*Murphy v. Am. Home Prods. Corp.*,
   448 N.E.2d 86 (N.Y. 1983) .......................................................... 21

*N.Y. v. Atl. States Marine Fisheries Comm'n*,
   609 F.3d 524 (2d Cir. 2010)......................................................... 14

*Noroozi v. Napolitano*,
   905 F. Supp. 2d 535 (S.D.N.Y. 2012) ........................................ 18

*Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*,
   763 F.3d 198 (2d Cir. 2014) ........................................................ 11

*Quintanilla v. WW Int'l, Inc.*,
   541 F. Supp. 3d 331 (S.D.N.Y. 2021) ........................................ 21

*RiseandShine Corp. v. Pepsico Inc.*,
   21 Civ. 6324 (LGS), 2023 WL 4936000 (S.D.N.Y. Aug. 2, 2023) .................................... 11

*Scott v. Fed. Rsrv. Bank of Kansas City*,
   406 F.3d 532 (8th Cir. 2005) ....................................................... 14

*S.E.C. v. Jett*,
   514 F. Supp. 2d 532 (S.D.N.Y. 2007) ........................................ 19

*Sierra Club & Valley Watch, Inc. v. Jackson*,
   648 F.3d 848 (D.C. Cir. 2011) .................................................... 12

*Tang Cap. Partners v. BRC Inc.*,
   661 F. Supp. 3d 48 (S.D.N.Y. 2023) .......................................... 16

*U.S. Fidelity & Guar. Co. v. Fed. Rsv. Bank of N.Y.*,
   590 F. Supp. 486 (S.D.N.Y. 1984)................................................ 5

*U.S. v. Aquart*,
   92 F.4th 77 (2d Cir. 2024) .......................................................... 11

*U.S. v. Tenzer*,
   213 F.3d 34 (2d Cir. 2000)........................................................... 11

*U.S. ex. rel. Kraus v. Wells Fargo & Co.*,
   943 F.3d 588 (2d Cir. 2019) ............................................. 4, 14, 15

*Vela-Estrada v. Lynch,*
    817 F.3d 69 (2d Cir. 2016) ........................................................................ 12

**Statutes**

5 U.S.C. § 701(a)(2) ........................................................................... 9, 12

5 U.S.C. § 701(b)(1) ................................................................................ 14

5 U.S.C. § 706(2)(A) ............................................................................... 11

12 U.S.C. § 248 ...................................................................................... 17

12 U.S.C. § 248a(a) ................................................................................. 13

12 U.S.C. § 248a(b) ................................................................................... 4

12 U.S.C. § 248a(c)(2) ............................................................................. 13

12 U.S.C. § 248c(b)(1) ............................................................................. 13

12 U.S.C. § 342 ............................................................................. 2, 4, 12

28 U.S.C. § 1361 ..................................................................................... 15

28 U.S.C. § 2201 ..................................................................................... 16

**Rules & Regulations**

87 Fed. Reg. 51099 ................................................................................ 4, 5

Fed. R. Civ. P. 12(b)(1) ................................................................. 1, 10, 11, 14

Fed. R. Civ. P 12(b)(6) ................................................................. 1, 2, 10, 12, 17

**Other Authorities**

BSJI & USAO-PR Press Release (Feb. 11, 2020),
    https://tinyurl.com/34uwd6b3 ................................................................... 6

FinCEN Money Laundering and Terrorist Financing Red Flags,
    https://bsaaml.ffiec.gov/manual/Appendices/07 ................................................ 7

Defendant Federal Reserve Bank of New York (the "FRBNY") submits this memorandum in support of its motion, under Rules 12(b)(1) and 12(b)(6), to dismiss Banco San Juan Internacional Inc.'s ("BSJI") amended complaint ("Amended Complaint" or "AC").

## PRELIMINARY STATEMENT

The FRBNY—an operating arm of the nation's central bank—decided to close BSJI's master account after a comprehensive review found that the account was processing numerous offshore transactions suggestive of illicit activity and that BSJI's anti-money laundering ("AML") compliance programs were deficient. BSJI now challenges that thorough and well-documented decision and seeks damages and an extraordinary mandamus order compelling the account's reinstatement, despite the fact that the FRBNY had unqualified contractual and statutory rights to close it.

In its October 27, 2023 Order declining to preliminarily enjoin closure ("PI Order"), the Court held not only that BSJI was unlikely to succeed on the claims in its original complaint, but that it had not even raised serious questions on the merits. In so ruling, the Court found, among other things, that the core theory underpinning BSJI's claims—an alleged entitlement to a master account—fails as a matter of law. Despite that clear holding, BSJI filed the Amended Complaint asserting the same claims and legal theories that this Court already rejected. The claims remain deficient and each is subject to dismissal under Rule 12(b)(1), Rule 12(b)(6), or both.

*First*, the Court should dismiss BSJI's Administrative Procedure Act ("APA") (Count I), Mandamus Act (Count II), and Declaratory Judgment Act (Count III) claims under Rule 12(b)(1). As the Court has already held, the FRBNY is not a federal agency subject to the APA or Mandamus Act. Even if it were, neither the APA nor the Mandamus Act permits review of discretionary actions such as the FRBNY's risk-based decision to close BSJI's account.

1

Moreover, the Declaratory Judgment Act is procedural only and requires an independent basis for jurisdiction. No such basis exists here where BSJI seeks to clarify its "rights" under the Federal Reserve Act ("FRA"), which does not create a private right of action.

*Second*, the Amended Complaint is subject to dismissal under Rule 12(b)(6) because it fails to state a claim upon which relief could be granted. BSJI's APA (Count I), Mandamus Act (Count II), Declaratory Judgment Act (Count III), and Due Process clause (Count IV) claims all depend on BSJI's misreading of the FRA as giving it a legal "right" to an account. The Court ruled that no such "right" exists because Section 13 of the FRA, 12 U.S.C. § 342, authorizes Reserve Banks to deny account access (and, regardless, BSJI waived any right in its agreements permitting closure).

BSJI's APA claim (Count I) and Due Process claim (Count IV) also fail because the closure documentation incorporated into the Amended Complaint shows that closure was neither arbitrary or capricious, nor a deprivation of due process protections. As the Court recognized, the documentation demonstrates that the decision was based on a "thorough review of the evidence and pertinent factors and resulted in a decision that explained the FRBNY's rationale," which satisfies the APA's deferential review standard. PI Order at 26. And the "extensive consideration" the FRBNY gave to BSJI's views prior to closure precludes any assertion that BSJI was deprived of due process. *Id.* at 28-29.

Finally, BSJI's claims asserting breach of a purported "duty of good care" (Count V) and the implied covenant of good faith and fair dealing (Count VI) are legally defective. The former is based on a misreading of a limitation of liability provision that does not impose any affirmative duty on the FRBNY at all. The latter seeks to limit the FRBNY's unqualified right to

terminate BSJI's account and therefore runs contrary to black letter law prohibiting the implied covenant of good faith from eviscerating express contract terms.

The Court should dismiss the Amended Complaint with prejudice.

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

In reviewing this motion, the Court may consider the well-pled, plausible facts in the Amended Complaint, as well as the documents it incorporates by reference. *Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 n.3 (2d Cir. 2022) ("district courts may 'permissibly consider documents other than the complaint' for the truth of their contents if they 'are . . . incorporated by reference.'").  The documents incorporated into the Amended Complaint include: (i) BSJI's Master Account Agreement ("MAA") and Operating Circular No. 1 ("OC 1"), which govern the account relationship, Exs. A, B[1] (AC ¶¶ 33-36, 195-96, 201); (ii) the FRBNY memorandum setting forth the bases for account closure, Ex. F (AC ¶¶ 18, 18.k, 19, 155); and (iii) letters the FRBNY sent to BSJI communicating closure, Ex. D (AC ¶¶ 107, 164); Ex. E (AC ¶ 115); Ex. G (AC ¶¶ 121, 122, 139, 164); Ex. H (AC ¶ 142).

While one of the contracts between the parties, the Supplemental Terms and Conditions Governing the Provision of Financial Services to High Risk Customers ("Supplemental Terms"), Ex. C, is neither "reference[d]" in nor "attach[ed]" to the Amended Complaint, it is "properly considered" by the Court because it is "integral to the complaint," which includes contract-based claims. *Dix v. Peters*, 802 Fed. App'x 25, 26 n.1 (2d Cir. 2020) (Summary Order).

### A. Federal Reserve Bank Master Accounts and the Functioning of a Safe Payment and Settlement System

Pursuant to the FRA, Congress established the Federal Reserve System, the nation's central bank, "to oversee banking operations and promote [] greater economic stability." *Am.*

---

[1] All exhibits are attached to the Declaration of Michael M. Brennan, dated March 22, 2024.

*Bankers Ass'n v. United States*, 932 F.3d 1375, 1378 (Fed. Cir. 2019).  The system includes the Board of Governors of the Federal Reserve System ("Board of Governors"), the Federal Open Market Committee, and twelve regional Federal Reserve Banks.  Reserve Banks are federal instrumentalities, incorporated pursuant to the FRA, that carry out the central bank's operations. *U.S. ex. rel. Kraus v. Wells Fargo & Co.*, 943 F.3d 588, 592 (2d Cir. 2019).  By deliberate design, they serve the interests of, but stand apart from, the sovereign.  *Id.* at 597.

Congress authorized Federal Reserve Banks to carry out certain banking functions, 12 U.S.C. §§ 341-361, including by authorizing them to accept or reject deposits from depository institutions, 12 U.S.C. § 342 ("Any Federal reserve bank may receive from any of its member banks, or other depository institutions . . . deposits[.]").  Federal Reserve Banks maintain such deposits in accounts called master accounts held for the financial institutions.  AC ¶ 2.  Federal Reserve Banks also provide various financial services, including payment, clearing, and settlement functions, such as clearing checks and operating the Fedwire® Funds Service (which processes funds transfers).  12 U.S.C. § 248a(b) (listing services); AC ¶ 3.

### B. The FRBNY Assesses Account Applicants and Holders for Risks to the Federal Reserve and the Financial System

Accepting deposits from and providing financial services to a financial institution exposes Federal Reserve Banks and the financial system to risk.  87 Fed. Reg. 51099, 51100 (Aug. 19, 2022) (financial institution's access to an account and financial services "pose[s]" "risks . . . ranging from narrow risks (e.g., to an individual Reserve Bank) to broader risks (e.g., to the overall economy)").  Federal Reserve Banks manage such risks by limiting or denying access to master accounts and financial services, where necessary.  *Id.* at 51102 ("[A] Reserve Bank may implement risk mitigants . . . if necessary to mitigate risks. . . . Reserve Banks also

retain the discretion to deny a request for access to accounts and services where . . . access . . .

would pose risks that cannot be sufficiently mitigated.").

The Guidelines for Evaluating Account and Service Requests published by the Board of

Governors (the "Guidelines") provide a risk-based framework for Reserve Banks to consider

when making account access decisions.  *Id.*.[2]  The Guidelines set forth six principles to apply;

Principle 5 states that access "should not create undue risk to the overall economy by facilitating

activities such as money laundering, terrorism financing, fraud, cybercrimes, economic or trade

sanctions violations, or other illicit activity."  *Id.* at 51109.

In the event account or service access is provided to an institution, the account

relationship is governed by Reserve Bank Operating Circulars, including OC 1.  Ex. B (OC 1);

*U.S. Fidelity & Guar. Co. v. Fed. Rsv. Bank of N.Y.*, 590 F. Supp. 486, 492 (S.D.N.Y. 1984)

(Operating Circulars are binding contracts).  As relevant here, OC 1 "set[s] forth the terms under

which a Financial Institution may request to open, maintain, and terminate a Master Account,"

Ex. B at 1, and provides that the FRBNY may terminate a master account "*at any time* by notice

to the Account Holder," *id.* at 7 (emphasis added).  To obtain a master account, financial

institutions execute an MAA, as BSJI did here, which expressly incorporates OC 1.  Ex. A.

Certain institutions with elevated risk profiles, like BSJI, also agree to enhanced risk-

mitigation provisions in the Supplemental Terms.  Ex. C.  The Supplemental Terms state that "to

limit the Risks the Customer poses to the [FRBNY], the [FRBNY] may suspend or terminate the

---

[2] The Board of Governors issued the Guidelines pursuant to its general supervisory authority

over Reserve Bank operations. 12 U.S.C.§ 248(j).  Decisions on individual access requests are

left to Reserve Bank discretion.

Customer's access to one or more Financial Services [or] close the Customer's Master Account

. . . at any time by giving written notice to the Customer."  *Id.* at 10.

### C.  After a Comprehensive Review, the FRBNY Determines BSJI's Account Poses Undue Risk of Facilitating Illicit Activity and Invokes Its Statutory and Contractual Closure Rights

BSJI is an International Business Entity ("IBE") established under Puerto Rican law that

does not accept deposits from any U.S. person.  PI Order at 5.  IBEs are largely precluded from

servicing Puerto Rican residents, Act. No. 52 of 1989, and are neither federally insured nor

federally supervised.  Due to their "offshore business banking model" and the "severe resource

constraints" of their local regulator, the Department of Treasury warned in February 2022 that

IBEs "are attractive money laundering vehicles" that "potentially allow[] nefarious actors to

misuse them to facilitate illicit financial activity" and "present money laundering vulnerabilities

to the U.S. financial system" as a whole.[3]

Following a raid of BSJI by the Federal Bureau of Investigation, the FRBNY suspended

BSJI's access to its master account on February 6, 2019 (and then received a seizure warrant that

froze a substantial portion of BSJI's funds held there).  Ex. F at 2 n.2.  On February 11, 2020, the

United States Attorney's Office for the District of Puerto Rico announced BSJI had agreed to

pay a $1 million fine and improve its AML policies and compliance with money-laundering

regulations.  Press Release (Feb. 11, 2020), https://tinyurl.com/34uwd6b3.  After BSJI purported

to implement a series of risk-mitigation enhancements and executed the Supplemental Terms, the

FRBNY fully restored BSJI's account access in December 2020.  AC ¶¶ 74-91.

---

[3] *See* 2022 National Money Laundering Risk Assessment, Department of Treasury, at 68-69,

https://home.treasury.gov/system/files/136/2022-National-Money-Laundering-Risk-

Assessment.pdf.

In June 2022, BSJI breached the Supplemental Terms by failing to submit three mandated annual independent consultant assessments attesting to the effectiveness of its AML and other compliance programs.  AC ¶ 107; Ex. F at 3 & n.11.  The FRBNY informed BSJI on July 18, 2022 that it was noncompliant with the Supplemental Terms and that the FRBNY would close BSJI's account in September 2022.  AC ¶ 107; Ex. D.  Prior to the September closure date, BSJI belatedly submitted its required reports.  AC ¶ 115; Ex. E at 1.  The FRBNY suspended closure to review the reports and requested additional information about concerning transactions it had identified.  Ex. E.

After receiving this information, AML specialists in the FRBNY's Compliance Function ("Compliance") evaluated the risks posed by BSJI's continued account access, including under Guidelines Principle 5.  Ex. F.  With input from the FRBNY's Financial Intelligence and Investigations Unit, Compliance comprehensively reviewed the high-risk transaction activity, *id.* at 11-16, and the belated assessments, *id.* at 6-11.  The transaction review confirmed the existence of numerous transactions involving millions of dollars in transfers that had multiple red flags for money laundering or other illicit activity.  For example, in many instances, in rapid succession, entities controlled by family members of BSJI's owner located in high-risk money-laundering jurisdictions transferred funds to the same or other family members, who in turn transferred the funds on to another related party.  *Id.* at 12-15.  This pattern is consistent with efforts to obscure the true source of the funds, a common component of money laundering.[4]

---

[4] FinCEN Money Laundering and Terrorist Financing Red Flags (red flags for money laundering include "unusual transfers of funds . . . among accounts that involve the same or related

BSJI was given a chance to explain these transactions, but Compliance concluded that BSJI's explanation ran counter to the facts, including because the documentation BSJI provided did not match up with the flagged transactions.  AC ¶ 18.k; Ex. F at 11-15.  In addition, when Compliance reviewed the belated annual assessments, Compliance identified over a dozen concerns with BSJI's AML programs, some of which had persisted for years.  Ex. F at 6-11.

Based on the totality of these concerns and BSJI's overall risk profile, Compliance determined that BSJI posed undue risk under Principle 5 of the Guidelines and that this risk could not be effectively mitigated with additional controls "given the programmatic weaknesses in BSJI's compliance program, . . . the significant number of red flags identified in BSJI's transaction activity, and the high concentration of suspicious transactions with parties related to BSJI."  PI Order at 9 (citing Ex. F at 16-17).  The FRBNY sent the Board of Governors its risk assessment and expressed its intent to close BSJI's master account.  AC ¶ 155.  After the Board responded that it had "no concerns," *id.* ¶ 156, the FRBNY sent BSJI a detailed letter dated April 24, 2023, communicating its decision to close BSJI's account and the risk-based grounds for taking that action.  *Id.* ¶ 122; Ex. G.

BSJI asked the FRBNY to revisit the decision and provided materials in support of its request.  AC ¶ 141; Ex. H at 1.  The FRBNY extended the account closure date to review the information and hold a discussion with BSJI, which took place on June 20, 2023.  AC ¶ 140; Ex. H at 1 n.1.  As detailed in a follow-up letter to BSJI dated June 30, 2023, neither the additional materials nor the discussion allayed the FRBNY's serious risk concerns, including because BSJI

principals;" "customers conducting business in higher-risk jurisdictions;" and incoming transfers "almost immediately" wired out), https://bsaaml.ffiec.gov/manual/Appendices/07.

largely ignored or otherwise failed to provide comfort on the high-risk, related-party account activity.  Ex. H.  The FRBNY informed BSJI it was moving forward with closure on July 31, 2023.  *Id.* at 1.

### D. The Court Rejects BSJI's Motion for a Preliminary Injunction, Including Because BSJI Cannot Show Serious Questions on the Merits of Its Claims

On July 24, 2023, BSJI initiated this action and sought a preliminary injunction blocking account closure, asserting a legal right to its account under the FRA.  Because the FRA does not provide a private right of action, BSJI raised its asserted entitlement through the APA, the Mandamus Act, the Declaratory Judgment Act, and the Due Process Clause of the Fifth Amendment.  ECF 1 at 39-43.  BSJI further contended that closure breached a contractual duty of care and the implied duty of good faith and fair dealing.  *Id.* at 43-45.

The Court denied BSJI's preliminary injunction motion on October 27, 2023 because BSJI had not met any of the requisite factors for an injunction.  ECF 106.  As to the merits, the Court held that BSJI not only failed to demonstrate a likelihood of success but had not even raised serious questions about them.  PI Order at 16-29.  The Court ruled that BSJI has no "right" to a master account under the FRA, which gives Reserve Banks discretion to close accounts, and even if such a right existed, BSJI had contractually waived it.  *Id.* at 22.

The Court also determined BSJI is not likely to succeed on its APA claim because (i) the FRBNY is not an "agency" covered by the statute, *id.* at 23-25; (ii) account decisions are not reviewable because they are discretionary, *id.* at 25-26; and (iii) "there is no likelihood that the FRBNY's decision . . . was arbitrary or capricious or contrary to law," *id.* at 27.  In addition, the Court ruled that BSJI's due process claim fails because BSJI has no "protectable property interest" in its account and the parties' correspondence shows BSJI had a full and fair opportunity to be heard.  *Id.* at 28-29.  Finally, the Court found BSJI is unlikely to prevail on its

contract claims because the FRBNY has clear contractual rights to close BSJI's account and the decisional documents rebut BSJI's assertion of bad faith. *Id.*

On February 29, 2024, BSJI filed the Amended Complaint pursuing the same claims and legal theories that this Court had just rejected. The Amended Complaint pleads legal arguments about the FRA as if they were facts in an effort to relitigate BSJI's purported entitlement to an account. AC ¶¶ 45-69. BSJI also asserts in conclusory fashion that the Federal Reserve System has a policy of "targeting" novel banks in Wyoming and Puerto Rico. *Id.* ¶¶ 12-16. Finally— recognizing that the FRBNY has discretion to terminate its account—BSJI alleges that the decision to do so was wrong because BSJI's paid expert disagrees. *Id.* ¶¶ 18, 126-27. None of these purported "facts," even if well-pled, provide any basis to disturb the Court's prior rulings.

## LEGAL STANDARD

A court must dismiss a claim under Rule 12(b)(1) if it "lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); Fed R. Civ. P. 12(b)(1). The party asserting subject matter jurisdiction bears "the burden of proving by a preponderance of the evidence that it exists." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). On a Rule 12(b)(1) motion, factual allegations are accepted as true, but the Court "will not draw inferences in the plaintiff's favor when determining whether there is jurisdiction," and "may consider evidence outside the pleadings." *In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 310 (S.D.N.Y. 2019).

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the plausibility standard . . . asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208-09 (2d Cir. 2014).

## ARGUMENT

In denying BSJI injunctive relief, the Court rejected the core legal and factual bases of the Amended Complaint's claims. Under the law of the case doctrine, "sound policy" dictates that the Court adhere to its prior findings absent "cogent and compelling reasons." *U.S. v. Aquart*, 92 F.4th 77, 87 (2d Cir. 2024); *see also U.S. v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000) ("major grounds justifying reconsideration are [1] an intervening change of controlling law, [2] the availability of new evidence, or [3] the need to correct a clear error or prevent manifest injustice"); *RiseandShine Corp. v. Pepsico Inc.*, 21 Civ. 6324 (LGS), 2023 WL 4936000, at *5-6 (S.D.N.Y. Aug. 2, 2023) (preliminary injunction ruling is law of the case where prior holding was "entirely a conclusion of law" or "based on a fully developed record"). No such compelling reasons exist and the Court's findings remain sound. For the reasons detailed below, dismissal is warranted.

## I.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER BSJI'S APA, MANDAMUS, AND DECLARATORY JUDGMENT ACT CLAIMS

### A.   Reserve Bank Master Account Decisions Are Not Subject to APA Review Because They Are Discretionary and Reserve Banks Are Not "Agencies"

BSJI's APA claim—asserting that the closure of its account due to money-laundering concerns was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," AC ¶ 173 (citing 5 U.S.C. § 706(2)(A))—should be dismissed under Rule 12(b)(1).

*First*, even assuming arguendo that the FRBNY is an "agency," as BSJI alleges, the APA expressly bars courts from reviewing actions that are "committed to agency discretion by law."

5 U.S.C. § 701(a)(2).  This APA carve-out jurisdictionally precludes review of actions taken pursuant to "governing law [that] 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'"  *Vela-Estrada v. Lynch*, 817 F.3d 69, 71 (2d Cir. 2016) (citation omitted); *Keane v. Chertoff*, 419 F. Supp. 2d 597, 602 (S.D.N.Y. 2006) ("[T]his court must have the statutory or regulatory measuring stick in hand before the APA applies.  Because plaintiff has not identified any provision that constrains the [defendant's] discretion . . . federal question jurisdiction does not exist.").[5]

Here, as the Court held, Section 13 of the FRA commits account closure decisions to Reserve Bank discretion—and thus bars APA review—because the FRA authorizes Reserve Banks to deny account access and provides no standard to assess the exercise of that discretion.  PI Order at 26 ("The FRA provides the FRBNY with discretion to open or terminate Master Accounts. . . . The statute therefore forecloses judicial review under the APA.").  Section 13 states that a Reserve Bank "may receive" deposits "from any of its member banks, or other depository institutions."  12 U.S.C. § 342.  It thus makes clear that "Federal reserve banks are authorized to maintain Master Accounts, but are not required to do so,"  PI Order at 16-17.

This reading of the statute is consistent with the Supreme Court's holding "that 'may' in Section 342 merely 'confers authority' to act, and does not mean 'shall.'"  *Id.* at 17 (citing *Farmers & Merch. Bank of Monroe, N.C. v. Fed Rsrv. Bank of Richmond*, 262 U.S. 649, 662 (1923).  Indeed, Congress recently "confirm[ed]" this discretion by amending the FRA in 2022—as part of the National Defense Authorization Act—to require the Board of Governors to

---

[5] Courts also dismiss APA claims on this ground under Rule 12(b)(6).  *Sierra Club & Valley Watch, Inc. v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011).

create an online database of "every entity that submits an access request for a reserve bank

master account and services . . . including whether . . . a request was approved, *rejected*, pending,

or withdrawn."  *Id.* at 18 (citing 12 U.S.C. § 248c(b)(1)) (emphasis added).

BSJI incorrectly alleges that a later-enacted FRA provision, 12 U.S.C. § 248a(c)(2),

overrides the plain text of Section 13 and gives it a nondiscretionary right to an account.  AC ¶

169.  The Court already rejected this misreading, holding that Section 248a does not "require

Federal reserve banks to afford Master Accounts to every depository institution that requests"

one, regardless of the risk they pose.  PI Order at 18.  Section 248a(c)(2) "is directed to the

Board, not Federal reserve banks, and is best read as a clause preventing price discrimination in

favor of banks that are members of the Federal Reserve System."  *Id.*  As the Court reasoned:

> The section entitled 'Pricing of Services' instructs the Board to 'put into effect a schedule
> of fees' for certain services based on certain principles.  12 U.S.C. § 248a(a).  Among
> these principles, the Board is instructed that ' [a]ll Federal reserve bank services covered
> by the fee schedule shall be available to nonmember depository institutions and such
> services shall be priced at the same fee schedule applicable to member banks. . . .'"  12
> U.S.C. § 248a(c)(2).  Section 248a(b) enumerates the 'covered services,' and makes no
> reference to Master Accounts, much less commands the Board to direct the opening of a
> master account for every institution that seeks one regardless of risk.  And the section
> does not even state that the services covered by the fee schedule shall be available to 'all
> nonmember depository institutions.'

*Id.* at 18-19.

In response to this clear ruling, BSJI amended its complaint in a futile attempt to

relitigate this pure question of law.  AC ¶ 45 (alleging that for "well over thirty years"

institutions had unfettered right to a master account as "a matter of fact").  But this claimed

historical right is contradicted by the facts: the MAA BSJI executed over a decade ago confirmed

the FRBNY's right to terminate.  Nor is it relevant that a handful of current and recent members

of Congress, *id.* ¶¶ 12; 67-68, and a single appellate judge, *id.* ¶¶ 69—whose colleagues declined

to join him and whose views are "neither controlling . . . nor persuasive," PI Order at 21—

believe that certain institutions are entitled to a master account.  As this Court correctly held, the plain text of the FRA dictates that Reserve Banks have discretion to deny account access.  BSJI's APA claim is thus subject to Rule 12(b)(1) dismissal.

*Second*, the FRBNY is not an "agency" subject to APA review.  PI Order at 23-25.  The APA defines "agency" as an "authority of the Government of the United States."  5 U.S.C. § 701(b)(1).  To qualify, an entity must "exercise substantial independent authority" on behalf of the government or, in other words, be the "center of gravity in the exercise of administrative power."  *Dong v. Smithsonian Inst.*, 125 F.3d 877, 881-82 (D.C. Cir. 1997).  This definition of "agency" is "restrictive."  *N.Y. v. Atl. States Marine Fisheries Comm'n*, 609 F.3d 524, 531 (2d Cir. 2010) (inquiry "examine[s] structure, function, and mandate" of entity).

As the Court found, "Congress has gone out of its way to formally separate the [Federal reserve banks] from the federal government" and did not make them "part of any executive department or agency."  PI Order at 23 (citing *Kraus*, 943 F.3d at 592); *see also id.* at n.23 ("[T]he legislative history of the FRA suggests that Congress intended the [Federal reserve banks] to serve the interests of, but stand apart from, the sovereign.").  By deliberate Congressional design, Reserve Banks are "independent entit[ies] independently run by [their] own board of directors . . . not by the Federal Reserve Board of Governors or any other part of the executive branch."  *Scott v. Fed. Rsrv. Bank of Kan. City*, 406 F.3d 532, 535 (8th Cir. 2005); *see also Kraus*, 943 F.3d at 598 ("Congress has considered the status of the [Reserve Banks] on multiple occasions and decided not to convert them formally into government agencies.").  BSJI's APA claim thus fails.

### B.  BSJI's Mandamus Claim Is Deficient Because BSJI Has No Right to an Account and the FRBNY Is Not an "Agency"

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff."  28 U.S.C. § 1361.  The Amended Complaint does not satisfy these bare requirements for mandamus relief.

*First*, under the Act's express terms, mandamus can only be used to compel a defendant to carry out a "duty owed" to the plaintiff.  *Id*. "The action that the plaintiff seeks to compel must be subject to positive command, plainly described, and free from doubt."  *Blue Angel Realty, Inc. v. U.S.*, 20 Civ. 8220 (KPF), 2022 WL 94599, at *12 (S.D.N.Y. Jan. 8, 2022) (citation omitted).  A plaintiff must show that "there is a clear right to the relief sought" and that the government "has a plainly defined and peremptory duty to perform the act in question."  *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008).

BSJI cannot make this threshold showing in seeking to compel the reinstatement of its account.  Far from containing a plainly described "clear right" to an account, the FRA gives Reserve Banks discretion to deny account access.  *Supra* at 12-14; PI Order at 16 n.5 (BSJI's mandamus claim cannot "succeed on the merits because BSJI has no clear right to a Master Account under" the FRA); *Casarino v. U.S.*, 431 F.2d 775, 777 (2d Cir. 1970) ("[A] court cannot, pursuant to its mandamus jurisdiction, 'direct the exercise of judgment or discretion in a particular way.'").

*Second*, as detailed above, the FRBNY is not an "agency" under 28 U.S.C. § 1361.  The FRBNY is a federal instrumentality that serves the interests of, but is formally separate from, the sovereign and is not part of any "executive . . . agency."  *Kraus*, 943 F.3d 588, 596-597 (2d Cir. 2019); PI Order at 23-25; *see also Emergency Fleet Corp. v. W. Union Tel. Co.*, 275 U.S. 415,

425-26 (1928) ("Instrumentalities like . . . the federal reserve bank, in which there are private interests, are not departments of the government.").  The Court thus lacks jurisdiction over this claim.

### C.   BSJI's Declaratory Judgment Act Claim Fails Because the Underlying Statute—the FRA—Does Not Provide a Private Cause of Action

The Declaratory Judgment Act states that "[i]n case of actual controversy within its jurisdiction . . ., any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201.  But satisfying this provision does not itself empower a court to consider a declaratory judgment claim.  The Act is "procedural only" and "does not create an independent cause of action."  *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244-45 (2d Cir. 2012).  A plaintiff may therefore "only seek declaratory judgment [clarifying its rights] under" a federal statute "if there is a private cause of action under that statute."  *Johnson v. JPMorgan Chase Bank, N.A.*, 488 F. Supp. 3d 144, 157 (S.D.N.Y. 2020) (dismissing declaratory judgment act claim seeking to enforce CARES Act because CARES Act does not provide private right of action).  Here, there is no dispute that the statute under which BSJI asks the Court to declare its rights—the FRA—does not give rise to a private cause of action.  The Court thus lacks subject matter jurisdiction over BSJI's declaratory judgment claim.

The Court should also dismiss the claim because "[d]eclaratory relief is intended to operate prospectively.  There is no basis for declaratory relief where only past acts are involved." *Lojan v. Crumbsie*, No. 12 CV. 0320 (LAP), 2013 WL 411356, at *5 (S.D.N.Y. Feb. 1, 2013); *Tang Cap. Partners v. BRC Inc.*, 661 F. Supp. 3d 48, 78 (S.D.N.Y. 2023) ("Declaratory judgments may provide relief from uncertainty when they are directed towards prospective relief, but declaratory judgments resolving disputes over past acts are inappropriate.").  The Amended

Complaint's declaratory judgment claim does not seek prospective clarification of BSJI's rights, but concerns the closure of its account, which is improper and an independent ground for dismissal.

## II.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

### A.  BSJI's APA, Mandamus, Declaratory Judgment Act, and Due Process Claims All Fail Because BSJI Has No Entitlement to a Master Account

BSJI's APA, mandamus, declaratory judgment, and due process claims all turn on an alleged "right" to a master account under FRA Section 248a that does not exist.  *See* AC ¶ 169 (asserting FRBNY violated the APA because it is "mandated by 12 U.S.C. § 248 to provide [accounts and services] to all eligible 'depository institutions' on a non-discretionary basis"); *id.* ¶ 178 ("Mandamus is appropriate here given that BSJI is entitled by law to a master account" under "12 U.S.C. § 248"); *id.* ¶ 189 (seeking declaratory judgment "from this Court that BSJI has a right to its master account and that the termination" of the account "was contrary to the statutory obligations" under FRA Section 248); *id.* ¶¶ 191-93 (asserting BSJI's purported right to an account is a "property interest" and that closure violated due process clause).

These claims are all subject to Rule 12(b)(6) dismissal because, as the Court found, Section 248a does not create any right to a master account.  *See supra* at 12-14; PI Order at 27 ("There is no likelihood that the FRBNY's decision to terminate BSJI's account was . . . contrary to law" under the APA); *id.* 16 n.5 (mandamus and declaratory judgment claims cannot "succeed because BSJI has no clear right to a Master Account" under Section 248a); *id.* at 28-29 ("BSJI does not have a protectable property interest in a Master Account.").

Moreover, as the Court recognized, even if Section 248a gave BSJI a "right" to an account in the first instance—which it does not—"whatever rights BSJI may have had to open a Master Account is not at issue because BSJI had a Master Account and specifically agreed that

the FRBNY had the right to terminate that account." PI Order at 22 (citing Master Account Agreement and Supplemental Terms). "There is no statute that provides that a Federal reserve bank lacks the power to terminate a Master Account;" rather there are agreements "governing the [account] that allowed the FRBNY to close [it]." *Id.* The FRBNY's decision to close BSJI's account was a straightforward exercise of its contract rights, unimpeded by any statute.

BSJI also "waived any 'right' when it entered into its contracts with the FRBNY that authorized the FRBNY to terminate the Master Account." *Id.* (citing *Columbus Park Corp. v. Dep't of Hous. Pres. & Dev. of the City of N.Y.*, 598 N.E. 2d 702, 706 (N.Y. 1992); *F.D.I.C. v. Four Star Holding Co.*, No. 97-CV-4184 (JFK), 2000 WL 256146, at *3 (S.D.N.Y. Mar. 7, 2000), *vacated on other grounds*, 271 F.3d 75 (2d Cir. 2001). This is true regardless of whether federal or state waiver law applies. BSJI is a sophisticated party that freely entered into its agreements; the Amended Complaint does not plausibly allege that BSJI's waivers were anything but "knowing and voluntary." *Bormann v. AT&T Commc'ns., Inc.*, 875 F.2d 399, 400 (2d Cir. 1989).

### B. BSJI's APA Claim Is Also Subject To Dismissal Because the Amended Complaint Cannot Plausibly Allege that the FRBNY's Decision Was Arbitrary or Capricious

BSJI alleges that "even assuming . . . some level of discretion concerning master account access," the decision to close BSJI's account should be set aside as arbitrary or capricious under the APA. AC ¶ 170. In support of this contention, the Amended Complaint asserts that BSJI's paid advisor, K2, disagreed with the FRBNY's analysis. *Id.* ¶¶ 134-35. But BSJI's "disagree[ment]" with the decision is not a basis for judicial intervention under the APA. PI Order at 28. Even if the APA applied here—which it does not, *supra* Section I.A.—"[t]he court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971); *see also Noroozi v. Napolitano*, 905 F.

Supp. 2d 535, 541 (S.D.N.Y. 2012).  Instead, the Court's role is "to determine whether the agency has considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action[.]"  *J. Andrew Lange, Inc. v. F.A.A.*, 208 F.3d 389, 391 (2d Cir. 2000).  This review is "highly deferential and presume[s] the [FRBNY's] action to be valid." PI Order at 26 (citation omitted).

To the extent BSJI claims that the FRBNY's alleged "policy" of "targeting IBEs and novel charter banks" is arbitrary or capricious, AC ¶ 16, that conclusory claim is neither well-pled nor supported by the facts.  BSJI also contends that the termination of its account was not "fact-specific" or "evidence based."  AC ¶ 10.  But as the Court correctly held, the decisional documents detailing the risk-based grounds for closure and related communications show that the closure decision was supported by a "thorough review of the evidence and pertinent factors and resulted in a decision that explained the FRBNY's rationale."  PI Order at 27; Ex. F.  "There is no likelihood that the FRBNY's decision to terminate BSJI's account was arbitrary or capricious[.]"  PI Order at 27.

### C.  BSJI's Due Process Claim Should Be Dismissed For the Additional Reason that BSJI Cannot Plausibly Allege It Was Denied Procedural Protections

Due process requires only "notice and opportunity for hearing appropriate to the nature of the case."  *S.E.C. v. Jett*, 514 F. Supp. 2d 532, 536 (S.D.N.Y. 2007).  As the Court held, the FRBNY's "extensive consideration of BSJI's arguments" against closure—as reflected in the letters incorporated by the Amended Complaint, Exs. G, H—satisfies any due process protections that could apply here.  PI Order at 29 ("[I]t cannot be found that BSJI was denied a full and fair opportunity to be heard on the decision to close its Master Account.").

The FRBNY informed BSJI of its money-laundering concerns and closure decision, AC ¶ 122, Ex. G; reviewed materials provided by BSJI over the course of two months; participated in

a discussion, Ex. H at 1 n.1; and sent a further letter explaining why the information provided did

not alter the FRBNY's decision, Ex. H.  No further consideration was required.  *S.E.C.*, 514 F.

Supp. 2d at 536 (all that is required is "an opportunity to present . . . objections").

### D.  The FRBNY's Exercise of Its Rights to Close BSJI's Account Did Not Breach Any Contractual Obligation

BSJI's claims that the FRBNY's account closure breached both a purported duty of good

care in OC 1 and the implied covenant of good faith and fair dealing are deficient.

*First*, BSJI's "duty of good care" claim relies on a limitation of liability provision that

contains no affirmative "duty of care."  AC ¶ 196 (citing OC 1 Section 7.1).  The provision

states:

> [A] Reserve Bank shall be liable only to an Account Holder and only for actual damages
> incurred by the Account Holder and proximately caused by the Reserve Bank's lack of
> good faith and failure to exercise ordinary care.  A Reserve Bank is not liable for lost
> profits, claims by third parties, or consequential or incidental damages, even if the
> Reserve Bank has been informed of the possibility of such damages.

Ex B at 15.  This term merely delineates the types of damages for which the FRBNY can be

liable; nothing in it "imposes upon the FRBNY" a generalized "duty of care" unmoored from

any specific act or obligation to BSJI.  AC ¶ 196.   Rather, the provision limits any FRBNY

liability that might arise *independent* of Section 7.1.  No such liability exists here.

Regardless, OC1 otherwise makes clear that the FRBNY had the unqualified contractual

right to close BSJI's account "at any time by notice to [BSJI]."  Ex. B at 7.  The FRBNY's

exercise of that express right cannot constitute bad faith or lack of ordinary care.  PI Order at 29

("FRBNY had the [contractual] right . . . to terminate"); *Joseph Victori Wines, Inc. v. Vina Santa

Carolina S.A.*, 933 F. Supp. 347, 352 (S.D.N.Y. 1996) ("Under New York law, where the parties

to a contract have agreed to a written termination clause, it must be enforced as written."); *A.J.

Temple Marble & Tile v. Long Island R.R.*, 256 A.D.2d 526 (N.Y. App. Div. 2d Dep't 1998)

("[A] party has an absolute, unqualified right to terminate a contract on notice pursuant to an unconditional termination clause without court inquiry into whether the termination was activated by an ulterior motive.").

*Second*, BSJI's implied covenant claim is duplicative of its breach of contract claim and thus subject to dismissal. "Generally, under New York law, a cause of action alleging breach of the implied covenant of good faith and fair dealing is duplicative of a cause of action alleging breach of contract." *Gillespie v. St. Regis Residence Club*, 343 F. Supp. 3d 332, 341 (S.D.N.Y. 2018). An implied covenant claim can "survive a motion to dismiss only 'if it is based on allegations different than those underlying the accompanying breach of contract claim' and if the relief is not 'intrinsically tied to the damages allegedly resulting from the breach of contract.'" *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 496 (S.D.N.Y. 2011).

Here, BSJI's implied covenant claim is based on the same facts underlying its breach of contract claim and thus must be dismissed. *Compare* AC ¶ 198 (listing alleged facts supporting duty of care claim) *to* AC ¶ 205 (listing same alleged facts supporting implied covenant claim); *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 352 (S.D.N.Y. 2021) (dismissing claim for breach of implied covenant because it was "duplicative of [plaintiff's] claim for breach of contract, which rests on the same factual allegations").

Moreover, "the implied covenant of good faith cannot create duties that negate explicit rights under a contract." *LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013); *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 91 (N.Y. 1983) (same). The FRBNY had the unqualified contractual right to close BSJI's account "at any time" and it exercised that right in light of its significant money-laundering concerns. BSJI cannot now seek to invoke the implied covenant in an effort to limit the unqualified termination provision to

which it agreed. *Antartica Star I, LP v. Gibbs Int'l, Inc.*, 15-cv-2630 (KBF), 2017 WL 590314, at *6 (S.D.N.Y. Feb. 14, 2017) (dismissing implied covenant claim where "sophisticated parties" had agreed to "language [in] termination clause" that was "unqualified"). BSJI's "allegations charge [the FRBNY] with nothing more than exercising [its] rights under [OC1]; such behavior is not actionable." *CIBC Bank & Trust Co. (Cayman) Ltd. v. Banco Cent. do Brasil*, 886 F. Supp. 1105, 1118 (S.D.N.Y. 1995).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint with prejudice.

Dated:   March 22, 2024
New York, New York

Respectfully submitted,

FEDERAL RESERVE BANK OF NEW YORK


*/s/ Jonathan K. Youngwood*

Jonathan K. Youngwood
Meredith Karp
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
T: (212) 455-2000
F: (212) 455-2502
jyoungwood@stblaw.com
meredith.karp@stblaw.com

Michael Brennan
Michele Kalstein
33 Liberty Street
New York, NY 10045
T: (212) 720-8235
F: (212) 720-8709
michael.brennan@ny.frb.org
*Counsel for Defendant*
*Federal Reserve Bank of New York*

**CERTIFICATE OF COMPLIANCE**

In accordance with Section II.D of the Court's Individual Practices, excluding the cover page, table of contents, table of authorities, and this certificate of compliance, the FRBNY's memorandum of law in support of its motion to dismiss the Amended Complaint contains 6,977 words, including footnotes, and complies with the formatting rules set forth in that provision.

Dated: March 22, 2024

        */s/ Jonathan K. Youngwood*
Jonathan K. Youngwood
Meredith Karp
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
T: (212) 455-2000
F: (212) 455-2502
jyoungwood@stblaw.com
meredith.karp@stblaw.com