**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| BANCO SAN JUAN INTERNACIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:23-cv-6414 |
| v. | ) | |
| | ) | |
| FEDERAL RESERVE BANK OF NEW YORK | ) | |
| and BOARD OF GOVERNORS OF | ) | |
| THE FEDERAL RESERVE SYSTEM, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT BOARD OF GOVERNORS OF
THE FEDERAL RESERVE SYSTEM'S MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

Mark Van Der Weide, General Counsel
Richard M. Ashton, Deputy General Counsel
Joshua P. Chadwick (JC9369), Senior Special Counsel
Yvonne F. Mizusawa (YM5081), Senior Counsel
Nicholas Jabbour (*pro hac vice*), Senior Counsel
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, D.C. 20551
(202) 263-4835
joshua.p.chadwick@frb.gov

*Counsel for Defendant Board of Governors of the
Federal Reserve System*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................................... 2

I.      The Federal Reserve System and Master Accounts ........................................................ 2

        A.      Statutory Framework ........................................................................................ 2

        B.      The Reserve Banks' Historical Exercise of Account Discretion ............................. 3

        C.      The Board's Guidelines and S-Letter Continue to Affirm Reserve Bank
                Discretion with Respect to Master Accounts ........................................................ 5

II.     The Board's Alleged Involvement Concerning BSJI's Master Account ........................... 7

III.    Procedural History ..................................................................................................... 8

LEGAL STANDARD ............................................................................................................. 9

ARGUMENT ...................................................................................................................... 10

I.      All Claims Against the Board Should Be Dismissed Because BSJI Lacks Standing ....... 10

II.     Count I, Seeking Relief Under the APA, Should Be Dismissed for Lack of Subject
       Matter Jurisdiction and Because It Does Not State a Valid Claim for Relief .................. 14

        A.      BSJI's APA Claim Is Barred by Sovereign Immunity Because It Concerns
                Action "Committed to Agency Discretion by Law" ............................................. 14

        B.      BSJI's APA Claim Does Not Establish a Right to Relief Because the Board
                Is Neither Required nor Able to Provide a Master Account to BSJI ..................... 16

III.    Count II, Seeking Relief Under the Mandamus Act, Is Barred by Sovereign Immunity
       Because the Board Does Not Have a Mandatory Duty with Respect to BSJI ................. 21

IV.    Count III Should Be Dismissed Because There Is No Subject Matter Jurisdiction for
       Declaratory Judgment Act Claims ............................................................................. 22

i

V.      Count IV, Seeking Relief Under the Due Process Clause, Does Not State a Valid
        Claim for Relief ................................................................................................................. 22

CONCLUSION................................................................................................................................ 23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................................... 10

*Benzman v. Whitman,*
    523 F.3d 119 (2d Cir. 2008)............................................................................ 21

*Biden v. Texas,*
    597 U.S. 785 (2022)........................................................................................... 17

*Billings Utility Co. v. Advisory Committee Board of Governors,*
    135 F.2d 108 (8th Cir. 1943) ......................................................................... 18

*Brass v. American Film Technologies, Inc.,*
    987 F.2d 142 (2d Cir. 1993)............................................................................ 6

*Cheney v. U.S. District Court for D.C.,*
    542 U.S. 367 (2004)........................................................................................... 21

*Custodia v. Federal Reserve Board of Governors,*
    640 F. Supp. 3d 1169 (D. Wy. 2022).......................................................... 19

*Duamutef v. INS,*
    386 F.3d 172 (2d Cir. 2004)............................................................................ 21

*Duke Power Co. v. Carolina Environmental Study Group, Inc.,*
    438 U.S. 59 (1978)............................................................................................. 22

*Farmers & Merchants Bank v. Federal Reserve Bank of Richmond,*
    262 U.S. 649 (1923)................................................................................... 17, 18

*Fourth Corner Credit Union v. Federal Reserve Bank of Kansas City,*
    861 F.3d 1052 (10th Cir. 2017) ................................................................... 20

*Gagliardi v. Vill. of Pawling,*
    18 F.3d 188 (2d Cir. 1994)............................................................................ 22

*Heckler v. Chaney,*
    470 U.S. 821 (1985)................................................................................... 14, 15

*Henderson v. Shinseki*,
    562 U.S. 428 (2011)..............................................................................................19

*Hirshfield v. United States*,
    No. 99 Civ. 1828 (RWS), 2001 WL 579783 (S.D.N.Y. May 30, 2001) ..................15, 16

*Jet Courier Services, Inc. v. Federal Reserve Bank of Atlanta*,
    713 F.2d 1221 (6th Cir. 1983) ...............................................................................17

*Johnson v. City of Annapolis*,
    Civ. Nos. CCB-21-1120, 21-1074, 2023 WL 3390823 (D. Md. May 11, 2023)..............13

*Junel Food Center Corp. v. United States*,
    No. 97 cv 7181 (JFK), 1997 WL 634175 (S.D.N.Y. Oct. 15, 1997)..............................12

*Kuck v. Danaher*,
    822 F. Supp. 2d 109 (D. Conn. 2011) ....................................................................11

*Lewis v. United States*,
    680 F.2d 1239 (9th Cir. 1982) ...............................................................................13

*Libertarian Party of Erie County  v. Cuomo*,
    970 F. 3d 106 (2d Cir. 2020), *abrogated on other grounds, New York State Rifle &*
    *Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) ..................................12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..............................................................................1, 10, 13

*Lunney v. United States*,
    319 F.3d 550 (2d Cir. 2003)...............................................................................14, 15

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)....................................................................................6

*Marino v. Town of Branford*,
    No. 3:17-cv-1828 (MPS), 2018 WL 691715 (D. Conn. Feb. 2, 2018) ..........................12

*Merit Management Group, LP v. FTI Consulting, Inc.*,
    583 U.S. 366 (2018)...............................................................................................17

*Raichle v. Federal Reserve Bank of New York*,
    34 F.2d 910 (2d Cir. 1929).....................................................................................18

*Schilling v. Rogers*,
    363 U.S. 666 (1960)...............................................................................................22

*Shipping Financial Services Corp. v. Drakos*,
    140 F.3d 129 (2d Cir. 1998)..............................................................................9, 11

*Simon v. Eastern Kentucky Welfare Rights Organization*,
    426 U.S. 26 (1976)..................................................................................................13

*Sprecher v. Graber*,
    716 F.2d 968 (2d Cir. 1983)..................................................................................21

*TNB USA Inc. v. FRBNY*,
    1:18-cv-7978 (ALC), 2020 WL 1445806 (S.D.N.Y. Mar. 25, 2020)..............20

*Town of Castle Rock, Colorado v. Gonzales*,
    545 U.S. 748 (2005)..............................................................................................22

*United States v. Armstrong*,
    517 U.S. 456 (1996)..............................................................................................15

*Whitman v. American Trucking Associations*,
    531 U.S. 457 (2001)..............................................................................................19

**Statutes**

5 U.S.C. § 701...........................................................................................................15

5 U.S.C. § 701(a)(2)...........................................................................................2, 9, 14

5 U.S.C. § 702.............................................................................................................9

12 U.S.C. § 221 *et seq*................................................................................................2

12 U.S.C. §§ 241-252...............................................................................................19

12 U.S.C. § 248a.............................................................2, 14, 16, 17, 19, 21, 22

12 U.S.C. § 248a(a).............................................................................................11, 16

12 U.S.C. § 248a(c)...................................................................................................16

12 U.S.C. § 248c.........................................................................................11, 19, 20

12 U.S.C. § 248c(b)(1)..............................................................................................18

12 U.S.C. § 248(j).........................................................................................1, 3, 15, 16

12 U.S.C. § 301.........................................................................................................11

12 U.S.C. §§ 341-361 ............................................................................................ 12, 19

12 U.S.C. § 341 (sixth) ............................................................................................. 11

12 U.S.C. § 341 (seventh) ......................................................................................... 11

12 U.S.C. § 342 ........................................... 2, 3, 4, 6, 9, 11, 12, 16, 17, 18, 19, 20, 21

12 U.S.C. § 348 ......................................................................................................... 18

28 U.S.C. § 1361 ....................................................................................................... 21

28 U.S.C. § 2201 ....................................................................................................... 22

## Rules

Federal Rule of Civil Procedure 12(b)(1) ......................................................... 1, 6, 9

Federal Rule of Civil Procedure 12(b)(6) ....................................................... 1, 6, 10

## Regulatory Materials

Guidelines for Evaluating Account and Services Requests,
    87 Fed. Reg. 51,099 (Aug. 19, 2022) (Guidelines) ........................................ 5, 6

## Other Authorities

Board of Governors of the Federal Reserve System, Federal Reserve Bulletin (Feb. 1964),
    https://fraser.stlouisfed.org/title/federal-reserve-bulletin-62/february-
    1964-21350 ........................................................................................................ 4

Board of Governors of the Federal Reserve System, *Interstate Branching: New Account
    Structure* (last accessed Mar. 22, 2024),
    https://www.federalreserve.gov/generalinfo/isb/qanda.htm ................................ 3

Board of Governors of the Federal Reserve System, Meeting Minutes, July 26, 1945,
    https://fraser.stlouisfed.org/files/docs/historical/nara/bog_minutes/19450726
    _Minutes.pdf ...................................................................................................... 4

Chester Morrill, Secretary, Board of Governors of the Federal Reserve System,
    Letter X-9187 (Apr. 26, 1935), https://fraser.stlouisfed.org/archival-
    collection/mimeograph-letters-statements-board-4957/letter-secretary-morrill-re-
    nonmember-bank-clearing-accounts-505912 ...................................................... 3

Federal Reserve Banks Operating Circular 1, Account Relationships
(Jan. 2, 1998), web.archive.org/web/20000116011948/http://www.frbservices.org/
Industry/pdf/Oc1.pdf.................................................................................................... 5

Federal Reserve Banks Operating Circular 1, Account Relationships
(Sept. 1, 2023), https://www.frbservices.org/binaries/content/assets/crsocms/resources/
rules-regulations/090123-operating-circular-1.pdf........................................................... 5

The Federal Reserve, FRB Services.org, *Master Account* (last accessed Mar. 22, 2024),
https://www.frbservices.org/financial-services/accounting/service-setup/master-
account.html................................................................................................................... 2

H.R. 69, 63 Cong. 1st Sess. (1913)............................................................................... 13

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Board of Governors of the Federal Reserve System ("Board") respectfully submits this memorandum of law in support of its motion to dismiss the amended complaint filed by Plaintiff Banco San Juan Internacional, Inc. ("BSJI").

## INTRODUCTION

BSJI's amended complaint suffers from the same fatal flaw as its original complaint: the decision to terminate BSJI's master account was made by the Federal Reserve Bank of New York ("FRBNY"), not by the Board. And the writ of mandamus that BSJI seeks to force the reopening of its master account could only be issued against FRBNY, because the Board is not a bank and does not open, close, or maintain master accounts. BSJI has not, and cannot, allege facts demonstrating that it has standing to pursue any claims against the Board as a result. Tellingly, the amended complaint alleges only two instances of the Board's involvement with respect to BSJI: one in which the Board validated that FRBNY's decision to terminate BSJI's account comported with recently promulgated guidelines, and one in which the Board rebuffed the request of BSJI's consultant to overrule FRBNY's decision. *See* Amended Complaint ¶¶ 155, 156. Neither of these facts provide grounds to conclude that BSJI's claimed injury is "fairly traceable" to the Board, or that a favorable decision against the Board would yield the master account reinstatement that BSJI has requested. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation omitted). The Board should be dismissed from this case on this basis alone.

BSJI fares no better on the substance of its claims. To the extent BSJI clams that the Board must order FRBNY to reinstate the master account, this command would have to arise under the Board's general supervisory authority. *See* 12 U.S.C. § 248(j). However, the exercise

1

of that authority is "committed to agency discretion by law" (5 U.S.C. § 701(a)(2)) and therefore exempt from judicial review. In addition, BSJI's contention that it is has an inviolate entitlement to a master account under 12 U.S.C. § 248a is without merit. The plain text of that provision does not say anything about master accounts, much less require that the Board compel Reserve Banks to provide them to every depository institution in every instance regardless of the severity of risks presented.

Because of the incurable problems with the amended complaint, the Board respectfully requests that the Court dismiss it with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The Federal Reserve System and Master Accounts

#### A.    Statutory Framework

The Federal Reserve System, the nation's central bank, was established in 1913 by the Federal Reserve Act, 12 U.S.C. § 221 *et seq* ("FRA"). It consists of the Board, the Federal Open Market Committee, and twelve regional Federal Reserve Banks. A Federal Reserve Bank may offer banking services to a depository institution in its district through a master account, which "is the record of financial rights and obligations of an Account Holder and the [regional] Reserve Bank . . . with respect to each other, where opening, intraday and closing balances are determined." Federal Reserve Bank Services, *Master Account*.[1] As deposit accounts, master accounts are governed by 12 U.S.C. § 342, which provides that "[a]ny Federal reserve bank may receive from any of its member banks, or other depository institutions . . . deposits of current

---

[1] *Available at* https://www.frbservices.org/financial-services/accounting/service-setup/master-account.html.

funds in lawful money."

The Board can "exercise general supervision over [the] Federal reserve banks," 12 U.S.C. § 248(j), and thus may issue guidance with regard to master accounts. However, the Board has no ability to open or terminate a master account and does not handle the administration of any institution's master account. *See* 12 U.S.C. § 342.

### B.    The Reserve Banks' Historical Exercise of Account Discretion

Section 342 has long been understood to grant Reserve Banks discretion as to deposit-taking accounts. This discretion was demonstrated early in the Federal Reserve's history when a Reserve Bank raised with the Board in 1935 "a question of policy with respect to the circumstances and conditions under which clearing accounts of nonmember banks should be accepted under the authority of Section 13 of the Federal Reserve Act [12 U.S.C. § 342]."[2] Letter X-9187 (Apr. 26, 1935), at 365.[3] The Board surveyed Reserve Banks, and many reported that they declined to open such accounts in various circumstances. For instance, the Federal Reserve Bank of Dallas reported that "in considering an application from a nonmember bank to become a clearing member we simply weigh all the facts." *Id.* at 371. The Board in no way required that

---

[2] Beginning in 1998, the Federal Reserve no longer used the term "clearing account" and incorporated these accounts into its revised "master account" structure. *See Interstate Branching: New Account Structure*, *available at* https://www.federalreserve.gov/generalinfo/isb/qanda.htm ("All credits and debits resulting from the use of Federal Reserve services will be booked to this one account.").

[3] *Available at* https://fraser.stlouisfed.org/archival-collection/mimeograph-letters-statements-board-4957/letter-secretary-morrill-re-nonmember-bank-clearing-accounts-505912.

3

Reserve Banks open these accounts and acknowledged that such decisions were left to the discretion of the Reserve Banks, stating "it is the Board's view that requests for the establishment of clearing accounts by nonmember banks *should be passed upon by your directors in the light of all the circumstances surrounding each application*." *Id.* at 366 (emphasis added).

The issue of discretion arose again in 1945 when a financial institution questioned the Board about clearing accounts. Minutes of Board Meeting of July 26, 1945, at 2.[4] The Board unanimously approved a response stating that, pursuant to 12 U.S.C. § 342, it "has not prescribed specific conditions or requirements which should or should not be made by a Federal Reserve Bank in connection with the opening and maintenance of nonmember clearing accounts," but that a Federal Reserve Bank can "*in its discretion* accept[] such an account." *Id.* at 3 (emphasis added). Likewise, in 1964 the Board received an inquiry about whether branches of foreign banks and private banks were "nonmember banks" eligible to open clearing accounts at Reserve Banks pursuant to Section 342. *See* Federal Reserve Bulletin (Feb. 1964), at 168–69.[5] In response, the Board noted these institutions were eligible for a clearing account, but cautioned that the opening of such accounts was subject to the "discretion" of the Federal Reserve Bank whose district encompassed the institution. *Id.*

In 1998, the Reserve Banks began issuing circulars governing the relationship between a Reserve Bank and a master account holder. These circulars continued to make clear that Reserve

---

[4] *Available at*

https://fraser.stlouisfed.org/files/docs/historical/nara/bog_minutes/19450726_Minutes.pdf.

[5] *Available at* https://fraser.stlouisfed.org/title/federal-reserve-bulletin-62/february-1964-21350.

Banks exercise discretion with respect to master accounts for all institutions such that a Reserve Bank can terminate a master account at any time. For example, the applicable 1998 operating circular "establish[ed] the terms for opening, maintaining, and terminating master accounts with the Federal Reserve Bank." Operating Circular 1 (Jan. 2, 1998) ¶ 1.1.[6] In addition, the circular stated that "[a]ll master accounts are subject to Reserve Bank approval," and noted that the Reserve Bank "may close your master account . . . at any time but will endeavor to give at least five business days' prior notice." *Id.* ¶¶ 2.3, 2.8. These provisions are substantively similar to the comparable provisions in the most recent operating circular. *See* Operating Circular 1 (Sept. 1, 2023) ¶¶ 1.0, 2.6, 2.10.[7]

C.    **The Board's Guidelines and S-Letter Continue to Affirm Reserve Bank Discretion with Respect to Master Accounts**

More recently, the growth of novel charters and rise of uninsured depository institutions led the Board to establish more formalized processes to manage risk. *See* Amended Complaint ¶¶ 61, 149-152, 154. In August 2022, following two public notice-and-comment periods spanning fifteen months, the Board issued Guidelines for Evaluating Account and Services Requests. *See* 87 Fed. Reg. 51,099 (Aug. 19, 2022) ("Guidelines"); *see also* Amended Complaint ¶¶ 61, 149-152. The Guidelines set forth six principles for use in access decisions and create a three-tiered review framework that "is meant to serve as a guide to the level of due diligence and scrutiny to be applied by Reserve Banks to different types of institutions." 87 Fed. Reg. at

---

[6] *Available at*

web.archive.org/web/20000116011948/http://www.frbservices.org/Industry/pdf/Oc1.pdf.

[7] *Available at* https://www.frbservices.org/binaries/content/assets/crsocms/resources/rules-regulations/090123-operating-circular-1.pdf.

51,109. Consistent with 12 U.S.C. § 342 and historical practice, the Board's Guidelines continue to "make clear that legal eligibility does not bestow a right to obtain an account and services." 87 Fed. Reg. at 51,106. Rather, the Guidelines emphasize that "Reserve Banks . . . retain the discretion to deny a request for access to accounts and services where, in the Reserve Bank's assessment, granting access to the institution would pose risks that cannot be sufficiently mitigated." *Id.* at 51,102. Even when access is granted, the Reserve Bank "may impose (at the time of account opening, granting access to service, or any time thereafter) obligations relating to, or conditions or limitations on, use of the account or services as necessary to limit operational, credit, legal, or other risks." 87 Fed. Reg. at 51,106–07. However, "[i]f the obligations, limitations, or controls are ineffective in mitigating the risks identified . . . , the account-holding Reserve Bank may further restrict the institution's use of accounts and services or may close the account." *Id.* at 51,107.

In January 2023, the Board issued S-Letter 2677, which implemented the expectation set forth in the Guidelines that "Reserve Banks engage in consultation with" the Board, "as appropriate, to support consistent implementation of the Account Access Guidelines." 87 Fed. Reg. at 51,102; *see also* Amended Complaint ¶¶ 61, 154.[8] The S-Letter provides that Reserve

---

[8] On a motion to dismiss, the Court is allowed to consider the entirety of documents referenced in the complaint. *See, e.g.*, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (noting that, in 12(b)(1) motions, the court "may refer to evidence outside the pleadings"); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) ("documents attached to the complaint as an exhibit or incorporated in it by reference" can be considered in 12(b)(6) motions).

Banks should "consult, as appropriate, with Board staff" in evaluating requests for access to master accounts and Reserve Bank services to promote consistency under the Guidelines. Chadwick Declaration, Exhibit A, Attachment 1, at 1. And "[a]ny Reserve Bank that is considering an involuntary termination of access should consult the director of RBOPS [the Board's Division of Reserve Bank Operations and Payment Systems] prior to communicating any decision to an institution." *Id.* at 3. However, as the S-Letter notes, the decision to grant or deny a master account request rests with the Reserve Bank. *Id.* at 2.

## II.    The Board's Alleged Involvement Concerning BSJI's Master Account

The amended complaint centers on BSJI's belief that its master account was improperly terminated by the Board and FRBNY. However, the complaint demonstrates that the decision was made by FRBNY, with almost all of the factual allegations focused only on FRBNY. *See, e.g.*, Amended Complaint ¶¶ 70-147.

The amended complaint alleges only two instances in which the Board had involvement with respect to BSJI's master account, and in both cases, the Board did nothing to disturb FRBNY's decision to terminate BSJI's master account. *First*, in April 2023, FRBNY sent an email message to Matthew Eichner, the RBOPS Division Director, "notifying [him] of the intent of [FRBNY] to terminate the access of [BSJI] to [FRBNY] accounts and services." *Id.* ¶ 155; ECF 52 at Exhibit T. The email message attached two memoranda documenting the reasons for FRBNY's decision to close BSJI's account and summarized these memoranda as follows: "Through its ongoing risk monitoring of BSJI, [FRBNY] has concluded that BSJI . . . poses undue risk to the overall economy by facilitating activities such as money laundering, economic or trade sanctions violations, or other illicit activity." ECF 52 at Exhibit T. The email indicated that, "[g]iven the undue risk posed by BSJI," FRBNY "intends to exercise its contractual rights

to terminate BSJI's access to [FRBNY] accounts and services." *Id.* In response, Mr. Eichner

wrote: "We have no concerns with [FRBNY's] application of the Guidelines to BSJI and with it

moving forward with its intended action to terminate BSJI's access based on this analysis." *Id.*;

*see also* Amended Complaint ¶ 156.

 *Second*, BSJI's outside consultant asked the Board to intervene in an effort to stop

FRBNY from closing BSJI's master account. Amended Complaint ¶ 157. Yet the Board

declined, noting that the decision was FRBNY's to make. *Id.* As that consultant details:

> In a series of emails with legal counsel for the Board of Governors of the Federal
> Reserve System in Washington, D.C., people whom I respect, I asked for an
> "internal appellate avenue," [but] . . . Counsel for the Board of Governors advised
> . . . that the FRBNY "has discretion over BSJI's master account and access to
> Federal Reserve services."

ECF 11 ¶ 12.

## III.    Procedural History

 In April and June 2023, FRBNY gave notice to BSJI that it would terminate BSJI's

master account. Amended Complaint ¶ 6. In July 2023, BSJI initiated this lawsuit and

immediately moved for a preliminary injunction to halt the closure of its master account. ECF 1,

6, 7.

 In an October 24, 2023 Memorandum Opinion and Order, the Court denied BSJI's

motion for a preliminary injunction. ECF 106 ("PI Order"). With respect to the Board, the Court

held that, "[b]ecause the Board lacks enforcement power to open or terminate a Master Account,

BSJI does not have standing to obtain a preliminary injunction against the Board." *Id.* at 32-33.

As to FRBNY, the Court held that "[b]ecause BSJI has failed to meet the requirements for

obtaining a preliminary injunction against the FRBNY, the motion is denied." *Id.* at 1-2. The

Court rejected BSJI's claim that it had an automatic statutory right to a master account, holding

that "12 U.S.C. § 342 makes clear that Federal reserve banks are authorized to maintain Master Accounts, but are not required to do so." PI Order at 16-17. The Court also held that the Federal Reserve Act "provides the FRBNY with the discretion to open or terminate Master Accounts," and the decision is therefore unreviewable under the Administrative Procedure Act ("APA") even if the statute applied. *Id.* at 25-26 (citing 5 U.S.C. § 701(a)(2)). In addition, the Court noted, again assuming application of the APA, that "[t]here is no likelihood that the FRBNY's decision to terminate BSJI's account was arbitrary or capricious or contrary to law." *Id.* at 27.

BSJI initially opted to pursue an interlocutory appeal of the PI Order and sought an emergency stay from the Second Circuit. ECF 107, 112. The Second Circuit denied the request for an emergency stay. ECF 112. BSJI subsequently withdrew the appeal (ECF 115) and decided to amend its complaint in this Court (ECF 121). As with its original complaint, BSJI's amended complaint asserts four claims against the Board: (1) violation of the APA, (2) relief under the Mandamus Act, (3) declaratory judgment concerning BSJI's right to a master account, and (4) violation of the Fifth Amendment Due Process clause. Amended Complaint at 48-53. BSJI asks the Court to order that FRBNY and the Board "restore BSJI's master account." *Id.* at 58.[9]

## <u>LEGAL STANDARD</u>

In deciding a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a court must "accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences

---

[9] While BSJI also asks the Court to award at least $150 million in damages, money damages are not an available form of relief in this case. *See* 5 U.S.C. § 702.

favorable to the party asserting it." *Id.*

In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must determine if the complaint contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "bare assertions" and "conclusory" allegations are "not entitled to be assumed true." *Id.* at 678, 681.

## ARGUMENT

### I.    All Claims Against the Board Should Be Dismissed Because BSJI Lacks Standing

The Board should be dismissed from this case because BSJI lacks standing to seek relief from the Board. Specifically, BSJI cannot show that it has suffered an injury that is "fairly traceable to the challenged conduct" of the Board, and that the claimed injury is "likely" to be "redressed by a favorable judicial decision." *Lujan*, 504 U.S. at 560-61 (quotation omitted).

The record in this case demonstrates that the decision to terminate BSJI's master account is traceable only to FRBNY. The Board's role was a general supervisory function in which it validated that FRBNY had undertaken a sufficient analysis under the Guidelines in reaching its decision. *See* Amended Complaint ¶¶ 155-156; ECF 52 at Exhibit T. While BSJI claims that the Board had "intimate involvement . . . with the FRBNY's assessment" because "more than *twenty-five* staff members of the Board were included on the correspondence" (Amended Complaint ¶ 156), this is a non sequitur: the mere inclusion of individuals on an email validating FRBNY's application of the guidelines does not show that those individuals directed or controlled FRBNY's decision to terminate BSJI's account. This is precisely the type of bare assertion and conclusory allegation that is insufficient on any motion to dismiss, and particularly when pleading inferences favorable to the plaintiff are impermissible, as is the case when subject

matter jurisdiction is at issue. *Shipping Fin. Servs. Corp.*, 140 F.3d at 131. Indeed, the amended

complaint is totally devoid of any evidence that the decision to terminate BSJI's account was

made by the Board. BSJI does not allege that the Board opened or closed its master account,

because it could not plausibly support that allegation: the FRA only indicates that a "*Federal*

*reserve bank* may receive from any of its member banks, or other depository institutions . . .

deposits of current funds in lawful money." 12 U.S.C. § 342 (emphasis added); *see also* PI Order

at 32 ("The Board exercises supervision over reserve banks, but does not have the statutory

authority to receive deposits, open or close Master Accounts, or perform other banking

services."); 12 U.S.C. § 341 (sixth) (Reserve Banks responsible for "regulating the manner in

which its general business may be conducted"); *id.* § 341 (seventh) (granting Reserve Banks

"such incidental powers as shall be necessary to carry on the business of banking"); *id.* § 301

(Reserve Bank board "shall perform the duties usually appertaining to the office of directors of

banking associations"); *id.* § 248c (referring to "reserve bank master account and services"); *id.*

§ 248a(a) (referring to "Reserve bank services").

Where, as here, a process "is statutorily vested to the control and authority" of one entity,

a plaintiff lacks standing to sue a different entity. *Kuck v. Danaher*, 822 F. Supp. 2d 109, 138 (D.

Conn. 2011) (holding that there was no standing to sue a state department of public safety over

denial of a gun permit where the denial decision was made by the state board of permit

examiners). That is because any injury is only "fairly traceable" to the entity that has decision-

making power under the applicable "statutory framework." *Id.* In accordance with this principle,

the Second Circuit has held that "the only defendants to whom [plaintiffs'] alleged injuries were

fairly traceable were the [state officials] who denied their respective applications," and not state

officials with general law enforcement responsibilities by virtue of their positions. *See*

*Libertarian Party of Erie Cty. v. Cuomo*, 970 F. 3d 106, 122 (2d Cir. 2020), *abrogated on other grounds, New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

BSJI's ability to sue the Board is foreclosed by this case law. There is no basis for standing against the Board because the Board does not have the ability to close BSJI's master account. *See, e.g.*, *Marino v. Town of Branford*, 2018 WL 691715, at *2 (D. Conn. Feb. 2, 2018) (holding that plaintiff must seek relief only from "the party with the power to suspend and revoke the plaintiff's license"); *Junel Food Ctr. Corp. v. United States*, 1997 WL 634175, at *1 (S.D.N.Y. Oct. 15, 1997) (noting that "the Court denied the injunction and dismissed the complaint because [plaintiff] had sued the wrong entity"). The power to open and close deposit accounts is provided for by 12 U.S.C. § 342, which appears in subchapter IX of the FRA, 12 U.S.C. §§ 341-61, entitled "Powers of the Federal Reserve Banks." Consistent with this fact, the amended complaint focuses almost exclusively on actions by FRBNY, recounting in extensive detail all of the actions taken by FRBNY with respect to BSJI's master account since 2019. *See, e.g.*, Amended Complaint ¶¶ 70-147. Thus, the decision being challenged in this case is the decision *by FRBNY* to terminate BSJI's master account. *See, e.g.*, Amended Complaint ¶¶ 15, 16(e), 111, 140, 147, 156, 157, 187 (referring to "FRBNY's decision" to close BSJI's master account); *id.* ¶ 38 ("FRBNY closed BSJI's master account").

Relatedly, BSJI cannot show that the decision to revoke its master account would have been different absent Board involvement. In fact, the record shows the exact opposite: FRBNY reached its decision on its own. *See* ECF 52 at Exhibit T. Even though FRBNY notified the Board pursuant to the Guidelines, that does not change that the decision was made by FRBNY, a fact validated by the amended complaint itself. *See* Amended Complaint ¶¶ 70-147. Under these circumstances, it is pure speculation that BSJI's situation would have been different absent the

FRBNY's notification to the Board. *See, e.g.*, *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 45 (1976) (noting that respondents did not have standing when "[s]peculative inferences [were] necessary to connect their injury to the challenged actions of petitioners"); *Warth v. Seldin*, 422 U.S. 490, 507 (1975) (finding petitioners did not have standing when "they rel[ied] on little more than the remote possibility, unsubstantiated by allegations of fact, that their situation might have been better had respondents acted otherwise"); *Johnson v. City of Annapolis*, 2023 WL 3390823, at *13 (D. Md. May 11, 2023) (finding no standing against HUD because, "[a]lthough HUD had the *ability* to wield regulatory enforcement tools . . . , whether such an intervention would have materially improved [public housing units] remains 'purely speculative'"). Indeed, BSJI's entire theory of the case is that the termination is the result of a long chain of events that began in 2019, long before the Guidelines came into existence and well before any notification to the Board pursuant to the Guidelines was even a concern. *See* Amended Complaint ¶ 71.

In addition, BSJI cannot demonstrate that its claimed injury is "likely" to be "redressed by a favorable judicial decision." *Lujan*, 504 U.S. at 561 (quotation omitted). Any relief against the Board will not result in reinstatement of BSJI's master account because the Board cannot open or close any master account. Indeed, FRBNY is a separate and distinct entity from the Board, and "Congress did not intend to give the federal government direction over the daily operation of the Reserve Banks." *Lewis v. United States*, 680 F.2d 1239, 1241 (9th Cir. 1982) (citing 1913 House Report at 18-19). BSJI has not alleged how a favorable decision against the Board will relieve its claimed injuries, and therefore its lawsuit against the Board runs headlong into the principle that the Court is to decide cases and controversies, not abstract questions. *Lujan*, 504 U.S. at 559-60.

## II.     Count I, Seeking Relief Under the APA, Should Be Dismissed for Lack of Subject Matter Jurisdiction and Because It Does Not State a Valid Claim for Relief

Even if BSJI's claims are considered individually, none can survive dismissal. In Count I of its amended complaint, BSJI brings an APA claim, alleging that, under 12 U.S.C. § 248a, "[t]he FRBNY and the Board are mandated . . . to provide Federal Reserve bank services, including access to a master account, to all eligible 'depository institutions' on a non-discretionary basis," but that "even assuming that the FRBNY and the Board possess some level of discretion concerning master account access, their actions here were patently improper." Complaint ¶¶ 169, 170. However, this claim fails because it is barred by sovereign immunity, and because 12 U.S.C. § 248a does not say anything about the granting of master accounts.

### A.     BSJI's APA Claim Is Barred by Sovereign Immunity Because It Concerns Action "Committed to Agency Discretion by Law"

BSJI's APA claim should be dismissed, as barred by sovereign immunity, because the APA does not permit review of agency actions which are "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see generally Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003). This bar to judicial review contained in 5 U.S.C. § 701(a)(2) applies "even where Congress has not affirmatively precluded review." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). It applies when the language of the statute "is drawn so that a court would have *no meaningful standard* against which to judge the agency's exercise of discretion." *Lunney*, 319 F.3d at 558 (quoting *Heckler*, 470 U.S. at 830). Here, there is no provision in the Federal Reserve Act that provides meaningful standards or parameters for this Court to apply with respect to the discretion exercised by the Board.

Because the Board is not a bank and cannot itself reinstate BSJI's master account, BSJI's claim would in effect require the Board to exercise its "general supervis[ory]" discretion under

12 U.S.C. § 248(j) to order FRBNY to reinstate BSJI's master account. *See* Amended Complaint ¶ 185 (alleging that "the Board is obligated to exercise its supervisory authority" with respect to BSJI's master account). But section 248(j) provides no standards for this Court to apply with respect to the Board's exercise of its general supervisory authority over Reserve Banks, and therefore BSJI cannot satisfy its "burden of establishing the 'law to apply' needed for a waiver of sovereign immunity under the APA." *Lunney*, 319 F.3d at 559.

Nor can BSJI rescue its defective APA claim by pointing the finger at other institutions whose Reserve Bank master accounts allegedly remain intact. *See* Amended Complaint ¶¶ 144-146. Just as "the decision whether or not to prosecute" presumptively "rests entirely in [the prosecutor's] discretion," *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation omitted), any Board decisions regarding the exercise of supervisory authority with respect to Reserve Banks or other institutions are presumptively unreviewable. *See Heckler*, 470 U.S. at 831-32. BSJI's claim of unfair treatment as compared to other institutions gets it no closer to meeting its burden of providing meaningful standards for the Court to apply under 12 U.S.C. § 248(j).

This Court addressed a similar situation in *Hirshfield v. United States*, 2001 WL 579783 (S.D.N.Y. May 30, 2001). In that case, the Court considered whether there was judicial review under a statute providing the Secretary of the Treasury "may" abate interest with respect to a tax deficiency. *Id.* at * 14-15. The Court held that because the relevant section "employs the word 'may' to indicate the secretary's options in deciding whether to abate interest, that action is discretionary within the meaning of § 701 of the APA, and therefore barred from review pursuant to APA § 701(a)(2)." *Id.* at *15. The Court further noted that, "even if review were available, [the statute] provides no standard by which to assess the secretary's exercise of

discretion, which suggests that Congress did not contemplate judicial review when drafting that provision." *Id.* This analysis applies with equal force to 12 U.S.C. § 248(j), which similarly provides that the Board is empowered to exercise "general supervision" over Reserve Banks, but provides no standard by which to assess the Board's exercise of that authority.

### B.    BSJI's APA Claim Does Not Establish a Right to Relief Because the Board Is Neither Required nor Able to Provide a Master Account to BSJI

BSJI's contention that 12 U.S.C. § 248a requires the Board to grant it a master account (Amended Complaint ¶ 169) does not withstand scrutiny. Section 248a does not speak to master accounts, and does not prevent Reserve Banks from terminating them. In contrast, 12 U.S.C. § 342 – the statutory provision that does address deposit accounts – affirms that Reserve Banks have discretion with respect to their account relationships. *See* PI Order at 16-17 ("12 U.S.C. § 342 makes clear that Federal Reserve banks are authorized to maintain Master Accounts, but are not required to do so.").

Specifically, Section 248a, titled "Pricing of services," instructs the Board to "put into effect a schedule of fees" for certain services. 12 U.S.C. § 248a(a). In setting this schedule, the Board must consider certain principles, among them the understanding that "Federal Reserve bank services covered by the fee schedule shall be available to nonmember depository institutions" – prior to enactment of this provision in 1980, services had been limited to member institutions and free of cost – and that "such services shall be priced at the same fee schedule applicable to member banks." *See* 12 U.S.C. § 248a(c) ("The schedule of fees . . . shall be based on the following principles: . . ."). In effect, Section 248a establishes a schedule of fees for certain services so that a nonmember bank that has access to the Federal Reserve System will pay the same for those services as a member bank. But it makes no reference to master accounts, much less commands the Board to direct Reserve Banks to open a master account for every

institution that wants one regardless of risk. *See Jet Courier Servs., Inc. v. Fed. Reserve Bank of Atlanta*, 713 F.2d 1221, 1227 (6th Cir. 1983) (holding that the law establishing Section 248a provided that nonmember banks could receive Reserve Bank services "at the same fees charged member banks"). The title of Section 248a, "Pricing of Services," further indicates that it concerns *principles for setting prices* rather than mandatory availability of services. *See Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 380 (2018) (section headings "supply cues as to what Congress intended") (quotation omitted).

Master accounts are governed by 12 U.S.C. § 342, which empowers, but does not require, Reserve Banks to open such accounts. Section 342 provides that "[a]ny Federal reserve bank *may* receive from any of its member banks, or other depository institutions, . . . deposits." 12 U.S.C. § 342 (emphasis added). "'[M]ay' does not just suggest discretion, it *clearly* connotes it." *Biden v. Texas*, 597 U.S. 785, 802 (2022) (quotation omitted). Reserve Banks' discretion to receive deposits includes the discretion to decline to receive deposits from an institution. Thus, while Reserve Banks have the authority to accept deposits – and therefore, to grant accounts to depository institutions – the FRA does not require them to do so.

This reading is consistent with judicial interpretations of Section 342. Addressing Section 342 shortly after its enactment in 1913, the Supreme Court rejected an argument similar to BSJI's that "the Federal Reserve Bank of Richmond is obliged to receive for collection any check upon any North Carolina state bank." *Farmers & Merchs. Bank v. Fed. Rsrv. Bank of Richmond*, 262 U.S. 649, 662 (1923). Interpreting Section 342's language that, "solely for the purposes of collection," a Reserve Bank "may receive from any nonmember bank . . . deposits of checks . . . payable upon presentation," the Court held that "neither [Section 342], nor any other provision of the Federal Reserve Act, imposes upon reserve banks any obligation to receive

checks for collection." *Id*. The Court noted that Congress had from time to time enlarged "[t]he

class of cases" to which the Reserve Banks' authority under Section 342 applied, "[b]ut in each

amendment, as in [Section 342], the words used were 'may receive' – words of authorization

merely." *Id*.

The Court further observed that the FRA "appears to have been drawn with great care.

Throughout the act the distinction is clearly made between what the [B]oard and the Reserve

Banks 'shall' do and what they 'may' do." *Id.* at 663. The Court listed twenty-one provisions of

the original FRA where both "may" and "shall" were used, and another seven where only "shall"

was used, to illustrate the precision Congress took in distinguishing actions the Board or Reserve

Banks were allowed to take from those they were required to take. *Id.* at 663 n.6; *see also*

*Billings Utility Co. v. Advisory Comm. Bd. of Governors*, 135 F.2d 108, 111 (8th Cir. 1943)

(listing provisions of the FRA in which Congress distinguished what a Reserve Bank "may" do

from what it "must" do, and holding that the "may" provisions "seem so clearly to be permissive

as to make any other construction of them by interpretation or construction judicial legislation");

*Raichle v. FRBNY*, 34 F.2d 910, 914 (2d Cir. 1929) (interpreting the phrase "[a]ny Federal

Reserve Bank may . . . discount notes, drafts, and bills of exchange" in 12 U.S.C. § 348, and

noting that these words "are wholly permissive").

Further, Congress recently recognized that Reserve Banks may (and do in fact) deny

requests for master accounts. In December 2022, Congress amended the FRA to require the

Board to "create and maintain a public, online, and searchable database" that includes "a list of

every entity that submits an access request for a reserve bank master account and services . . .

including whether . . . a request was approved, *rejected*, pending, or withdrawn." 12 U.S.C.

§ 248c(b)(1) (emphasis added). It strains logic to assume that Congress would contemplate that

master account requests by depository institutions may be "rejected" in Section 248c, while ignoring just two sections away (in Section 248a) a purported requirement that they be granted in every instance. The fact is that neither Section 248a, nor any other provision, says anything about a master account being an automatic right, but Section 342 (bolstered by Section 248c) says the opposite.

Moreover, Section 248a appears in subchapter II of the FRA, 12 U.S.C. §§ 241-52, titled "Board of Governors of the Federal Reserve System," which generally sets out powers and duties of the Board, and requires the Board to publish a fee schedule. By contrast, Section 342 appears in subchapter IX, 12 U.S.C. §§ 341-61, titled "Powers and Duties of Federal Reserve Banks." *Cf., e.g.*, *Henderson v. Shinseki*, 562 U.S. 428, 439 (2011) (placement of time limit in subchapter titled "Procedure" and not subchapter titled "Organization and Jurisdiction," indicates that Congress regarded it as nonjurisdictional). It makes no sense – as BSJI alleges – that Congress meant Section 248a, enacted in 1980 as part of a section titled "Pricing of Services," which sets out a "pricing principle[]" used to establish a "Schedule of fees," to overturn the discretion permitted the Reserve Banks since 1913 to accept deposits by requiring them to open master accounts for all comers regardless of risk. "Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions – it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001).

Despite this unambiguous statutory text, a federal district court within the Tenth Circuit denied a motion to dismiss a complaint alleging that the Board has a nondiscretionary duty to grant all master accounts. *See Custodia v. Federal Reserve Bd.*, 640 F. Supp. 3d 1169 (D. Wy. 2022). The decision to allow the case to proceed was based on the opinion of a single judge of the Tenth Circuit, but noted that "full statutory interpretation . . . is best left for another day." *Id.*

19

at 1185 (citing *Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kansas City*, 861 F.3d 1052 (10th Cir. 2017)). That Tenth Circuit judge's opinion, which held that a credit union serving the cannabis industry was entitled to a master account (*Fourth Corner*, 861 F.3d at 1064-80), suffered from a misreading of the plain text of Sections 248a and 342, and was authored before the more recent issuance of the Board's Guidelines and enactment of Section 248c. *See* PI Order at 21 (noting that the single-judge opinion "is neither controlling (even in the Tenth Circuit), nor persuasive"). Moreover, two other judges on the *Fourth Corner* panel appear to have implicitly rejected the notion that every depository institution is automatically entitled to a master account under Section 248a, authoring opinions indicating that the credit union's complaint should have been dismissed. 861 F.3d at 1053-64. And a judge of this Court similarly appears to have rejected the idea that there is an automatic entitlement to a master account, granting FRBNY's motion to dismiss a case concerning alleged delay on it deciding a master account application. *See TNB USA Inc. v. FRBNY*, 2020 WL 1445806, at \*4 (S.D.N.Y. Mar. 25, 2020).

Finally, as an alternative to its claim that Section 248a requires the automatic grant of a master account, BSJI claims that, to the extent any exercise of discretion is allowed, the Board and FRBNY abused that discretion. Amended Complaint ¶ 170. But, as previously discussed, the Board does not make decisions regarding the opening or closing of master accounts. Rather, that function is performed by the Reserve Banks. *See* 12 U.S.C. § 342. Not surprisingly, the amended complaint does not point to any discretionary acts undertaken by the Board with respect to reaching the decision to terminate BSJI's master account. To the contrary, the amended complaint alleges action by FRBNY alone resulting in the decision to terminate BSJI's account. *See* Complaint ¶¶ 70-147.

In sum, the unambiguous text of 12 U.S.C. § 342 makes clear that Reserve Banks are

*authorized* to accept deposits – and therefore open deposit accounts – but are not *required* to do so. The language of Section 248a says nothing to the contrary.

### III.    Count II, Seeking Relief Under the Mandamus Act, Is Barred Because the Board Does Not Have a Mandatory Duty with Respect to BSJI

In Count II of the Complaint, BSJI brings a claim for relief under the Mandamus Act, 28 U.S.C. § 1361. However, mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (quotation omitted). A plaintiff must establish, among other things, that: "there is a clear right to the relief sought," and that "the Government has a plainly defined and peremptory duty to perform the act in question." *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008). Here, BSJI cannot demonstrate that it has a clear right to relief, as there is no statute that imposes upon the Board a duty to enforce the opening of a master account notwithstanding BSJI's contention that it "is entitled by law to a master account" under 12 U.S.C. § 248a. Amended Complaint ¶ 178. In addition, the Board has no mandatory and nondiscretionary duty to take the action that BSJI wants. The Board has fulfilled its responsibilities under Section 248a by publishing the required pricing principles and schedule of fees with the understanding that accounts and services are generally available to both member and nonmember banks. That statute requires nothing more of the Board. In particular, because the Board does not have the ability to grant access to Federal Reserve Bank master accounts, the Board cannot be compelled to "intervene and put an end" to FRBNY's conduct. Amended Complaint ¶ 179. Because BSJI cannot meet the requirements for mandamus, the claim should be dismissed for lack of subject matter jurisdiction. *See, e.g.*, *Duamutef v. INS*, 386 F.3d 172, 180-81 (2d Cir. 2004) (dismissing mandamus claim for lack of jurisdiction); *Sprecher v. Graber*, 716 F.2d 968, 973 (2d Cir. 1983) (same).

**IV.     Count III Should Be Dismissed Because There Is No Subject Matter Jurisdiction for Declaratory Judgment Act Claims**

In Count III of the Complaint, BSJI seeks a declaration, pursuant to the Declaratory

Judgment Act, 28 U.S.C. § 2201, that "[t]he FRBNY and the Board are mandated by [Section

248a] to provide Federal Reserve bank services, including access to a master account." Amended

Complaint ¶ 185. However, the Declaratory Judgment Act provides only a form of relief where

jurisdiction otherwise lies. *See Schilling v. Rogers*, 363 U.S. 666, 677 (1960) ("[T]he Declaratory

Judgments Act is not an independent source of federal jurisdiction."); *Duke Power Co. v.

Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 71 n.15 (1978) ("the Declaratory

Judgment Act does not expand our jurisdiction, it expands the scope of available remedies").

Accordingly, this claim should be dismissed for lack of subject matter jurisdiction.

**V.     Count IV, Seeking Relief Under the Due Process Clause, Does Not State a Valid Claim for Relief**

Finally, in Count IV, BSJI seeks relief against the Board pursuant to the Fifth

Amendment's Due Process Clause, claiming that BSJI "has a property interest in the master

account and the continued operation of the Bank." Amended Complaint ¶ 191. But as discussed

above, BSJI has no automatic right to a master account, and therefore lacks an interest subject to

due process protections. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005)

(noting that, for due process purposes, "a benefit is not a protected entitlement" if "officials may

grant or deny it in their discretion"). Because BSJI lacks a property interest in a master account,

which is a prerequisite to the attachment of due process rights, it has not stated a valid claim for

relief under the Due Process Clause. *See, e.g.*, *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192-93

(2d Cir. 1994) (affirming dismissal of Due Process Clause claim).

## CONCLUSION

For the foregoing reasons, the Board respectfully requests that the Court dismiss the Amended Complaint with prejudice.

\*          \*          \*          \*          \*          \*

## CERTIFICATE OF COMPLIANCE

In accordance with Section II.D of the Court's Individual Practices, the foregoing brief contains 6961 words, excluding the cover page, table of contents, table of authorities, and this certificate of compliance. The foregoing brief also complies with the formatting rules set forth in Section II.D of the Court's Individual Practices.

Dated: March 22, 2024

Respectfully submitted,

/s/ *Joshua P. Chadwick*
Mark Van Der Weide, General Counsel
Richard M. Ashton, Deputy General Counsel
Joshua P. Chadwick (JC9369), Senior Special Counsel
Yvonne F. Mizusawa (YM5081), Senior Counsel
Nicholas Jabbour (*pro hac vice*), Senior Counsel
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, D.C. 20551
(202) 263-4835
joshua.p.chadwick@frb.gov

*Counsel for Defendant Board of Governors of the Federal Reserve System*

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 22, 2024, I electronically filed the foregoing using the

court's CM/ECF system, which will send notification of such filing to all parties of record.

By:    <u>  /s/ *Joshua P. Chadwick*            </u>
Joshua P. Chadwick

*Counsel for Defendant Board of Governors
of the Federal Reserve System*