UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

BANCO SAN JUAN INTERNACIONAL, INC.,  :
:
                            Plaintiff, :
:
   -against- :
:   Civ No.: 1:23-cv-6414-JGK
:
FEDERAL RESERVE BANK OF NEW YORK, :
BOARD OF GOVERNORS OF THE FEDERAL :
RESERVE SYSTEM :
:
                    Defendants. :
-------------------------------------------------------------------X

# REPLY IN FURTHER SUPPORT OF
# DEFENDANT FEDERAL RESERVE BANK OF NEW YORK'S MOTION TO DISMISS

## TABLE OF CONTENTS

                                                                                                                    **Page**

TABLE OF AUTHORITIES ...........................................................................................................ii

PRELIMINARY STATEMENT .....................................................................................................1

ARGUMENT ...................................................................................................................................2

I.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER BSJI'S
      APA, MANDAMUS, AND DECLARATORY JUDGMENT CLAIMS..................2

          A.     BSJI's APA and Mandamus Claims Fail Because They Challenge a
                 Discretionary Act and Reserve Banks Are Not "Agencies" ...........................2

          B.     BSJI's Declaratory Judgment Claim Fails Because the FRA Does
                 Not Provide a Private Cause of Action ...........................................................5

II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM ON
      WHICH RELIEF CAN BE GRANTED.....................................................................6

          A.     BSJI's APA, Mandamus, Declaratory Judgment, and Due
                 Process Claims All Fail Because BSJI Has No Entitlement
                 to a Master Account .........................................................................................6

          B.     BSJI's APA Claim Also Fails Because the FRBNY's Thorough
                 Closure Decision Was Not Arbitrary or Capricious ......................................7

          C.     BSJI Was Afforded Adequate Procedural Protections...................................8

          D.     The FRBNY's Exercise of Its Rights to Close BSJI's Account Did
                 Not Breach Any Contractual Obligation .......................................................8

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                                         **Page(s)**

*Adler v. United States Dep't of Justice*, No 18-cv-2188,
    2018 WL 4571677 (S.D.N.Y. Sept. 24, 2018)..................................................................7

*ADYB Engineered for Life, Inc. v. Edan Admin. Svcs. Ltd.*, 19-cv-7800-MKV,
    2021 WL 1177532 (S.D.N.Y. Mar. 29, 2021) .................................................................5

*Ahmen Elkoulily, M.D., P.C. v. N.Y. State Cath. Healthplan, Inc.*,
153 A.D.3d 768 (2d Dep't 2017) ......................................................................................9

*Browning-Ferris Indus. of S. Jersey, Inc. v. Muszynski*,
    899 F.2d 151 (2d Cir. 1990)..............................................................................................7

*Custodia Bank, Inc. v. Federal Reserve Board of Governors*,
    No. 22-CV-125-SWS, Doc. 317 (D. Wyo. Mar. 29, 2024) ............................................*passim*

*Greater Buffalo Press, Inc. v. Federal Reserve Bank of New York.*,
    866 F.2d 38 (2d Cir. 1989)................................................................................................3

*In Touch Concepts, Inc. v. Cellco Partnership*,
    949 F. Supp. 2d 447 (S.D.N.Y. 2013) ..........................................................................9-10

*PayServices Bank v. Federal Reserve Bank of San Francisco*,
    No. 1:23-cv-003050-REP, 2024 WL 1347094 (D. Idaho Mar. 30, 2024)......................*passim*

*Rural Cellular Ass'n v. FCC*, 588 F.3d 1095 (D.C. Cir. 2009) ............................................7

*Salazar v. King*, 822 F.3d 61 (2d Cir. 2016)........................................................................5

*Tomsha v. Gen. Svcs. Admin.*, 15-CV-7326 (AJN),
    2016 WL 3538380 (S.D.N.Y. June 21, 2016) ...............................................................4, 5

*Vela-Estrada v. Lynch*, 817 F.3d 69 (2d Cir. 2016)..........................................................4-5

**Statutes**

12 U.S.C. § 248a................................................................................................................1, 3

12 U.S.C. § 342...............................................................................................................1, 2, 3

**Other Authorities**

87 Fed. Reg. 51099 ............................................................................................................4, 5

**PRELIMINARY STATEMENT**

BSJI[1] acknowledges that the Court rejected the core legal and factual bases of its claims in the PI Order declining to block the closure of its master account due to money laundering concerns. BSJI nonetheless asserts that its case should continue because the Court's prior rulings were "made on an expedited basis" and without the "additional information contained in BSJI's Amended Complaint." Opp. at 6. BSJI is wrong.

The preliminary injunction proceedings were not expedited and in fact followed a schedule to which the parties consented. Nor does BSJI cite any new, well-pled facts or other "information" in the Amended Complaint that could save its claims—BSJI rehashes the same legal theories and conspiratorial assertions that the Court already considered and rejected. BSJI is also incorrect to suggest the PI Order applied a significantly higher legal standard. The Court held that BSJI had not even raised serious questions on the merits of its claims, including because they suffered from fundamental legal defects. Those fundamental deficiencies remain and are grounds for dismissal.

Since the FRBNY filed its motion to dismiss, two other district courts have followed the Court's holdings and rejected the central legal theories underpinning the Amended Complaint. In *Custodia Bank, Inc. v. Federal Reserve Board of Governors*, No. 22-CV-125-SWS, Doc. 317 (D. Wyo. Mar. 29, 2024) ("*Custodia*"), the federal district court in Wyoming dismissed a challenge to the Federal Reserve Bank of Kansas City's denial of a master account request. The *Custodia* court adopted this Court's reading of 12 U.S.C. § 342 and 12 U.S.C. § 248a, concluding that the former gives Reserve Banks discretion to deny account access and the latter does not mandate access for all eligible institutions.

---

[1] Defined terms have the meanings ascribed in the FRBNY's moving brief ("Br.").

1

In *PayServices Bank v. Federal Reserve Bank of San Francisco*, No. 1:23-cv-003050-REP, 2024 WL 1347094 (D. Idaho Mar. 30, 2024) ("*PayServices*"), the federal district court in Idaho similarly dismissed a challenge to an account denial by the Federal Reserve Bank of San Francisco. The *PayServices* court agreed not only with this Court's reading of the FRA, but also its Due Process Clause analysis and its determination that account decisions are not subject to APA review because they are discretionary and Reserve Banks are not "agencies" (issues not considered in the *Custodia* decision).

Consistent with this authority and the PI Order, the Court should dismiss the Amended Complaint with prejudice.

## ARGUMENT

### I. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER BSJI'S APA, MANDAMUS, AND DECLARATORY JUDGMENT CLAIMS

#### A. BSJI's APA and Mandamus Claims Fail Because They Challenge a Discretionary Act and Reserve Banks Are Not "Agencies"

*First*, BSJI's APA and mandamus claims are subject to Rule 12(b)(1) dismissal because, as the Court held, Reserve Banks have discretion to deny account access under the FRA. Br. at 11-14 (account access decisions are not reviewable under the APA because they are "committed to agency discretion by law"); *id.* at 15 (no jurisdiction over mandamus claim because BSJI has no "clear right" to an account).

BSJI contends once more that the FRA mandates the provision of accounts for all "eligible" financial institutions regardless of the risk they pose. Opp. at 7-17. As noted above, this Court—which has now been joined by two other district courts—has already rejected this argument. PI Order at 16-17 (Under Section 342 of the FRA "Federal reserve banks are authorized to maintain Master Accounts, but are not required to do so."); *Custodia* at 23 ("The Court agrees with the interpretation recently set forth by the Southern District of New York,

2

concluding that § 342" does not mandate the provision of master accounts.); *PayServices* at *11 ("§ 342 makes clear that Federal Reserve Banks are authorized to accept deposits, and thus open master accounts. Critically, however, they are not required to do so."). In response, BSJI asserts that Section 342's discretion is limited to the "forms of currency" Reserve Banks may receive and the "types of entities" that may make deposits. Opp. at 14. That contention is belied by the plain text of the statute. 12 U.S.C. § 342 ("Any Federal reserve bank may receive . . . deposits").

BSJI again points to Section 248a of the FRA as the purported source of its asserted "right" to an account. Opp. at 6-13. But as this Court and the *PayServices* court correctly ruled, 12 U.S.C. § 248a(2)(c) "is more appropriately understood to be an anti-price discrimination provision . . . [that] confirms that a nonmember bank with access to the Federal Reserve System will pay the same for [financial services] as a member bank." *PayServices* at *10; PI Order at 18.[2]

The *Custodia* court similarly held that Section 248a does not mandate account access, including because it is directed to the Board of Governors, *Custodia* at 19-20, and such a reading is "harmonious with recent federal legislation," *id.* at 22; *see also* PI Order at 18 (citing 12

---

[2] The Court correctly found that *Greater Buffalo Press, Inc. v. Federal Reserve Bank of New York.*, 866 F.2d 38, 40 (2d Cir. 1989), did not hold otherwise. PI Order at 19 n.8. In dicta, and without examining the FRA's text, the Second Circuit noted there that the Monetary Control Act of 1980 made Federal Reserve check services available to banks without regard to their member status. *Id.*

U.S.C. § 248c(b)(1)).³  "[I]mportant policy considerations [also] support this construction," *Custodia* at 24, because if the FRA mandated account access that would create a "'race to the bottom' among states and politicians to attract business by reducing state chartering burdens through lax legislation, allowing minimally regulated institutions to gain ready access to the central bank's balance sheet and Federal Reserve services," *id.* at 25.

      BSJI further asserts that, even reading the FRA as affording discretion, the closure decision is still reviewable under the APA because the Guidelines and "S-Letter 2677" provide "judicially manageable standards" for the Court to assess it.  Opp. at 31-32.  Even if it were proper to look beyond the FRA here—which it is not—the only "standard" BSJI identifies is Guidelines' Principle 5.  Opp. at 33; 87 Fed. Reg. 51099, 51106 (account access "should not create undue risk to the overall economy by facilitating . . . illicit activity.").  That is not a "judicially manageable standard" because Reserve Banks are in a unique position to assess the risk associated with facilitating illicit activity, in protecting national financial interests, and nothing in the Guidelines "'limit[s the FRBNY's] discretion' in determining" this risk.  *Tomsha v. Gen. Svcs. Admin.*, 15-CV-7326 (AJN), 2016 WL 3538380, at *4-5 (S.D.N.Y. June 21, 2016) ("To demonstrate that a claim is not barred by § 701(a)(2), a plaintiff must 'specify some statute or regulation that would limit the [defendant's] discretion in th[e] matter."); *see also Vela-Estrada v. Lynch*, 817 F.3d 69, 71 (2d Cir. 2016) (no "meaningful standard" where "plain language of the regulation . . . commits the . . . decision to [agency] discretion"); 87 Fed. Reg.

---

³ BSJI cites a former senator's amicus brief in *Custodia* to argue that the recent FRA amendment does not bolster discretion.  Opp. at 15-16.  But if Reserve Banks had no discretion to deny master account requests, tracking "rejected [requests] would be unnecessary."  *Custodia* at 23.

4

51099, 51106 (account access determination left to "discretion of the individual Reserve Banks").

The case law cited by BSJI does not hold otherwise and is further inapposite because it involved courts engaging in the "type of evaluation [that] is squarely within the competence of the judiciary." *Salazar v. King*, 822 F.3d 61, 81 (2d Cir. 2016); *see also Tomsha*, 2016 WL 3538380, at *4 (discretion to act in "interest of the Federal Government" not "meaningful standard" subject to APA review).

*Second*, the Court also lacks jurisdiction over BSJI's APA and mandamus claims because the FRBNY is not an "agency" under those statutes. Br. at 14-16; *see also PayServices* at *13 ("Federal Reserve Banks are not an agency of the federal government for the purposes of" challenges to master account decisions.). BSJI cites the same two out-of-circuit decisions, Opp. at 30, this Court already held do not "appl[y] to the circumstances here," PI Order at 24. BSJI offers no basis to disturb the Court's ruling that the FRBNY is not an "agency." *Id.* at 23-25; *id.* at 23-24 ("Federal reserve banks are not part of any executive department or agency.").

### B. BSJI's Declaratory Judgment Claim Fails Because the FRA Does Not Provide a Private Cause of Action

BSJI does not dispute that neither the FRA nor the Declaratory Judgment Act gives rise to a cause of action, Br. at 16; Opp. at 18-19, but asserts that the Court nonetheless has jurisdiction over this claim because BSJI sufficiently alleges APA and mandamus claims. Opp. at 18-19. Even if BSJI had sufficiently pled those claims—which it has not—the Court "must evaluate subject matter jurisdiction on a claim-by-claim basis." *ADYB Engineered for Life, Inc. v. Edan Admin. Svcs. Ltd.*, 19-cv-7800-MKV, 2021 WL 1177532, at *13 (S.D.N.Y. Mar. 29, 2021). Jurisdiction over one claim does not create jurisdiction over another, absent the existence of ancillary jurisdiction, which BSJI does not and cannot contend exists here. BSJI's declaratory

5

judgment claim, which does not invoke the APA or Mandamus Act, thus lacks a jurisdictional basis.

Further, BSJI does not dispute that retrospective declaratory relief concerning past acts is inappropriate. Br. at 16-17. BSJI offers only the illogical assertion that the action it challenges—the closure of its account—is forward-looking because BSJI seeks clarification of its "right to a master account going forward." Opp. at 19. The Court should reject BSJI's attempt to transform a past act into a forward-looking dispute and thereby negate the authority barring the Declaratory Judgment Act's retrospective application. Br. at 16-17 (citing cases).

## II. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

### A. BSJI's APA, Mandamus, Declaratory Judgment, and Due Process Claims All Fail Because BSJI Has No Entitlement to a Master Account

BSJI's APA, mandamus, declaratory judgment, and due process claims are subject to dismissal under Rule 12(b)(6) because they all turn on a nonexistent "right" to an account. Br. at 17-18; *PayServices* at *6 (dismissing APA, mandamus, and due process claims because "[t]he success of each of these claims depends on the existence of a nondiscretionary duty to make a master account available to PayServices"); *Custodia* at 26 ("Reserve Banks possess the discretion to grant or deny master account requests. Therefore, Custodia is not entitled to its requested writ of mandamus[.]").

The Court should also dismiss these claims because, even assuming BSJI had a "right" to an account—which it does not—no such right would be implicated here. BSJI had a master account for years and nothing in the FRA suggests the FRBNY lacked the power to close it. Br. at 17-18. BSJI provides no response to this ground for dismissal. Further, as the Court found, BSJI would have waived any right when it twice entered into contracts permitting closure. *Id.* at 18. BSJI asserts (incorrectly) that it did not waive purported contractual "duty of care" rights,

6

Opp. at 20-22, but does not dispute that these claims fail because it waived any asserted "right" to an account, *id.* at 7-17.

### B. BSJI's APA Claim Also Fails Because the FRBNY's Thorough Closure Decision Was Not Arbitrary or Capricious

As this Court ruled, there is "no likelihood" that the closure decision was "arbitrary or capricious." PI Order at 27; Br. at 18-19. BSJI argues that the Court should not apply *Chevron* deference here, Opp. at 32-33, but *Chevron* deference is irrelevant. *Cf. Rural Cellular Ass'n v. FCC*, 588 F.3d 1095, 1105 (D.C. Cir. 2009) (distinguishing *Chevron* review from arbitrary or capricious review). There is no basis for the Court to deviate from the "highly deferential" arbitrary or capricious standard. PI Order at 26 (citing *Adler v. United States Dep't of Justice*, No 18-cv-2188, 2018 WL 4571677, at *3 (S.D.N.Y. Sept. 24, 2018)).

BSJI contends that the closure decision was arbitrary or capricious because the FRBNY identified "red flags" for money laundering, instead of conclusively proving that money laundering occurred. Opp. at 33. Nothing in the FRA, the FRBNY's contracts with BSJI, or the Guidelines suggests closure can occur only after a trial and conviction for money laundering. Further, this Court has already recognized that the FRBNY's risk-based grounds for closure were "plainly reached after a thorough review of the evidence and pertinent factors and resulted in a decision that explained the FRBNY's rationale." PI Order at 28. *Cf. Browning-Ferris Indus. of S. Jersey, Inc. v. Muszynski*, 899 F.2d 151, 160 (2d Cir. 1990) ("Courts should be particularly reluctant to second-guess agency choices involving scientific disputes that are in the agency's province of expertise").

Finally, BSJI is incorrect that this claim raises factual issues requiring additional testimony and cross examination. Opp. at 34. As the Court held, the documents reflecting and communicating the closure decision, which are incorporated by reference into the Amended

7

Complaint, show that BSJI's claim is legally deficient. PI Order at 27-28. Additional factual development would only serve to further demonstrate BSJI's disagreement with the FRBNY's decision, which is not a basis to sustain an APA claim. *Id.* at 28; *PayServices* at *14.

### C.  BSJI Was Afforded Adequate Procedural Protections

The FRBNY's extensive consideration of BSJI's arguments against closure negates and is an additional ground for dismissing BSJI's due process claim. Br. at 19-20. BSJI baldly asserts—without any supporting authority—that the closure decision "epitomized a lack of due process." Opp. at 18. Notably, BSJI does not dispute that it was provided notice and an opportunity to be heard prior to closure, which is all that is required. Br. at 19-20; PI Order at 29; *PayServices* at *14 ("protections [were] enough to satisfy the Due Process Clause" where plaintiff had opportunity to meet with Reserve Bank, submit written evidence, "and received a written decision explaining the basis for the . . . decision").

### D.  The FRBNY's Exercise of Its Rights to Close BSJI's Account Did Not Breach Any Contractual Obligation

BSJI's claims that the FRBNY's account closure breached a purported duty of good care in OC 1 and the implied covenant of good faith and fair dealing are legally deficient. Br. at 20-22. The former is based on a limitation of liability provision that imposes no "duty of care." *Id.* at 20. Even if it did, neither that purported duty nor the implied covenant could limit the FRBNY's unqualified contractual right to terminate BSJI's account. BSJI's arguments to the contrary fail.

*First*, BSJI continues to misconstrue the limitation of liability provision in Section 7.1 of OC 1 as a "duty of care" obligation. Opp. at 19-20. Tellingly, BSJI cannot identify text in the provision that gives rise to such obligation, and for good reason: its plain language serves only to limit the FRBNY's tort liability in providing an account and services to BSJI. Ex. B at 14

8

(limiting FRBNY's liability and referring to "duty of care," "proximate[] cause," and "actual damages," which are elements of negligence).

*Second*, BSJI mischaracterizes the FRBNY's unqualified contractual right to terminate under OC 1 as an impermissible waiver of the purported duty of care. Opp. at 20-21. The FRBNY has never argued that "BSJI waived" this "contractual claim" by agreeing to a termination provision, nor is there any need to assess the claim from a waiver perspective. The two provisions operate independently—one permits the FRBNY to terminate the account "at any time" and the other limits the FRBNY's liability.

*Third*, BSJI incorrectly contends that the FRBNY's unqualified termination right was limited by both the purported "duty of care" and the implied covenant of good faith and fair dealing. Opp. at 21-23. Unqualified termination rights are not subject to good-faith inquiries that could negate the express terms of the termination provision. Br. at 21-22. BSJI's contrary contention relies on inapposite case law holding that, where a party may terminate upon making some discretionary determination, that determination cannot be made in bad faith. *See, e.g., Ahmen Elkoulily, M.D., P.C. v. N.Y. State Cath. Healthplan, Inc.*, 153 A.D.3d 768, 769 (2d Dep't 2017) (where party could terminate agreement "if, in its sole discretion, [it] determined that" continuing to provide "services would create imminent harm," party had obligation to exercise good faith in reaching that determination). BSJI's own authority recognizes this principle has no application here, where the FRBNY's termination rights are unqualified. *In Touch Concepts, Inc. v. Cellco Partnership*, 949 F. Supp. 2d 447, 470 (S.D.N.Y. 2013) (limiting unqualified termination provision with implied covenant would "negate[] the express terms of the contract;" "courts 'do not ordinarily read implied limitations into unambiguously worded contractual provisions designed to protect contracting parties'").

9

## CONCLUSION

The Court should dismiss the Amended Complaint with prejudice.

Dated: April 26, 2024
      New York, New York

Respectfully submitted,

FEDERAL RESERVE BANK OF NEW YORK


*Jonathan K. Youngwood*

Jonathan K. Youngwood
Meredith Karp
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
T: (212) 455-2000
F: (212) 455-2502
jyoungwood@stblaw.com
meredith.karp@stblaw.com

Michael Brennan
Michele Kalstein
33 Liberty Street
New York, NY 10045
T: (212) 720-8235
F: (212) 720-8709
*Counsel for Defendant*
*Federal Reserve Bank of New York*

## CERTIFICATE OF COMPLIANCE

In accordance with Section II.D of the Court's Individual Practices, excluding the cover page, table of contents, table of authorities, and this certificate of compliance, the FRBNY's reply in further support of its motion to dismiss the Amended Complaint contains 2,800 words, including footnotes, and complies with the formatting rules set forth in that provision.

Dated: April 26, 2024             *Jonathan K. Youngwood*

                                            Jonathan K. Youngwood
                                            Meredith Karp
                                            SIMPSON THACHER & BARTLETT LLP
                                            425 Lexington Avenue
                                            New York, NY 10017
                                            T: (212) 455-2000
                                            F: (212) 455-2502
                                            jyoungwood@stblaw.com
                                            meredith.karp@stblaw.com