# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BANCO SAN JUAN INTERNACIONAL, INC., ) <br> ) <br> Plaintiff, ) <br> ) Case No. 1:23-cv-6414 <br> v. ) <br> ) <br> FEDERAL RESERVE BANK OF NEW YORK ) <br> and BOARD OF GOVERNORS OF ) <br> THE FEDERAL RESERVE SYSTEM, ) <br> ) <br> ) <br> Defendants. ) <br> ) | |

**DEFENDANT BOARD OF GOVERNORS OF
THE FEDERAL RESERVE SYSTEM'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

Mark Van Der Weide, General Counsel
Richard M. Ashton, Deputy General Counsel
Joshua P. Chadwick (JC9369), Senior Special Counsel
Yvonne F. Mizusawa (YM5081), Senior Counsel
Nicholas Jabbour (*pro hac vice*), Senior Counsel
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, D.C. 20551
(202) 263-4835
joshua.p.chadwick@frb.gov

*Counsel for Defendant Board of Governors of the
Federal Reserve System*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I. Because The Causal Link Between the Board and the Master Account Termination Decision Is Speculative, BSJI Lacks Standing to Sue the Board ....................................... 2

II. Because There Is No Judicially Manageable Standard for This Court to Apply to the Board, This Case Concerns Action "Committed to Agency Discretion by Law" .............. 3

III. Section 248a Does Not Mandate Providing Reserve Bank Accounts to All Nonmember Banks ................................................................................................ 5

CONCLUSION .................................................................................................................... 9

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Barnett Bank of Marion County, N.A. v. Nelson*,
    517 U.S. 25 (1996) ........................................................................................................... 8

*BSJI v. FRBNY*,
    23-CV-6414 (JGK), 2023 WL 7111182 (S.D.N.Y. Oct. 27, 2023) ................................. 1, 2

*Custodia Bank, Inc. v. Federal Reserve Board of Governors*,
    No. 22-CV-125-SWS (D. Wyo. Mar. 29, 2024) .......................................................... 1, 6, 9

*DHS v. MacLean*,
    574 U.S. 383 (2015) ......................................................................................................... 6

*Farmers & Merchants Bank v. Federal Reserve Bank of Richmond*,
    262 U.S. 649 (1923) ......................................................................................................... 7

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ...................................................................................................... 4, 5

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ...................................................................................................... 4, 5

*Loughrin v. United States*,
    573 U.S. 351 (2014) ......................................................................................................... 6

*Milner v. Dep't of Navy*,
    562 U.S. 562 (2011) ......................................................................................................... 7

*Neurological Surgery Practice of Long Island, PLLC v. HHS*,
    23-cv-02977 (BMC), 2023 WL 4552860 (E.D.N.Y. July 17, 2023) ................................. 3

*PayServices Bank v. Federal Reserve Bank of San Francisco*,
    No. 1:23-cv-305-REP, 2024 WL 1347094 (D. Idaho Mar. 30, 2024) ......................... 1, 2, 7

*Pritikin v. Dep't of Energy*,
    254 F.3d 791 (9th Cir. 2001) ............................................................................................ 3

*Robbins v. HUD*,
    72 F. Supp. 3d 1 (D.D.C. 2014), *aff'd*, No. 14-5298, 2015 WL 3372527
    (D.C. Cir. May 6, 2015) ................................................................................................ 2, 3

*Salazar v. King*,
    822 F.3d 61 (2d Cir. 2016) ................................................................................... 3, 4

*Simon v. Eastern Kentucky Welfare Rights Organization*,
    426 U.S. 26 (1976) .................................................................................................. 2

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................................................ 2

*Webster v. Doe*,
    486 U.S. 592 (1988) ................................................................................................ 4

**<u>Statutes</u>**

5 U.S.C. § 701(a)(2) .......................................................................................................... 3

12 U.S.C. § 248a ..................................................................................................... 1, 5, 9

12 U.S.C. § 248a(c)(2) ............................................................................................ 5, 6, 9

12 U.S.C. § 248(j) ....................................................................................................... 3, 4

12 U.S.C. § 342 ............................................................................................... 1, 5, 6, 7, 8

12 U.S.C. § 391 ................................................................................................................ 8

Monetary Control Act of 1980, Pub. L. No. 96-221, 94 Stat. 132 ............................... 7, 9

The Federal Reserve Act of 1913, 12 U.S.C. § 221 *et seq.*,
    Pub. L. No. 63-43, 38 Stat. 251 ........................................................................... 5, 6

**INTRODUCTION**

BSJI's opposition brief makes no arguments that would warrant this case proceeding further. BSJI concedes that it is merely speculating that the Board could have dictated a different outcome with respect to the decision to terminate its master account (Opp. at 35), which is fatal to its claim of standing to sue the Board. Moreover, BSJI is unable to point to a manageable standard in any statutory text to judge the Board's exercise of discretion (Opp. at 31-32), as is required for review under the APA. For these reasons, dismissal for lack of subject matter jurisdiction is appropriate.

On the substance of its claims, BSJI fares no better. Within the past month, two federal courts have agreed with this Court that the Federal Reserve Act ("FRA") does not contain a discretionless mandate to grant a master account to every depository institution regardless of risk. In *Custodia Bank, Inc. v. Federal Reserve Board of Governors*, the federal district court in Wyoming held that an institution focused on cryptocurrency activities did not have an automatic right to a master account. No. 22-CV-125-SWS, ECF 317, at 2 (D. Wyo. Mar. 29, 2024). That court "agreed with the interpretation [of 12 U.S.C. § 342] recently set forth by [this Court], concluding that § 342 'makes clear that Federal reserve banks are authorized to maintain Master Accounts, but are not required to do so.'" *Id.* at 23 (quoting *BSJI v. FRBNY*, 2023 WL 7111182, at *7 (S.D.N.Y. Oct. 27, 2023)). Similarly, in *PayServices Bank v. Federal Reserve Bank of San Francisco*, the federal district court in Idaho dismissed a case brought by an institution focused on "facilitating trade commodities" whose request for a master account was denied. 2024 WL 1347094, at *4 (D. Idaho Mar. 30, 2024). In holding that Section 342 governs, the Idaho court agreed with this Court that 12 U.S.C. § 248a merely "confirms that a nonmember bank with access to the Federal Reserve System will pay the same for those services as a member bank."

*Id.* at *10 (citing *BSJI*, 2023 WL 7111182, at *7). BSJI makes no arguments that would support a different outcome here.

## ARGUMENT

### I. Because The Causal Link Between the Board and the Master Account Termination Decision Is Speculative, BSJI Lacks Standing to Sue the Board

BSJI's opposition brief makes clear that BSJI does not have standing to sue the Board because "[s]peculative inferences are necessary to connect" BSJI's claimed injury to the Board. *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 45 (1976). Specifically, BSJI speculates that, "if the Board had objected, there is no basis to believe that the FRBNY would have gone forward with termination" of BSJI's master account. Opp. at 35. This is precisely the type of allegation that falls squarely within the Supreme Court's warning that a plaintiff cannot establish standing by claiming that its situation "might have been better had [the defendant] acted otherwise." *Warth v. Seldin*, 422 U.S. 490, 507 (1975).

For example, in *Simon*, the plaintiffs argued that the IRS was an appropriate defendant because an IRS revenue ruling "encouraged" hospitals to deny services. 426 U.S. at 42. However, the Court held that "[i]t is purely speculative whether the denials of service … fairly can be traced to [the IRS's] 'encouragement' or instead result from decisions made by the hospitals without regard to the tax implications." *Id.* at 42-43. Similarly here, the Amended Complaint demonstrates that FRBNY made its decision based on evidence obtained over a period of years without Board involvement. *See* Amended Complaint ¶¶ 70-147; *see also* Opp. at 25 (claiming that "the seeds of the FRBNY's bad-faith scheme against BSJI were first planted in 2019"). It is purely speculative to believe that the Board might have stopped FRBNY's independent decision. The "causal chain" runs only to FRBNY, which is "ultimately responsible" for the termination decision. *Robbins v. HUD*, 72 F. Supp. 3d 1, 7 (D.D.C. 2014),

*aff'd*, 2015 WL 3372527 (D.C. Cir. May 6, 2015). Indeed, the Board is notably "not a party to the [] contracts" that specifically provided that BSJI's account could be terminated. *Id.*

BSJI's citation to *Neurological Surgery Practice of Long Island, PLLC v. HHS,* 2023 WL 4552860, at *4 (E.D.N.Y. July 17, 2023), does not aid its cause. In that case, the court held that the plaintiff had standing to sue federal agencies "insofar as [the claims] relate to [the agencies'] alleged failure to abide by their own statutory obligations," because if the agencies did what they were legally required to do, the "alleged 'causal nexus' [was] clear." *Id.* at *4. Here, there is no statute that imposes upon the Board any obligation to intervene to stop a Reserve Bank from closing a master account. Rather, the party "with the clear ability" and "statutory power" to act is FRBNY, *see Pritikin v. Dep't of Energy*, 254 F.3d 791, 798 (9th Cir. 2001), and there is no "causal nexus" to support maintaining this case against the Board.

## II.   Because There Is No Judicially Manageable Standard for This Court to Apply to the Board, This Case Concerns Action "Committed to Agency Discretion by Law"

As the Board demonstrated in its opening brief, because the Board cannot itself reinstate BSJI's master account, BSJI's claim would require the Board to exercise its "general supervis[ory]" discretion under 12 U.S.C. § 248(j) to require FRBNY to reinstate BSJI's master account. But Section 248(j) provides no standards for this Court to apply with respect to the Board's exercise of its general supervisory authority over Reserve Banks, and therefore the Board's conduct is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

BSJI's only response is to argue that "'regulations … and informal agency guidance' can serve to set the contours of an agency's discretion, even if the statute otherwise provides none." Opp. at 31-32 (citing *Salazar v. King*, 822 F.3d 61, 76 (2d Cir. 2016)). However, as the Supreme Court has indicated, if the governing statute does not contain a judicially manageable standard, that is generally the end of the inquiry. *See, e.g.*, *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993)

3

(lump-sum Congressional appropriation provided no standard to review agency's use of funds); *Webster v. Doe*, 486 U.S. 592, 600 (1988) (statute "fairly exudes deference" and "appears to us to foreclose the application of any meaningful judicial standard of review"); *Heckler v. Chaney*, 470 U.S. 821, 835 (1985) (statute that "commit[ted] complete discretion to the Secretary" provided no standard to apply). In any event, BSJI has failed to identify any source of law that would require the Board to invoke its supervisory authority in the circumstances presented here.

*Salazar* does not dictate a different result. In that case, the Second Circuit "beg[a]n with the statutory text," which stated that if "eligibility to borrow [student loans] … was falsely certified by the eligible institution … then the Secretary [of Education] shall discharge the borrower's liability." 822 F.3d at 77. The court characterized this as "mandatory, non-discretionary language," which "creates boundaries and requirements for agency action," and only then proceeded to look to regulations and other agency documents for "additional guidance" to evaluate the agency's conduct. *Id.* at 77-81. The court further noted that judicial review is appropriate where "the statute contain[s] meaningful standards constraining [the agency's] discretion," but not where the agency's decision is purely a "discretionary determination." *Id.* at 79-80 (quotations omitted). Here, the Board's "general supervis[ory]" authority under Section 248(j) is plainly a discretionary determination, and no boundaries or meaningful standards as to when the Board must act are contained in that statute or any other source of law. *See Heckler*, 470 U.S. at 836 (agency "policy statement" could not override unreviewable discretion to not exercise enforcement power); *cf. Lincoln*, 508 U.S. at 194 ("special trust relationship existing between Indian people and the Federal Government" could not supply a limit on agency discretion not found in the statute).

4

Decisions committed to agency discretion by law are not tantamount to giving an agency "unchecked power," as BSJI asserts. Opp. at 1. It simply means that the decision as to whether courts may review agency action under the APA is "in the first instance *for Congress.*" *Heckler*, 470 U.S. at 834 (emphasis added); *see also Lincoln*, 508 U.S. at 193 ("Congress may always circumscribe agency discretion … by putting restrictions in the operative statutes"). Thus, if an agency's decision-making is to be subjected to judicial scrutiny, then Congress must provide "judicially manageable standards." *Heckler*, 470 U.S. at 830. Here, Congress has not done so; rather, the Board's supervisory authority over Reserve Banks is framed in general terms and the "may receive" language of Section 342 has remained constant despite numerous amendments to the FRA since 1913.

**III.     Section 248a Does Not Mandate Providing Reserve Bank Accounts to All Nonmember Banks**

As in the preliminary injunction briefing, BSJI's central contention is that 12 U.S.C. § 248a(c)(2) requires that Reserve Banks provide a deposit account to every nonmember depository institution that wants access to Reserve Bank services. But as the Board demonstrated in its opening brief, that provision does not say anything about deposit accounts, and it appears in an FRA subchapter entitled "Board of Governors of the Federal Reserve System." In contrast, 12 U.S.C. § 342—the statutory provision that does address deposits—appears in a subchapter entitled "Powers and Duties of Federal Reserve Banks," and it gives Reserve Banks discretion to open deposit accounts. BSJI makes various arguments in an attempt to circumvent the unambiguous language of these statutes. None withstands scrutiny.

*First*, BSJI contends that the FRA does not address deposit accounts, and that deposit accounts at Reserve Banks "are required to access Federal Reserve services only because of Defendants' say-so." Opp. at 3; *see also* Opp. at 8-9. However, 12 U.S.C. § 342 has existed since

5

the FRA was enacted in 1913, and has always indicated that Reserve Banks "may receive … deposits." 38 Stat. 263 (1913). The notion that deposit accounts are a recent creation, put into place after 1980 to restrict access to Reserve Bank services, is readily contradicted by the FRA as it has existed since 1913. The fact that these deposit accounts are now called master accounts is of no significance in applying Section 342. This case is about BSJI's argument that it is entitled to a Reserve Bank account that can receive deposits, and therefore Section 342 plainly governs. *See Custodia*, ECF 317, at 23 ("The Supreme Court has noted [Section 342] confers the authority to receive such deposits on the Federal Reserve Banks … [which] necessarily carries with it the discretion to grant or deny master accounts.").

*Second*, BSJI contends that the word "shall" in Section 248a(c)(2) dictates that Reserve Bank services must be "provided to all," Opp. at 11, but this rewrites the statute. The statute actually states a pricing principle that "[a]ll Federal Reserve bank services covered by the fee schedule shall be available to nonmember depository institutions and such services shall be priced at the same fee schedule applicable to member banks[.]" 12 U.S.C. § 248a(c)(2). Thus, the statute does not say that services "shall" be "provided to all." Instead, the word "[a]ll" precedes the word "shall" and is used only in relation to the services it covers, not to the institutions that might access these services. "When Congress includes particular language in one section of a statute but omits it in another—let alone in the adjoining provision—courts presume that Congress intended a difference in meaning." *Loughrin v. United States*, 573 U.S. 351, 358 (2014). This presumption "applies with particular force" if the inclusion and omission occur "in close proximity—indeed [as here], in the same sentence." *DHS v. MacLean*, 574 U.S. 383, 392 (2015). The statute's text thus indicates that it at most concerns provision of "*[a]ll* Federal Reserve bank services" to nonmember banks *as a class*, not to all banks in that class.

6

Indeed, even though BSJI has hinged its claims on the enactment of the MCA in 1980, BSJI fails to mention that the MCA amended section 342 by adding "or other depository institution" after "member banks" to those entities from which Reserve Banks "may" accept deposits, but did not change the "may" to "shall." 94 Stat. 139 (1980). "Congress can therefore be presumed to have 'accepted and ratified'" Reserve Bank discretion to receive deposits from nonmember banks through its enactment of the MCA. *PayServices*, 2024 WL 1347094, at *6.

*Third*, BSJI cites to legislative history of the MCA, as well as post-enactment history, in which statements appear concerning making services available to "all banks" or "all depository institutions." Opp. at 11-13. But none of these statements can override the plain text of the MCA, *cf. Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011) ("We will not [allow] ambiguous legislative history to muddy clear statutory language."), and all of these non-statutory statements are consistent with Reserve Banks' undisputed post-MCA *ability* to provide accounts and services to nonmember banks *as a class*, subject to equitable pricing conditions, rather than a *mandate* to provide accounts and services to every such bank regardless of risk. None of the statements speaks of eliminating the Reserve Banks' longstanding discretion over access to their accounts and services.

*Fourth*, BSJI claims that "Section 342 speaks to the types of entities that <u>may</u>—but are <u>not statutorily required</u> to—make deposits with a Reserve Bank." Opp. at 14 (emphases added); *see also id.* (suggesting § 342 means "a depository institution is allowed to deposit"). But this suggestion would require transforming the statutory direction that "[a]ny *Federal reserve bank* may *receive*" deposits to instead state that "any *depository institution* may *make*" deposits, which turns the statute on its head. *See* 12 U.S.C. § 342; *Farmers & Merchs. Bank v. Fed. Rsrv. Bank of Richmond*, 262 U.S. 649, 662 (1923) ("[N]either § 13 nor any other provision of the Federal

7

Reserve Act imposes upon reserve banks any obligation to receive checks for collection. The act merely confers authority to do so.").

*Fifth*, BSJI contends that the Board's reading of Section 342 produces the "nonsensical result[]" that "nonmember depository institutions [are] on par with the United States," such that a Reserve Bank could block the federal government from having a master account. Opp. at 14-15. But BSJI overlooks that a different provision of the FRA grants the Secretary of the Treasury authority to "direct[]" that government funds "be deposited in Federal reserve banks, which banks, when required by the Secretary of the Treasury, shall act as fiscal agents of the United States." 12 U.S.C. § 391. Thus, when read in conjunction, Section 342 unremarkably allows a Reserve Bank to exercise broad discretion regarding deposits subject to the limitations of Section 391. BSJI does not explain why this is a "nonsensical" result.

*Finally*, contrary to BSJI's descriptions of the dual banking system (Opp. at 2-3), it is not the case that an institution chartered under state law is automatically entitled to a master account. States have never been able to dictate which institutions have access to the Federal Reserve's balance sheet, and indeed, when state and federal interests conflict with respect to banking, federal law governs. *See*, *e.g.*, *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 28 (1996) (holding that a federal law granting national banks the authority to sell insurance impliedly preempted a state law that prohibited banks from engaging in this activity). Were it otherwise, the consequences could be dramatic: a state or territory might seek to win market share by enacting a statute with no regulatory apparatus whereby totally unregulated institutions and individuals could create their own "bank" and gain access to Reserve Bank accounts and services, with potentially devastating consequences to financial stability and money laundering.

8

*See Custodia*, ECF 317, at 25 ("one can readily foresee a 'race to the bottom' among states … , allowing minimally regulated institutions to gain access to the central bank's balance sheet").

In sum, 12 U.S.C. § 248a(c)(2) does not provide an automatic right to a master account. As the court in *Custodia* aptly noted:

> Accepting [the] contention [that Section 248a provides an automatic right to a master account] would mean that Congress, in the [MCA] in 1980, greatly altered the details of the regulatory scheme first initiated in 1913 by requiring Federal Reserve Banks to provide master accounts to all eligible depository institutions requesting one, and also that Congress did so in a provision (and a subchapter) directed at the Board of Governors and without explicitly saying as much. A better example of hiding an elephant in a mousehole would be difficult to find.

*Custodia*, ECF 317, at 24.

## CONCLUSION

For these reasons, as well as those in the Board's opening brief, the Board respectfully requests that the Court dismiss the Amended Complaint with prejudice.

\*        \*        \*        \*        \*        \*

## CERTIFICATE OF COMPLIANCE

In accordance with Section II.D of the Court's Individual Practices, the foregoing brief contains 2800 words, excluding the cover page, table of contents, table of authorities, and this certificate of compliance. The foregoing brief also complies with the formatting rules set forth in Section II.D of the Court's Individual Practices.

Dated: April 26, 2024

                          Respectfully submitted,

                          /s/ *Joshua P. Chadwick*
                        Mark Van Der Weide, General Counsel
                        Richard M. Ashton, Deputy General Counsel
                        Joshua P. Chadwick (JC9369), Senior Special Counsel
                        Yvonne F. Mizusawa (YM5081), Senior Counsel
                        Nicholas Jabbour (*pro hac vice*), Senior Counsel
                        Board of Governors of the Federal Reserve System
                        20th Street and Constitution Avenue, N.W.
                        Washington, D.C. 20551
                        (202) 263-4835
                        joshua.p.chadwick@frb.gov

                        *Counsel for Defendant Board of Governors of the Federal Reserve System*

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2024, I electronically filed the foregoing using the court's CM/ECF system, which will send notification of such filing to all parties of record.

By:     /s/ *Joshua P. Chadwick*
       Joshua P. Chadwick

       *Counsel for Defendant Board of Governors of the Federal Reserve System*