

200 Park Avenue
New York, NY 10166
T +1 (212) 294-6700
F +1 (212) 294-4700

NORTH AMERICA   SOUTH AMERICA   EUROPE   ASIA

**ABBE DAVID LOWELL**
Partner
(212) 294-6700
ADLowell@winston.com

December 16, 2024

**VIA ECF**

Hon. John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      ***Re:***    ***Banco San Juan Internacional, Inc. v. the Federal Reserve Bank of New York and the Board of Governors of the Federal Reserve System,*** **No. 1:23-cv-6414 (JGK)**

Dear Judge Koeltl:

      Further to the Court's December 12, 2024 Order (ECF No. 147), on behalf of Plaintiff BSJI, we respectfully submit this supplemental letter to address certain issues raised during argument on Defendants' Motions to Dismiss.

      *First*, Your Honor posed a question concerning a private right of action for BSJI's due process claim. 12/14/2024 Tr. ("Tr.") at 12:2-13. The Depository Institutions Deregulation and Monetary Control Act of 1980 (the "Monetary Control Act")—which implemented Section 248a—was recently interpreted to confer such a right. In *National Association of Industrial Bankers et al. v. Weiser et al.*, plaintiffs sought a preliminary injunction to preclude Colorado from enforcing an interest rate law alleged to be preempted by the Monetary Control Act. No. 1:24-cv-00812 (D. Colo. June 18, 2024), ECF No. 69. Defendants opposed, contending that no private right of action existed under the governing statutory scheme. The court disagreed. Applying a *Bivens* analysis as articulated in *Davis v. Passman*, 442 U.S. 228, 239-41 & n.18 (1979), the court found that the statutory language, "phrased in terms of the persons benefited rather than focused on the persons regulated," evidenced the existence of a private right of action. *Id.* at 11. So too here in light of Section 248a's directive that "All Federal Reserve bank services covered by the fee schedule *shall be available to nonmember depository institutions*." 12 U.S.C. §248a. (emphasis added).

      Further to the point, in *Custodia Bank, Inc. v. Federal Reserve Board of Governors*, the court determined that the plaintiff—which likewise brought suit to enforce its statutory right to a master account under Section 248a—had sufficiently alleged a due process claim concerning this right. 640 F. Supp. 3d 1169, 1186 (D. Wyo. 2022); *see also Jet Courier Servs., Inc. v. Fed. Rsrv. Bank of Atlanta*, 713 F.2d 1221, 1228 (6th Cir. 1983) (noting, for purpose of a standing analysis, that the Monetary Control Act was implemented to protect depository institutions). *PayServices Bank v. Federal Reserve Bank of San Francisco* does not compel a different result since the court did not address whether there was a private right of action under the Monetary Control Act in relation to plaintiff's due process claim, which was dismissed on separate grounds. 2024 WL 1347094 (D. Idaho Mar. 30, 2024).

      *Second*, the issue of the discovery following the *Custodia* court's denial of defendants' motions to dismiss relative to that permitted here to date came up. Tr. at 40:22-41:22. The difference in scope is substantial. In the instant matter, BSJI was permitted to seek limited

Hon. John G. Koeltl
December 16, 2024
2

discovery concerning the FRBNY's two decisional memoranda and communications between the two Defendants concerning the same; this resulted in the production of four documents. In *Custodia*, the Board produced the administrative record, and the Federal Reserve Bank of Kansas City produced thousands of pages of documents. Order on Dispositive Motions, *Custodia Bank, Inc. v. Federal Reserve Board of Governors*, No. 1:22-cv-00125 (Mar. 29, 2024), ECF No. 317. The *Custodia* parties' filings, which included hundreds of exhibits, likewise make clear that additional discovery here would lead to the production of probative materials, including a "Handbook to Implement the Account Access Guidelines," which Guidelines the FRBNY relied upon in stating that BSJI allegedly posed an "undue risk to the overall economy." Moreover, the FRBNY's statement at oral argument that discovery did not inform the *Custodia* court's summary judgment ruling is incorrect: the *Custodia* court merely noted that no dispute of material fact compelled denial of summary judgment, *not* that discovery proved to be unnecessary. *Id.* at 6-7.

*Third*, the Court inquired whether the FRBNY can be restricted from exercising its asserted "unfettered discretion" over master account access by virtue of the parties' Master Account Agreement. Tr. at 10:2; 20:7-14. Operating Circular No. 1, which is incorporated into the parties' Master Account Agreement and includes language mirroring the implied covenant of good faith and fair dealing, does just that. While unrelated third parties owe no analogous duty to one another, the decision to enter into a contractual arrangement restrains the scope of permissible behavior. *Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*, 2021 WL 3668092, at *4 (S.D.N.Y. Aug. 17, 2021) (recognizing that the covenant of good faith and fair dealing is "implicit in every contract"). Take an example. As a manufacturer, I may have discretion to sell my widgets to whomever I choose. But once I enter into a distribution agreement with a particular buyer, that discretion is circumscribed by the obligations (delivery responsibilities, exclusivity provisions, not terminating the contract in bad faith, etc.) owed to the purchaser under that contract. As such, assuming *arguendo* that FRBNY has statutory discretion to terminate master account access at will—or, as the FRBNY boldly claims, its "motivation doesn't matter" (Tr. at 10:2)—that discretion nonetheless remains subject to those terms of its Master Account Agreement with BSJI.

*Fourth*, with respect to intervening developments since the Court's preliminary injunction hearing (Tr. at 21:13-22:13), on information and belief, BSJI understands that nine of ten IBEs owned by former Venezuelan nationals have lost their master accounts since January 2021, seriously undermining Defendants' pretextual proffered reasons for closure. *See* Am. Compl. ¶ 11. Likewise, instances of disparate treatment by the Board and FRBNY as to large financial institutions—like TD Bank, which pled guilty to a billion-dollar *money laundering conspiracy* yet did not lose master account access—and small IBEs like BSJI, whose access was terminated on wholly specious grounds, have only increased. These intervening developments merit the opportunity to take discovery on the issue of good faith.

*Fifth*, concerning the discussion of correspondent banking (Tr. at 44:17-45:3), even if Section 248a could be read to dictate only pricing parity for members and non-members, the denial of master accounts belies that mandate. Forcing depository institutions to rely on correspondent banking relationships—assuming one could be found and blessed by the FRBNY, which has been an impossibility for BSJI—(i) exposes a nonmember to significant additional costs given the hefty fees correspondent banks charge and (ii) subverts Congressional intent with respect to Section 248a's equal pricing directive.

Hon. John G. Koeltl
December 16, 2024
3

Respectfully submitted,

*/s/ Abbe David Lowell*

Abbe David Lowell
Kelly A. Librera

WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
ADLowell@winston.com
KLibrera@winston.com
T: 1-212 294-6700
F: 1-212-294-4700

*Counsel for Banco San Juan Internacional, Inc.*

cc:  Counsel for All Parties (via ECF)