# Simpson Thacher & Bartlett LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954

TELEPHONE: +1-212-455-2000
FACSIMILE: +1-212-455-2502

Direct Dial Number　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　E-mail Address
+1-212-455-3539　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　jyoungwood@stblaw.com

VIA ECF　　　　　　　　　　　　　　　　February 10, 2025

The Honorable John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

　　　　　Re:　*Banco San Juan Internacional, Inc. v. FRBNY*, Case No. 1:23-cv-6414 (JGK)

Dear Judge Koeltl:

　　　　The Federal Reserve Bank of New York ("FRBNY") opposes Banco San Juan Internacional, Inc.'s ("BSJI") motion for leave to file a second amended complaint ("SAC").

　　　　The proposed SAC does not plead new facts in support of the claims the Court already dismissed. Rather it seeks to add two new claims: (i) an Administrative Procedure Act ("APA") claim against the Board, which the Board addresses in a separate letter, and (ii) a claim against the FRBNY for purportedly depriving BSJI "equal protection of the laws, in violation of the Fifth Amendment of the U.S. Constitution." SAC ¶¶ 228-33 (asserting BSJI's master account was closed "due to its [Venezuelan] national origin" "without any consideration of its *bona fides*"). BSJI concedes its motion is "likely" futile because its proposed claims are subject to dismissal. Dkt. #155 ("Letter Motion") at 1. The FRBNY agrees.

　　　　*I. Background and Judicial Posture:* BSJI brought this action in July 2023 seeking to enjoin the FRBNY from closing its master account due to money laundering concerns. Dkt. #1. The Court denied injunctive relief, holding that BSJI's claims were unlikely to succeed on the merits and that an injunction ran contrary to the public interest. *Banco San Juan Internacional, Inc. v. FRBNY*, 700 F. Supp. 3d 86, 103-104 (S.D.N.Y. 2023) ("*BSJI I*"). The Court found the FRBNY had the statutory discretion and contractual right to close BSJI's account and that closure was based on "a comprehensive investigation [of] high risk transaction activity in BSJI's account" and "a thorough review of the evidence and pertinent factors" that "resulted in a decision that explained the FRBNY's rationale." *Id.* at 102-03. The Court held that "[a]ccepting deposits from and providing financial services to a financial institution with BSJI's record of noncompliance exposes the FRBNY and the financial system to risk" and that "granting BSJI's motion . . . would place the public in harm's way." *Id.* at 104.

　　　　In its Opinion and Order dated January 8, 2025, the Court dismissed all claims in BSJI's first amended complaint ("FAC"). *Banco San Juan Internacional, Inc. v. FRBNY*, 2025 WL 44259, at *15 (S.D.N.Y. Jan. 8, 2025) ("*BSJI II*"). In addition to rejecting BSJI's

core theory that it is legally entitled to an account, the Court held that there was no cause of action against the FRBNY for purported violations of the Fifth Amendment's Due Process Clause. *Id.* at *22.

The Court also held that the FRBNY documents memorializing the risk-based nature of its closure decision were incorporated by reference in the FAC and refuted BSJI's "bald assertion" that the closure was part of an effort to deprive novel banks of account access. *Id.* at *19; *see also id.* at *4-5 (FRBNY's Compliance Group produced a "thorough report on BSJI's compliance risks" detailing numerous concerns about BSJI's compliance program and high-risk transaction activity and concluded BSJI presented "undue risk"); *id.* at *5 (FRBNY "provided a detailed explanation of [its] significant AML concerns related to BSJI's transaction activity," including "the rapid movement of funds on behalf of high-risk entities located in high-risk jurisdictions that are controlled by close relatives of BSJI's owner" and that "often lack a clear business purpose" and transactions bearing the hallmarks of "illicit activity").

Despite the Court's repeated recognition that closure was driven by a comprehensive risk assessment, BSJI now seeks leave to add a claim asserting that it was not based on risk at all, but was instead driven by the national origin of BSJI's principals.

*II. The SAC's Equal Protection Claim Would Be Futile:* Leave to amend "need not be granted '[w]here a proposed amendment would be futile[.]'" *Boyette v. Montefiore Medical Ctr.*, 22-cv-5280 (JGK), 2024 WL 1484115, at *3 (S.D.N.Y. Apr. 5, 2024). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)." *Id.* (citation omitted). "In evaluating whether granting leave to amend would be futile, a court must consider both the proposed amendments and the original complaint, 'accepting as true all non-conclusory factual allegations therein, and drawing all reasonable inferences in the plaintiff's favor.'" *Id.* at *4 (citations omitted). However, "[i]f a plaintiff's allegations are contradicted by [documents incorporated by reference or integral to the complaint], those allegations are insufficient to defeat a motion to dismiss." *Jimenez v. Sommer*, 14-cv-5166 (NSR), 2017 WL 3268859, at *2 n.5 (S.D.N.Y. Jul. 28, 2017) (citation omitted).

The SAC's proposed Fifth Amendment equal protection claim would be futile for at least two reasons. *First*, the claim alleges a violation of the Due Process clause of the Fifth Amendment, SAC ¶ 233, and the Court already held there is no such cause of action against the FRBNY here. *BSJI II*, 2025 WL 44259 at *22. This result does not "functionally immunize" the FRBNY from judicial review, Letter Motion at 3; it is the product of BSJI asserting a claim that runs afoul of *Bivens'* progeny and *BSJI II*.

*Second*, the SAC does not otherwise allege sufficient facts that plausibly show BSJI is entitled to relief under an equal protection theory. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citation omitted). Plausibility demands "more than a sheer possibility that a defendant has acted unlawfully;" conclusory allegations or conduct that is "more likely explained by[] lawful . . . behavior" is insufficient. *Id.* at 678, 680. Where, as here, "the claim is invidious discrimination in contravention of the . . . Fifth Amendment[]," "the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Id.* at 676.

Simpson Thacher & Bartlett LLP

The Honorable John G. Koeltl      - 3 -      February 10, 2025

      The SAC's equal protection claim does not and cannot meet this standard.  BSJI baldly alleges the FRBNY issued an "internal directive" to reject account applications "from Puerto Rican depository institutions . . . without any consideration as to the merits" because "the FRBNY wanted to foreclose individuals with links to Venezuela . . . from accessing a master account."  SAC ¶ 155.  This unsupported allegation is wholly implausible in light of the FRBNY documents incorporated in the SAC.  The Court already concluded that those documents show that the FRBNY's closure decision was driven by a thorough review of the money laundering risk posed by BSJI, based on, among other things, BSJI's transaction history.  *Supra* at 2.  "The court need not accept as true [] allegation[s]" like these "that [are] contradicted by documents on which the complaint relies."  *In re Bristol-Meyers Squibb Sec. Litig.* 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004); *see also Iqbal*, 556 U.S. at 682 ("As between [an] 'obvious alternative explanation' . . . and the purposeful, invidious discrimination [plaintiff] asks [the Court] to infer, discrimination is not a plausible conclusion.").

      Further, the SAC's only support for the existence of a purported "internal directive" is an April 2019 Reuters article that says no such thing.  SAC ¶ 14 & n.1 (citing Reuters, *Exclusive: New York Fed Cracks Down on Puerto Rico Bank Following Venezuela Sanctions* (Apr. 19, 2019), https://tinyurl.com/ypahhx2w) ("Reuters").  The article suggests only that, in the wake of the FBI raiding BSJI's offices, the FRBNY temporarily paused its acceptance of new account requests from IBEs and IFEs until it was able to implement enhanced account access standards for high-risk institutions.  *See* Reuters ("In February, the FBI raided Puerto Rican offshore bank [BSJI] as part of a probe of money laundering and evasion of Venezuela-related sanctions[.]"); *id.* ("[T]he New York Fed said it had halted approval of new accounts for Puerto Rican offshore banks . . . 'in light of recent events, including the expansion of U.S. economic sanctions related to Venezuela.' . . . It plans stricter requirements for the opening of such accounts in the future[.]").  The article is fully consistent with the documents incorporated in the SAC demonstrating that the FRBNY's account decisions are driven by risk, and lends no support to BSJI's baseless assertion of discrimination.

      Nor is BSJI's proposed claim saved by the allegation that the FRBNY purportedly closed the accounts of "nine of ten" "IBEs owned by former Venezuelan nationals."  SAC ¶ 158.  Even if true, the SAC alleges no facts to suggest that any such purported closures were discriminatory in nature, rather than legitimate and individualized risk-based decisions.  *See Iqbal*, 556 U.S. at 682; *see also BSJI II*, 2025 WL 44259, at *2 ("The Guidelines subject institutions that are not federally insured and operate outside the scope of the federal banking agencies' supervisory framework to the strictest level of review.").  The SAC thus fails to "plead sufficient factual matter to show that" the FRBNY closed any purported accounts "not for a neutral . . . reason but for the purpose of discriminating on account of . . . national origin."  *Iqbal*, 556 U.S. at 663.

      For the foregoing reasons, the Court should deny BSJI's motion.

Simpson Thacher & Bartlett LLP

| | | |
|---|---|---|
| The Honorable John G. Koeltl | - 4 - | February 10, 2025 |

                      Respectfully submitted,

                      */s/ Jonathan K. Youngwood*

                      Jonathan K. Youngwood

cc:    All Counsel of Record via ECF