

BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
WASHINGTON, DC 20551

February 10, 2025

By ECF
Hon. John G. Koeltl
United States District Court
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

    Re:    Response to Letter Motion (ECF 154) in *Banco San Juan Internacional, Inc. v. Federal Reserve Bank of New York*, No. 23-cv-6414 (JGK)

Dear Judge Koeltl:

    Pursuant to the briefing schedule set by the Court (ECF 152, at 68-69), I write on behalf of Defendant Board of Governors of the Federal Reserve System ("Board") to respond to the letter motion (ECF 154) from Plaintiff Banco San Juan Internacional, Inc. ("BSJI") requesting leave to file a second amended complaint (ECF 154-2). With respect to the Board, BSJI's proposed complaint seeks to add an Administrative Procedure Act ("APA") claim on the grounds that the Board issued its Guidelines for Evaluating Account and Service Requests (87 Fed. Reg. 51,099, "Guidelines") without statutory authority. Proposed Complaint Count II, ¶ 189. BSJI further claims that the Board's implementation of the Guidelines was in various ways arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Id.* ¶¶ 190-193. Because this new claim is futile, the Board respectfully requests that BSJI's motion be denied. *See, e.g.*, *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (affirming denial of leave to amend where amendments would not "cure the pleading deficiencies").

    BSJI's argument that the Guidelines were issued without appropriate statutory authority hinges on the premise that depository institutions are "statutorily entitled to a master account." Proposed Complaint ¶ 189. However, as BSJI acknowledges, this claim is foreclosed by the Court's holdings that 12 U.S.C. § 342 authorizes Reserve Banks to exercise discretion in master account decisions and that there is no absolute entitlement under 12 U.S.C. § 248a to a master account. *See* Letter Motion at 1-2 (noting that the claim that the Board acted in excess of statutory authority "turns on an issue . . . on which the Court has ruled" in the Board's favor); Opinion and Order on Motions to Dismiss (ECF 152), at 20-34 (holding, among other things, that 12 U.S.C. § 342 "grants to Federal Reserve banks the discretion to grant, deny, or close any institution's master account or request for a master account," and "nothing in section 248a(c)(2) disturbs the discretion conferred on Federal Reserve banks pursuant to section 342").

    As to the assertion that the Guidelines are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, BSJI has failed to allege relevant "final agency action," as is required to state an APA claim. 5 U.S.C. § 704; *see also, e.g.*, *Larson v. United States*, 888

F.3d 578, 587 (2d Cir. 2018) ("APA review is limited to [] final agency action"). For an agency action to be "final," two conditions must be met: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (quotations omitted).

As has been previously briefed in these proceedings, the Guidelines are a set of principles to help guide Reserve Bank master account decisions with improved transparency and consistency. *See* 87 Fed. Reg. 51,099; *see also* Board MTD Brief (ECF 136), at 5-6; Board PI Opp. (ECF 54), at 4-5. The Guidelines are "informed by and incorporate, where possible, existing Reserve Bank risk-management practices," and thus are "an evolution of existing practices rather than the creation of new standards." 87 Fed. Reg. at 51,106 (quotation omitted). And, as was the case before the Guidelines, "[d]ecisions on individual requests for access to accounts and services are made by the Reserve Bank in whose District the requestor is located." *Id.* The Guidelines "are not intended to provide assurance that any specific institution will be granted an account and services," but instead "broadly outline considerations for evaluating access requests," with each access request being decided by a Reserve Bank "on a case-by-case basis." *Id.* Notably, while the Guidelines create a three-tiered review framework based on risk levels, "a Reserve Bank has the authority to grant or deny an access request by an institution in any of the three proposed tiers." *Id.* at 51,109-10. The Guidelines do not dictate any particular result, but instead are by their express terms aimed at "maintaining the discretion granted to the Reserve Banks under the Federal Reserve Act." *Id.* at 51,100.

With this summary of the Guidelines in mind, it is evident that they do not meet either requirement for final agency action. *First*, the Guidelines are not the "consummation of a decisionmaking process" with respect to BSJI. Rather, they provide a set of principles to assist Reserve Banks with respect to their master account decisionmaking processes. *See, e.g., Sunny v. Biden*, 2023 WL 5613433, at *2 (E.D.N.Y. Aug. 30, 2023) (policy guidance not final agency action because it was "riddled with discretion-giving language"); *Upstate Citizens for Equal., Inc. v. Salazar*, 2010 WL 827090, at *8 (N.D.N.Y. Mar. 4, 2010) (not final action where agency had not made "substantive judgments" with respect to the parties); *Chem. Mfrs. Ass'n v. EPA*, 26 F. Supp. 2d 180, 183 (D.D.C. 1998) (agency policy was not actionable final agency action because it was "intended to guide" and granted "considerable discretion").[1]

*Second*, the Guidelines do not determine rights or obligations or create new legal consequences. They merely provide additional transparency and detail regarding the discretion that Reserve Banks exercise under Section 342. *See, e.g., Env't Def. Fund, Inc. v. Johnson*, 629 F.2d 239, 241 (2d Cir. 1980) (not final agency action where the agency's report did not "advocate any [] definitive action" that had harmed the plaintiff); *see also, e.g., Nat'l Pork Producers Council v. EPA*, 635 F.3d 738, 756 (5th Cir. 2011) (guidance letters elaborating on statute were not final agency action because they created no new legal consequences); *Fairbanks*

---

[1] BSJI alleges that the Guidelines have the practical effect of being binding with respect to Tier 3 institutions, claiming that "no Federal Reserve Bank has granted a Tier 3 institution's application for a master account . . . since the Board promulgated the Guidelines." Proposed Complaint ¶ 163. But BSJI is not correct. The master account database shows that the Federal Reserve Bank of New York ("FRBNY") approved a Tier 3 institution for a master account as recently as May 30, 2024. *See* https://www.federalreserve.gov/paymentsystems/master-account-and-services-database-access-requests.htm.

*N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 593 (9th Cir. 2008) (not final agency action where "rights and obligations remain unchanged"); *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 808 (D.C. Cir. 2006) (agency policy guidelines were not final agency action because they "are nothing more than general policy statements with no legal force"); *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 732 (D.C. Cir. 2003) (not final agency action where "the [agency's] request for voluntary compliance" had "no legally binding effect," and "the agency ha[d] not . . . issued any order imposing any obligation").

BSJI likens the Guidelines to a "loaded gun" (Proposed Complaint ¶ 160), and argues that "[l]iability should not be avoided by pointing the finger at the FRBNY's termination decision when the Board created the means by which this termination was accomplished" (Letter Motion at 2). But BSJI cites no law for this argument, and the law does not support it. Any guidance from the Board cannot be "final" where the decision is ultimately made by another entity—here, FRBNY. *See, e.g.*, *Parsons v. DOJ*, 878 F.3d 162, 170 (6th Cir. 2017) (no legal consequences where alleged harm was "caused by third parties who discretionarily relied" on agency report); *Flue-Cured Tobacco Coop. Stabilization Corp. v. EPA*, 313 F.3d 852, 861 (4th Cir. 2002) (not final agency action where, despite "persuasive value" of agency recommendations, any adverse action was "attributable to independent responses and choices of third parties"); *Indus. Safety Equip. Ass'n v. EPA*, 837 F.2d 1115, 1121 (D.C. Cir. 1988) ("repercussions from the [agency's] dissemination of information designed to provide [an] industry with up-to-date safety recommendations" are not final agency action). Indeed, as the Court previously held in determining that BSJI lacks standing to sue the Board, BSJI "cast[s] the Board in an advisory role only, [and has] failed to allege facts showing that the Board was involved in the FRBNY's final account-closure decision." Opinion and Order on MTDs, at 37. The same remains true in the proposed complaint.

Finally, to the extent that the proposed complaint alleges that the Board was required under its general supervisory authority to intervene to overturn FRBNY's decision to terminate BSJI's master account (Proposed Complaint ¶¶ 191, 192), that is nothing more than a rehashing of BSJI's statutory entitlement and mandamus claims. As the Court already held, "[b]ecause the [Federal Reserve Act] does not impose a nondiscretionary duty on either defendant to maintain a master account for BSJI," no such relief is warranted or available on the facts alleged. Opinion and Order on MTDs, at 56; *see also id.* at 43-44.

In sum, BSJI's request that the Court permit the filing of a second amended complaint alleging the Board violated the APA in issuing the Guidelines should be denied because the new allegations are legally meritless and therefore the amendment would be futile.

The Board appreciates the Court's consideration.

Respectfully submitted,

/s/ *Joshua P. Chadwick*
Joshua P. Chadwick
Board of Governors of the Federal Reserve System