

NORTH AMERICA   SOUTH AMERICA   EUROPE   ASIA

200 Park Avenue
New York, NY 10166
T +1 (212) 294-6700
F +1 (212) 294-4700

**ABBE DAVID LOWELL**
Partner
(212) 294-6700
ADLowell@winston.com

February 17, 2025

**VIA ECF**

Hon. John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *BSJI v. the Federal Reserve Bank of New York et al.*, No. 1:23-cv-6414 (JGK)

Dear Judge Koeltl:

    On behalf of Plaintiff BSJI we respectfully submit this response to the letters of Defendant FRBNY (ECF No. 157) and Defendant the Board (ECF No. 158) opposing BSJI's request for leave to file a Second Amended Complaint ("SAC") (the "Letter").

    As previously noted, BSJI is not seeking to relitigate its case through these letters. The bulk of the issues raised by the FRBNY and the Board have previously been ruled upon. Nevertheless, BSJI writes to address four points in the FRBNY's and the Board's letters and to apprise the Court of recent significant developments.

    *First*, the FRBNY's assertion that BSJI's proposed equal protection claim is foreclosed by this Court's ruling on BSJI's due process claim is incorrect. FRBNY Ltr. at 1. While both claims arise from the Fifth Amendment, fifty years of Supreme Court precedent establish that the analysis of an equal protection claim under the Fifth Amendment is "precisely the same as [an] equal protection claim[] under the Fourteenth Amendment," not a due process claim for the deprivation of property. *Sessions v. Morales-Santana*, 582 U.S. 47, 52 (2017). As such, BSJI is not required to establish a statutory private right of action to pursue its claim, which this Court held was required for BSJI's due process claim. *Id.* BSJI has alleged the disparate impact of the FRBNY's actions on IBEs owned by Venezuelan nationals: 90% of such institutions have now had their master accounts terminated by the FRBNY. SAC ¶ 231. BSJI has also alleged that the FRBNY implemented an internal policy targeting IBEs owned by Venezuelan nationals, that BSJI's account termination was in furtherance of that policy, that the FRBNY's stated rationale in closing BSJI's master account was pretextual and that its actual reason was discriminatory. SAC ¶¶ 154-160. That is sufficient to survive a motion to dismiss. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977); *see Hayden v. Paterson*, 594 F.3d 150, 163 (2d Cir. 2010) (recognizing that "discriminatory intent is rarely susceptible to direct proof" and as such, a discrimination claim is typically pled based on indirect and circumstantial evidence, with discovery to follow).

    The FRBNY's continued refrain that "risk" justified its actions (FRBNY Ltr. at 2) simply cannot be reconciled with the fact that non-Venezuelan owned banks, which either have been found liable of engaging in *actual* money laundering or violating anti-money laundering compliance rules, are treated far more leniently and have not had their master account access terminated. *See* SAC ¶¶ 143-146; Ltr at 2. Neither the FRBNY nor the Board has ever offered an explanation for this disparate treatment.

Hon. John G. Koeltl
February 17, 2025
2

*Second*, recent regulatory developments have affirmed the likelihood of discriminatory intent here and, concomitantly, the need for discovery in this case. Just last week, the Chair of the Federal Reserve, Jerome Powell, testified to the Senate Banking Committee that he was "troubled" by the recent spate of depository institutions that have been "de-banked" by the Reserve Banks, and that the consideration of "reputational risk"—a purported "risk" <u>expressly</u> relied on by the FRBNY in justifying its decision to terminate BSJI's master account (*see* ECF No. 56 at 31)—is improper and would no longer be considered by Reserve Banks.[1] The Federal Reserve Banks' inappropriate reliance on improper standards had been made public by United States Senator Cynthia Lummis (Wyoming), who had obtained access to the Federal Reserve System's "Account Access Implementation Handbook." That Handbook, which apparently was made available to Custodia in its litigation but denied to BSJI in this action, expressly granted authority to Reserve Bank staff to consider in master account determinations "reputational risk to the Reserve Bank," including whether the "institution's leadership" or the institution itself was "associated with controversial commentary or activities"—whatever that means.[2]  Aside from the obvious First Amendment implications, it is a standardless standard.  In the context of BSJI, it raises the question whether the FRBNY has painted with too broad a brush, deeming IBE ownership by any Venezuelan national as posing "reputational risk" to the Reserve Bank sufficient to terminate its master account.

Relatedly, the FDIC this month produced to Congress a cache of documents showing that cryptocurrency-related banks, another category of depository institutions that have been targeted by the Board and Reserve Banks, "were almost universally met with resistance" by regulators, who had established standards concerning these institutions that were "extraordinarily difficult—if not impossible" to meet.[3]  In other words, these agencies appear to have developed criterion that is result-driven designed to get to a predetermined result: in this case, to deny master accounts to their disfavored types of financial institutions, whether it is a cryptocurrency bank or an IBE owned by a Venezuelan national.

BSJI has been denied meaningful discovery necessary to determine the actual basis for the FRBNY's master account decision. Even in the absence of such discovery, BSJI has offered sufficient evidence at the motion to dismiss stage to support its equal protection claim.  The recent statements of the Federal Reserve Chair acknowledging the impropriety of the criteria used in denying BSJI master account access, together with the recently published internal documents of the Board and the Reserve Banks, only reaffirm the need for such discovery, not dismissal of the action.

*Third*, the FRBNY's opposition to BSJI's request for leave is, in part, based on a contention diametrically opposed to the arguments it successfully lodged when seeking dismissal of BSJI's

---

[1] Video Recording of U.S. Senate Committee Hearing on Monetary Policy (February 11, 2025), *available at* https://www.youtube.com/watch?v=aavRKJYuJkE.

[2] U.S. Senate Committee on Banking, Housing, and Urban Affairs, *Investigating the Real Impacts of Debanking in America* February 5, 2025), *available at* https://www.banking.senate.gov/hearings/investigating-the-real-impacts-of-debanking-in-america.

[3] FDIC, *FDIC Releases Documents Related to Supervision of Crypto-Related Activities* (February 5, 2025), *available at* https://fdic.gov/news/press-releases/2025/fdic-releases-documents-related-supervision-crypto-related-activities.

Hon. John G. Koeltl
February 17, 2025
3

APA claim. To evade judicial review of its actions, the FRBNY asserts that that it is separate and distinct from the federal government. *See, e.g.*, ECF No. 131 at 15-16. This is consistent with the position espoused by other Reserve Banks.[4] Yet here, when the implications of the FRBNY's posture are plainly articulated—that the FRBNY could take any action, no matter how illicit, and not be subject to judicial scrutiny—it claims that it could be subject to a *Bivens* action. FRBNY Ltr. at 1. The FRBNY's two positions (that it is not part of the sovereign yet somehow subject to a *Bivens* action)—are mutually exclusive. Both cannot be true because a *Bivens* action cannot lie against individuals if those individuals are not acting under color of federal law. *See* ECF No. 152 at 48 (the FRBNY is a "private corporation[] . . . formally separate from the sovereign government"); *but see Haughton v. Burroughs*, 2004 WL 330242, at *4 (S.D.N.Y. Feb. 23, 2004) ("*Bivens* does not allow a private right of action against a private corporation for alleged constitutional deprivations."). Before the Tenth Circuit just a few weeks, the Reserve Bank there represented that it never has argued that Reserve Banks' master account decisions are unreviewable.[5] Yet that is effectively the position asserted by the FRBNY here and that was adopted by this Court.

*Fourth*, while the Board argues that BSJI cannot show the requisite "final action" necessary for an APA claim against the Board, BSJI notes that the SAC includes allegations that clarify it is challenging the promulgation of the Guidelines, as well as the FRBNY's purported reliance on them in closing BSJI's master account, *see* SAC ¶¶ 160-162; 186-193, thereby curing an alleged defect from BSJI's prior operative complaint. *See* ECF No. 152 at 38-39 (where this Court noted that "[t]his is not a case where BSJI seeks to invalidate any of the decisions that were within the Board's purview, for example, the Board's promulgation of the Guidelines."). BSJI also notes that while the Board points to the fact that one Tier III institution was granted a master account last year, that institution was co-founded by the former Vice Chair of the Federal Reserve,[6] which calls into question whether it was treated in the same fashion as other Tier III institutions, particularly those owned by Venezuelan nationals.

We thank the Court for its continued consideration of this matter.

Respectfully submitted,

*/s/ Abbe David Lowell*

Abbe David Lowell
Kelly A. Librera

---

[4] Federal Reserve Bank of Kansas City's Memorandum in Support of Motion to Dismiss, *Custodia Bank v. Federal Reserve Board of Governors, et al.*, Case No. 1:22-cv-00125 (D. Wyo. Aug. 16, 2022) ECF No. 51.

[5] Oral Argument Audio Recording, *Custodia Bank v. Federal Reserve Board of Governors, et al.* (10th Cir. January 21, 2025), 48:30-49:50, available at https://www.ca10.uscourts.gov/sites/ca10/files/oralarguments/24-8024.mp3.

[6] Banking Dive, *Small bank receives rare conditional Fed master account approval* (May 24, 2024), *available at* https://www.bankingdive.com/news/small-bank-receives-rare-conditional-fed-master-account-numisma/717125/.

Hon. John G. Koeltl  
February 17, 2025  
4

WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
ADLowell@winston.com
KLibrera@winston.com
T: 1-212 294-6700
F: 1-212-294-4700

*Counsel for Banco San Juan Internacional, Inc.*

cc:    Counsel for All Parties (via ECF)